# Exhibit C

# RULES

## *of the*

# HOUSE OF REPRESENTATIVES

————

ONE HUNDRED SEVENTEENTH CONGRESS

————



PREPARED BY

Cheryl L. Johnson

Clerk of the House of Representatives

FEBRUARY 2, 2021

(Rev. 02–02–21)

# C O N T E N T S

―――――

|  |  | Page |
|---|---|---|
| RULE I.—The Speaker | | 1 |
| II.—Other Officers and Officials | | 2 |
| III.—The Members, Delegates, and Resident Commissioner of Puerto Rico | | 4 |
| IV.—The Hall of the House | | 4 |
| V.—Broadcasting the House | | 5 |
| VI.—Official Reporters and News Media Galleries | | 5 |
| VII.—Records of the House | | 5 |
| VIII.—Response to Subpoenas | | 6 |
| IX.—Questions of Privilege | | 6 |
| X.—Organization of Committees | | 6 |
| XI.—Procedures of Committees and Unfinished Business | | 17 |
| XII.—Receipt and Referral of Measures and Matters | | 25 |
| XIII.—Calendars and Committee Reports | | 26 |
| XIV.—Order and Priority of Business | | 28 |
| XV.—Business in Order on Special Days | | 29 |
| XVI.—Motions and Amendments | | 30 |
| XVII.—Decorum and Debate | | 31 |
| XVIII.—The Committee of the Whole House on the state of the Union | | 32 |
| XIX.—Motions Following the Amendment Stage | | 33 |
| XX.—Voting and Quorum Calls | | 33 |
| XXI.—Restrictions on Certain Bills | | 35 |
| XXII.—House and Senate Relations | | 37 |
| XXIII.—Code of Official Conduct | | 39 |
| XXIV.—Limitations on Use of Official Funds | | 41 |
| XXV.—Limitations on Outside Earned Income and Acceptance of Gifts | | 42 |
| XXVI.—Financial Disclosure | | 46 |
| XXVII.—Disclosure by Members and Staff of Employment Negotiations | | 47 |
| XXVIII.—Statutory Limit on the Public Debt | | 47 |
| XXIX.—General Provisions | | 47 |

# RULES OF THE HOUSE OF REPRESENTATIVES

————

## ONE HUNDRED SEVENTEENTH CONGRESS

### RULE I

#### THE SPEAKER

*Approval of the Journal*

1. The Speaker shall take the Chair on every legislative day precisely at the hour to which the House last adjourned and immediately call the House to order. Having examined and approved the Journal of the last day's proceedings, the Speaker shall announce to the House approval thereof. The Speaker's approval of the Journal shall be deemed agreed to unless a Member, Delegate, or Resident Commissioner demands a vote thereon. If such a vote is decided in the affirmative, it shall not be subject to a motion to reconsider. If such a vote is decided in the negative, then one motion that the Journal be read shall be privileged, shall be decided without debate, and shall not be subject to a motion to reconsider.

*Preservation of order*

2. The Speaker shall preserve order and decorum and, in case of disturbance or disorderly conduct in the galleries or in the lobby, may cause the same to be cleared.

*Control of Capitol facilities*

3. Except as otherwise provided by rule or law, the Speaker shall have general control of the Hall of the House, the corridors and passages in the part of the Capitol assigned to the use of the House, and the disposal of unappropriated rooms in that part of the Capitol.

*Signature of documents*

4. The Speaker shall sign all acts and joint resolutions passed by the two Houses and all writs, warrants, and subpoenas of, or issued by order of, the House. The Speaker may sign enrolled bills and joint resolutions whether or not the House is in session.

*Questions of order*

5. The Speaker shall decide all questions of order, subject to appeal by a Member, Delegate, or Resident Commissioner. On such an appeal a Member, Delegate, or Resident Commissioner may not speak more than once without permission of the House.

*Form of a question*

6. The Speaker shall put a question in this form: "Those in favor (of the question), say 'Aye.'"; and after the affirmative voice is expressed, "Those opposed, say 'No.'". After a vote by voice under this clause, the Speaker

may use such voting procedures as may be invoked under rule XX.

*Discretion to vote*

7. The Speaker is not required to vote in ordinary legislative proceedings, except when such vote would be decisive or when the House is engaged in voting by ballot.

*Speaker pro tempore*

8. (a) The Speaker may appoint a Member to perform the duties of the Chair. Except as specified in paragraph (b), such an appointment may not extend beyond three legislative days.

(b)(1) In the case of illness, the Speaker may appoint a Member to perform the duties of the Chair for a period not exceeding 10 days, subject to the approval of the House. If the Speaker is absent and has omitted to make such an appointment, then the House shall elect a Speaker pro tempore to act during the absence of the Speaker.

(2) With the approval of the House, the Speaker may appoint a Member to act as Speaker pro tempore only to sign enrolled bills and joint resolutions for a specified period of time.

(3)(A) In the case of a vacancy in the Office of Speaker, the next Member on the list described in subdivision (B) shall act as Speaker pro tempore until the election of a Speaker or a Speaker pro tempore. Pending such election the Member acting as Speaker pro tempore may exercise such authorities of the Office of Speaker as may be necessary and appropriate to that end.

(B) As soon as practicable after the election of the Speaker and whenever appropriate thereafter, the Speaker shall deliver to the Clerk a list of Members in the order in which each shall act as Speaker pro tempore under subdivision (A).

(C) For purposes of subdivision (A), a vacancy in the Office of Speaker may exist by reason of the physical inability of the Speaker to discharge the duties of the office.

*Other responsibilities*

9. The Speaker, in consultation with the Minority Leader, shall develop through an appropriate entity of the House a system for drug testing in the House. The system may provide for the testing of a Member, Delegate, Resident Commissioner, officer, or employee of the House, and otherwise shall be comparable in scope to the system for drug testing in the executive branch pursuant to Executive Order 12564 (Sept. 15, 1986). The expenses of

the system may be paid from applicable accounts of the House for official expenses.

*Designation of travel*

10. The Speaker may designate a Member, Delegate, Resident Commissioner, officer, or employee of the House to travel on the business of the House within or without the United States, whether the House is meeting, has recessed, or has adjourned. Expenses for such travel may be paid from applicable accounts of the House described in clause 1(k)(1) of rule X on vouchers approved and signed solely by the Speaker.

*Committee appointment*

11. The Speaker shall appoint all select, joint, and conference committees ordered by the House. At any time after an original appointment, the Speaker may remove Members, Delegates, or the Resident Commissioner from, or appoint additional Members, Delegates, or the Resident Commissioner to, a select or conference committee. In appointing Members, Delegates, or the Resident Commissioner to conference committees, the Speaker shall appoint no less than a majority who generally supported the House position as determined by the Speaker, shall name those who are primarily responsible for the legislation, and shall, to the fullest extent feasible, include the principal proponents of the major provisions of the bill or resolution passed or adopted by the House.

*Recess and convening authorities*

12. (a) To suspend the business of the House for a short time when no question is pending before the House, the Speaker may declare a recess subject to the call of the Chair.

(b)(1) To suspend the business of the House when notified of an imminent threat to its safety, the Speaker may declare an emergency recess subject to the call of the Chair.

(2) To suspend the business of the Committee of the Whole House on the state of the Union when notified of an imminent threat to its safety, the chair of the Committee of the Whole may declare an emergency recess subject to the call of the Chair.

(c) During any recess or adjournment of not more than three days, if the Speaker is notified by the Sergeant-at-Arms of an imminent impairment of the place of reconvening at the time previously appointed, then the Speaker may, in consultation with the Minority Leader—

# RULES OF THE

(1) postpone the time for reconvening within the limits of clause 4, section 5, article I of the Constitution and notify Members, Delegates, and the Resident Commissioner accordingly; or

(2) reconvene the House before the time previously appointed solely to declare the House in recess within the limits of clause 4, section 5, article I of the Constitution and notify Members, Delegates, and the Resident Commissioner accordingly.

(d) The Speaker may convene the House in a place at the seat of government other than the Hall of the House if, in the opinion of the Speaker, the public interest shall warrant it.

(e) During any recess or adjournment of not more than three days, if in the opinion of the Speaker the public interest so warrants, then the Speaker, after consultation with the Minority Leader, may reconvene the House at a time other than that previously appointed, within the limits of clause 4, section 5, article I of the Constitution, and notify Members, Delegates, and the Resident Commissioner accordingly.

(f) The Speaker may name a designee for purposes of paragraphs (c), (d), and (e).

## RULE II

### OTHER OFFICERS AND OFFICIALS

*Elections*

1. There shall be elected at the commencement of each Congress, to continue in office until their successors are chosen and qualified, a Clerk, a Sergeant-at-Arms, a Chief Administrative Officer, and a Chaplain. Each of these officers shall take an oath to support the Constitution of the United States, and for the true and faithful exercise of the duties of the office to the best of the knowledge and ability of the officer, and to keep the secrets of the House. Each of these officers shall appoint all of the employees of the department concerned provided for by law. The Clerk, Sergeant-at-Arms, and Chief Administrative Officer may be removed by the House or by the Speaker.

*Clerk*

2. (a) At the commencement of the first session of each Congress, the Clerk shall call the Members, Delegates, and Resident Commissioner to order and proceed to record their presence by States in alphabetical order, either by call of the roll or by use of the electronic voting system. Pending the election of a Speaker or Speaker pro tempore, or, in the absence of a Member acting as Speaker pro tempore pursuant to clause 8(b)(3)(A) of rule I, the Clerk shall preserve order and decorum and decide all questions of order, subject to appeal by a Member, Delegate, or Resident Commissioner.

(b) At the commencement of every regular session of Congress, the Clerk shall make and cause to be delivered to each Member, Delegate, and the Resident Commissioner a list of the reports

that any officer or Department is required to make to Congress, citing the law or resolution in which the requirement may be contained and placing under the name of each officer the list of reports required to be made by such officer.

(c) The Clerk shall—

(1) note all questions of order, with the decisions thereon, the record of which shall be appended to the Journal of each session;

(2) enter on the Journal the hour at which the House adjourns;

(3) complete the distribution of the Journal to Members, Delegates, and the Resident Commissioner, together with an accurate and complete index, as soon as possible after the close of a session; and

(4) send a copy of the Journal to the executive of and to each branch of the legislature of every State as may be requested by such State officials.

(d)(1) The Clerk shall attest and affix the seal of the House to all writs, warrants, and subpoenas issued by order of the House and certify the passage of all bills and joint resolutions.

(2) The Clerk shall examine all bills, amendments, and joint resolutions after passage by the House and, in cooperation with the Senate, examine all bills and joint resolutions that have passed both Houses to see that they are correctly enrolled and forthwith present those bills and joint resolutions that originated in the House to the President in person after their signature by the Speaker and the President of the Senate, and report to the House the fact and date of their presentment.

(e) The Clerk shall cause the calendars of the House to be distributed each legislative day.

(f) The Clerk shall—

(1) retain in the library at the Office of the Clerk for the use of the Members, Delegates, Resident Commissioner, and officers of the House, and not to be withdrawn therefrom, two copies of all the books and printed documents deposited there; and

(2) deliver to any Member, Delegate, or the Resident Commissioner an extra copy of each document requested by that Member, Delegate, or Resident Commissioner that has been printed by order of either House of Congress in any Congress in which the Member, Delegate, or Resident Commissioner served.

(g) The Clerk shall provide for the temporary absence or disability of the Clerk by designating an official in the Office of the Clerk to sign all papers that may require the official signature of the Clerk and to perform all other official acts that the Clerk may be required to perform under the rules and practices of the House, except such official acts as are provided for by statute. Official acts performed by the designated official shall be under the name of the Clerk. The designation shall be in writing and shall be laid be-

fore the House and entered on the Journal.

(h) The Clerk may receive messages from the President and from the Senate at any time when the House is in recess or adjournment.

(i) The Clerk shall supervise the staff and manage the office of a Member, Delegate, or Resident Commissioner who has died, resigned, or been expelled until a successor is elected. The Clerk shall perform similar duties in the event that a vacancy is declared by the House in any congressional district because of the incapacity of the person representing such district or other reason. When acting as a supervisory authority over such staff, the Clerk shall have authority to terminate employees and, with the approval of the Committee on House Administration, may appoint such staff as is required to operate the office until a successor is elected.

(j) In addition to any other reports required by the Speaker or the Committee on House Administration, the Clerk shall report to the Committee on House Administration not later than 45 days following the close of each semiannual period ending on June 30 or on December 31 on the financial and operational status of each function under the jurisdiction of the Clerk. Each report shall include financial statements and a description or explanation of current operations, the implementation of new policies and procedures, and future plans for each function.

(k) The Clerk shall fully cooperate with the appropriate offices and persons in the performance of reviews and audits of financial records and administrative operations.

*Sergeant-at-Arms*

3. (a) The Sergeant-at-Arms shall attend the House during its sittings and maintain order under the direction of the Speaker or other presiding officer. The Sergeant-at-Arms shall execute the commands of the House, and all processes issued by authority thereof, directed to the Sergeant-at-Arms by the Speaker.

(b) The symbol of the Office of the Sergeant-at-Arms shall be the mace, which shall be borne by the Sergeant-at-Arms while enforcing order on the floor.

(c) The Sergeant-at-Arms shall enforce strictly the rules relating to the privileges of the Hall of the House and be responsible to the House for the official conduct of employees of the Office of the Sergeant-at-Arms.

(d) The Sergeant-at-Arms may not allow a person to enter the room over the Hall of the House during its sittings and, from 15 minutes before the hour of the meeting of the House each day until 10 minutes after adjournment, shall see that the floor is cleared of all persons except those privileged to remain.

(e) In addition to any other reports required by the Speaker or the Committee on House Administration, the

# HOUSE OF REPRESENTATIVES

Sergeant-at-Arms shall report to the Committee on House Administration not later than 45 days following the close of each semiannual period ending on June 30 or on December 31 on the financial and operational status of each function under the jurisdiction of the Sergeant-at-Arms. Each report shall include financial statements and a description or explanation of current operations, the implementation of new policies and procedures, and future plans for each function.

(f) The Sergeant-at-Arms shall fully cooperate with the appropriate offices and persons in the performance of reviews and audits of financial records and administrative operations.

(g)(1) The Sergeant-at-Arms is authorized and directed to impose a fine against a Member, Delegate, or the Resident Commissioner for the use of an electronic device for still photography or for audio or visual recording or broadcasting in contravention of clause 5 of rule XVII and any applicable Speaker's announced policy on electronic devices.

(2) A fine imposed pursuant to this paragraph shall be $500 for a first offense and $2,500 for any subsequent offense.

(3)(A) The Sergeant-at-Arms shall promptly notify the Member, Delegate, or the Resident Commissioner, the Speaker, the Chief Administrative Officer, and the Committee on Ethics of any such fine.

(B) Such Member, Delegate, or Resident Commissioner may appeal the fine in writing to the Committee on Ethics not later than 30 calendar days or five legislative days, whichever is later, after notification pursuant to subdivision (A).

(C) Upon receipt of an appeal pursuant to subdivision (B), the Committee on Ethics shall have a period of 30 calendar days or five legislative days, whichever is later, to consider the appeal. The fine will be upheld unless the appeal is agreed to by a majority of the Committee. Upon a determination regarding the appeal or if no appeal has been filed at the expiration of the period specified in subdivision (B), the chair of the Committee on Ethics shall promptly notify the Member, Delegate, or the Resident Commissioner, the Speaker, the Sergeant-at-Arms, and the Chief Administrative Officer, and shall make such notification publicly available. The Speaker shall promptly lay such notification before the House.

(4) The Sergeant-at-Arms and the Committee on Ethics are authorized to establish policies and procedures for the implementation of this paragraph.

## Chief Administrative Officer

4. (a) The Chief Administrative Officer shall have operational and financial responsibility for functions as assigned by the Committee on House Administration and shall be subject to the policy direction and oversight of the Committee on House Administration.

(b) In addition to any other reports required by the Committee on House Administration, the Chief Administrative Officer shall report to the Committee on House Administration not later than 45 days following the close of each semiannual period ending on June 30 or December 31 on the financial and operational status of each function under the jurisdiction of the Chief Administrative Officer. Each report shall include financial statements and a description or explanation of current operations, the implementation of new policies and procedures, and future plans for each function.

(c) The Chief Administrative Officer shall fully cooperate with the appropriate offices and persons in the performance of reviews and audits of financial records and administrative operations.

(d)(1) Upon notification from the chair of the Committee on Ethics pursuant to clause 3(g)(3)(C), the Chief Administrative Officer shall deduct the amount of any fine levied under clause 3(g) from the net salary otherwise due the Member, Delegate, or the Resident Commissioner.

(2) The Chief Administrative Officer is authorized to establish policies and procedures for such salary deductions.

## Chaplain

5. The Chaplain shall offer a prayer at the commencement of each day's sitting of the House.

## Office of Inspector General

6. (a) There is established an Office of Inspector General.

(b) The Inspector General shall be appointed for a Congress by the Speaker, the Majority Leader, and the Minority Leader, acting jointly.

(c) Subject to the policy direction and oversight of the Committee on House Administration, the Inspector General shall only—

(1) provide audit, investigative, and advisory services to the House and joint entities in a manner consistent with government-wide standards;

(2) inform the officers or other officials who are the subject of an audit of the results of that audit and suggesting appropriate curative actions;

(3) simultaneously notify the Speaker, the Majority Leader, the Minority Leader, and the chair and ranking minority member of the Committee on House Administration in the case of any financial irregularity discovered in the course of carrying out responsibilities under this clause;

(4) simultaneously submit to the Speaker, the Majority Leader, the Minority Leader, and the chair and ranking minority member of the Committee on Appropriations and the Committee on House Administration a report of each audit conducted under this clause; and

(5) report to the Committee on Ethics information involving possible violations by a Member, Delegate, Resident Commissioner, officer, or employee of the House of any rule of the House or of any law applicable to the performance of official duties or the discharge of official responsibilities that may require referral to the appropriate Federal or State authorities under clause 3(a)(3) of rule XI.

## Office of the Historian

7. There is established an Office of the Historian of the House of Representatives. The Speaker shall appoint and set the annual rate of pay for employees of the Office of the Historian.

## Office of General Counsel

8. (a) There is established an Office of General Counsel for the purpose of providing legal assistance and representation to the House. Legal assistance and representation shall be provided without regard to political affiliation. The Speaker shall appoint and set the annual rate of pay for employees of the Office of General Counsel. The Office of General Counsel shall function pursuant to the direction of the Speaker, who shall consult with the Bipartisan Legal Advisory Group.

(b) There is established a Bipartisan Legal Advisory Group composed of the Speaker and the majority and minority leaderships. Unless otherwise provided by the House, the Bipartisan Legal Advisory Group speaks for, and articulates the institutional position of, the House in all litigation matters.

(c) The House, the Speaker, a committee or the chair of a committee authorized during a prior Congress to act in a litigation matter is authorized to act as the successor in interest to the House, the Speaker, such committee or the chair of such committee of a prior Congress, respectively, with respect to such litigation matter, and to take such steps as may be appropriate, including, but not limited to, the issuance of subpoenas, to ensure continuation of such litigation matter.

## Office of Diversity and Inclusion

9. (a) There is established an Office of Diversity and Inclusion. The Speaker, in consultation with the Minority Leader, shall appoint a Director of the Office from recommendations provided by the chair of the Committee on House Administration in consultation with the ranking minority member of such committee.

(b) Subject to the policy direction and oversight of the Committee on House Administration, the Office of Diversity and Inclusion shall—

(1) direct and guide House employing offices to recruit, hire, train, develop, advance, promote, and retain a diverse workforce;

(2) survey and evaluate diversity in House employing offices;

(3) through the Director of the Office at the end of each session of Congress, submit a House of Representatives diversity report to the Speaker, the Majority Leader, the Minority Leader, the chair and ranking minority member of the Committee on

# RULES OF THE

House Administration, and the chair and ranking minority member of the Subcommittee on the Legislative Branch of the Committee on Appropriations; and

(4) provide consultation and guidance in furtherance of increasing diversity and inclusion in the House.

### Office of the Whistleblower Ombuds

10. (a) There is established an Office of the Whistleblower Ombuds. The Speaker, in consultation with the chairs and ranking minority members of the Committee on House Administration and the Committee on Oversight and Reform, shall appoint a Director of the Office.

(b) Subject to the policy direction and oversight of the Committee on House Administration, and in consultation with any other committee (at the request of the chair or ranking minority member of such other committee), the Office of the Whistleblower Ombuds shall—

(1) promulgate best practices for whistleblower intake for offices of the House; and

(2) provide training for offices of the House on whistleblower intake, including establishing an effective reporting system for whistleblowers, maintaining whistleblower confidentiality, advising staff of relevant laws and policies, and protecting information provided by whistleblowers.

## RULE III

### The Members, Delegates, and Resident Commissioner of Puerto Rico

### Voting

1. Every Member shall be present within the Hall of the House during its sittings, unless excused or necessarily prevented, and shall vote on each question put, unless having a direct personal or pecuniary interest in the event of such question.

2. (a) A Member may not authorize any other person to cast the vote of such Member or record the presence of such Member in the House or the Committee of the Whole House on the state of the Union.

(b) No other person may cast a Member's vote or record a Member's presence in the House or the Committee of the Whole House on the state of the Union.

### Delegates and the Resident Commissioner

3. (a) In a Committee of the Whole House on the State of the Union, each Delegate and the Resident Commissioner shall possess the same powers and privileges as Members of the House. Each Delegate and the Resident Commissioner shall be elected to serve on standing committees in the same manner as Members and shall possess in such committees the same powers and privileges as the other members of the committee.

(b) The Delegates and the Resident Commissioner may be appointed to any select committee, joint committee, or conference committee.

## RULE IV

### The Hall of the House

### Use and admittance

1. The Hall of the House shall be used only for the legislative business of the House and for caucus and conference meetings of its Members, except when the House agrees to take part in any ceremonies to be observed therein.

2. (a) Only the following persons shall be admitted to the Hall of the House or rooms leading thereto:

(1) Members of Congress, Members-elect, Delegates, Delegates-elect, the Resident Commissioner, and the Resident Commissioner-elect.

(2) Contestants in election cases during the pendency of their cases on the floor.

(3) The President and Vice President of the United States and their private secretaries.

(4) Justices of the Supreme Court.

(5) Elected officers and minority employees nominated as elected officers of the House.

(6) The Parliamentarian.

(7) Staff of committees when business from their committee is under consideration, and staff of the respective party leaderships when so assigned with the approval of the Speaker.

(8) Not more than one person from the staff of a Member, Delegate, or Resident Commissioner when that Member, Delegate, or Resident Commissioner has an amendment under consideration (subject to clause 5).

(9) The Architect of the Capitol.

(10) The Librarian of Congress and the assistant in charge of the Law Library.

(11) The Secretary and Sergeant-at-Arms of the Senate.

(12) Heads of departments.

(13) Foreign ministers.

(14) Governors of States and of the Territories and the Mayor of the District of Columbia.

(15) Former Members, Delegates, and Resident Commissioners; former Parliamentarians of the House; and former elected officers and minority employees nominated as elected officers of the House (subject to clause 4).

(16) One attorney to accompany a Member, Delegate, or Resident Commissioner who is the respondent in an investigation undertaken by the Committee on Ethics when a recommendation of that committee is under consideration in the House.

(17) Such persons as have, by name, received the thanks of Congress.

(b) The Speaker may not entertain a unanimous consent request or a motion to suspend this clause or clauses 1, 3, 4, or 5.

3. (a) Except as provided in paragraph (b), all persons not entitled to the privilege of the floor during the session shall be excluded at all times from the Hall of the House and the cloakrooms.

(b) Until 15 minutes of the hour of the meeting of the House, persons employed in its service, accredited members of the press entitled to admission to the press gallery, and other persons on request of a Member, Delegate, or Resident Commissioner by card or in writing, may be admitted to the Hall of the House.

4. (a) A former Member, Delegate, or Resident Commissioner; a former Parliamentarian of the House; or a former elected officer of the House or former minority employee nominated as an elected officer of the House shall not be entitled to the privilege of admission to the Hall of the House and rooms leading thereto if such individual—

(1) is a registered lobbyist or agent of a foreign principal as those terms are defined in clause 5 of rule XXV;

(2) has any direct personal or pecuniary interest in any legislative measure pending before the House or reported by a committee;

(3) is in the employ of or represents any party or organization for the purpose of influencing, directly or indirectly, the passage, defeat, or amendment of any legislative proposal; or

(4) has been convicted by a court of record for the commission of a crime in relation to that individual's election to, or service to, the House.

(b) The Speaker may promulgate regulations to carry out this rule including regulations that exempt ceremonial or educational functions from the restrictions of this clause.

5. A person from the staff of a Member, Delegate, or Resident Commissioner may be admitted to the Hall of the House or rooms leading thereto under clause 2 only upon prior notice to the Speaker. Such persons, and persons from the staff of committees admitted under clause 2, may not engage in efforts in the Hall of the House or rooms leading thereto to influence Members with regard to the legislation being amended. Such persons are admitted only to advise the Member, Delegate, Resident Commissioner, or committee responsible for their admission. A person who violates this clause may be excluded during the session from the Hall of the House and rooms leading thereto by the Speaker.

### Gallery

6. (a) The Speaker shall set aside a portion of the west gallery for the use of the President, the members of the Cabinet, justices of the Supreme Court, foreign ministers and suites, and the members of their respective families. The Speaker shall set aside another portion of the same gallery for the accommodation of persons to be admitted on the cards of Members, Delegates, or the Resident Commissioner.

(b) The Speaker shall set aside the southerly half of the east gallery for the use of the families of Members of Congress. The Speaker shall control one bench. On the request of a Member, Delegate, Resident Commissioner, or

# HOUSE OF REPRESENTATIVES

Senator, the Speaker shall issue a card of admission to the family of such individual, which may include their visitors. No other person shall be admitted to this section.

### Prohibition on campaign contributions

7. A Member, Delegate, Resident Commissioner, officer, or employee of the House, or any other person entitled to admission to the Hall of the House or rooms leading thereto by this rule, may not knowingly distribute a political campaign contribution in the Hall of the House or rooms leading thereto.

## RULE V

### BROADCASTING THE HOUSE

1. The Speaker shall administer, direct, and control a system for closed-circuit viewing of floor proceedings of the House in the offices of all Members, Delegates, the Resident Commissioner, and committees and in such other places in the Capitol and the House Office Buildings as the Speaker considers appropriate. Such system may include other communications functions as the Speaker considers appropriate. Any such communications shall be subject to rules and regulations issued by the Speaker.

2. (a) The Speaker shall administer, direct, and control a system for complete and unedited audio and visual broadcasting and recording of the floor proceedings of the House. The Speaker shall provide for the distribution of such broadcasts and recordings to news media, for the storage of audio and video recordings of the proceedings, and for the closed-captioning of the proceedings for hearing-impaired persons.

(b) All television and radio broadcasting stations, networks, services, and systems (including cable systems) that are accredited to the House Radio and Television Correspondents' Galleries, and all radio and television correspondents who are so accredited, shall be provided access to the live coverage of the House.

(c) Coverage made available under this clause, including any recording thereof—

(1) may not be used for any partisan political campaign purpose;

(2) may not be used in any commercial advertisement; and

(3) may not be broadcast with commercial sponsorship except as part of a bona fide news program or public affairs documentary program.

3. The Speaker may delegate any of the responsibilities under this rule to such legislative entity as the Speaker considers appropriate.

## RULE VI

### OFFICIAL REPORTERS AND NEWS MEDIA GALLERIES

#### Official reporters

1. Subject to the direction and control of the Speaker, the Clerk shall appoint, and may remove for cause, the official reporters of the House, including stenographers of committees, and shall supervise the execution of their duties.

### News media galleries

2. A portion of the gallery over the Speaker's chair as may be necessary to accommodate representatives of the press wishing to report debates and proceedings shall be set aside for their use. Reputable reporters and correspondents shall be admitted thereto under such regulations as the Speaker may prescribe from time to time. The Standing Committee of Correspondents for the Press Gallery, and the Executive Committee of Correspondents for the Periodical Press Gallery, shall supervise such galleries, including the designation of its employees, subject to the direction and control of the Speaker. The Speaker may admit to the floor, under such regulations as the Speaker may prescribe, not more than one representative of each press association.

3. A portion of the gallery as may be necessary to accommodate reporters of news to be disseminated by radio, television, and similar means of transmission, wishing to report debates and proceedings, shall be set aside for their use. Reputable reporters and correspondents shall be admitted thereto under such regulations as the Speaker may prescribe. The Executive Committee of the Radio and Television Correspondents' Galleries shall supervise such gallery, including the designation of its employees, subject to the direction and control of the Speaker. The Speaker may admit to the floor, under such regulations as the Speaker may prescribe, not more than one representative of each media outlet.

## RULE VII

### RECORDS OF THE HOUSE

#### Archiving

1. (a) At the end of each Congress, the chair of each committee shall transfer to the Clerk any noncurrent records of such committee, including the subcommittees thereof.

(b) At the end of each Congress, each officer of the House elected under rule II shall transfer to the Clerk any noncurrent records made or acquired in the course of the duties of such officer.

2. The Clerk shall deliver the records transferred under clause 1, together with any other noncurrent records of the House, to the Archivist of the United States for preservation at the National Archives and Records Administration. Records so delivered are the permanent property of the House and remain subject to this rule and any order of the House.

#### Public availability

3. (a) The Clerk shall authorize the Archivist to make records delivered under clause 2 available for public use, subject to clause 4(b) and any order of the House.

(b)(1) A record shall immediately be made available if it was previously made available for public use by the House or a committee or a subcommittee.

(2) An investigative record that contains personal data relating to a specific living person (the disclosure of which would be an unwarranted invasion of personal privacy), an administrative record relating to personnel, or a record relating to a hearing that was closed under clause 2(g)(2) of rule XI shall be made available if it has been in existence for 50 years.

(3) A record for which a time, schedule, or condition for availability is specified by order of the House shall be made available in accordance with that order. Except as otherwise provided by order of the House, a record of a committee for which a time, schedule, or condition for availability is specified by order of the committee (entered during the Congress in which the record is made or acquired by the committee) shall be made available in accordance with the order of the committee.

(4) A record (other than a record referred to in subparagraph (1), (2), or (3)) shall be made available if it has been in existence for 30 years.

4. (a) A record may not be made available for public use under clause 3 if the Clerk determines that such availability would be detrimental to the public interest or inconsistent with the rights and privileges of the House. The Clerk shall notify in writing the chair and ranking minority member of the Committee on House Administration of any such determination.

(b) A determination of the Clerk under paragraph (a) is subject to later orders of the House and, in the case of a record of a committee, later orders of the committee.

5. (a) This rule does not supersede rule VIII or clause 11 of rule X and does not authorize the public disclosure of any record if such disclosure is prohibited by law or executive order of the President.

(b) The Committee on House Administration may prescribe guidelines and regulations governing the applicability and implementation of this rule.

(c) A committee may withdraw from the National Archives and Records Administration any record of the committee delivered to the Archivist under this rule. Such a withdrawal shall be on a temporary basis and for official use of the committee.

#### Definition of record

6. (a) In this rule the term "record" means any official, permanent record of the House (other than a record of an individual Member, Delegate, or Resident Commissioner as described in paragraph (b)), including—

(1) with respect to a committee, an official, permanent record of the committee (including any record of a legislative, oversight, or other activity of such committee or a subcommittee thereof); and

(2) with respect to an officer of the House elected under rule II, an offi-

# RULES OF THE

cial, permanent record made or acquired in the course of the duties of such officer.

(b) Records created, generated, or received by the congressional office of a Member, Delegate, or the Resident Commissioner in the performance of official duties are exclusively the personal property of the individual Member, Delegate, or the Resident Commissioner and such Member, Delegate, or Resident Commissioner, shall have control over such records.

### *Withdrawal of papers*

7. A memorial or other paper presented to the House may not be withdrawn from its files without its leave. If withdrawn certified copies thereof shall be left in the Office of the Clerk. When an act passes for the settlement of a claim, the Clerk may transmit to the officer charged with the settlement thereof the papers on file in the Office of the Clerk relating to such claim. The Clerk may lend temporarily to an officer or bureau of the executive departments any papers on file in the Office of the Clerk relating to any matter pending before such officer or bureau, taking proper receipt therefor.

## RULE VIII

### RESPONSE TO SUBPOENAS

1. (a) When a Member, Delegate, Resident Commissioner, officer, or employee of the House is properly served with a judicial subpoena or order, such Member, Delegate, Resident Commissioner, officer, or employee shall comply, consistently with the privileges and rights of the House, with the judicial subpoena or order as hereinafter provided, unless otherwise determined under this rule.

(b) For purposes of this rule, ''judicial subpoena or order'' means a judicial subpoena or judicial order directing appearance as a witness relating to the official functions of the House or for the production or disclosure of any document relating to the official functions of the House.

2. (a) Upon receipt of a properly served judicial subpoena or order, a Member, Delegate, Resident Commissioner, officer, or employee of the House shall promptly notify the Speaker in writing of its receipt together with either:

(1) a determination as to whether the issuance of the judicial subpoena or order is a proper exercise of jurisdiction by the court and is consistent with the privileges and rights of the House; or

(2) a statement that such Member, Delegate, Resident Commissioner, officer, or employee of the House intends to make a determination with respect to the matters described in subparagraph (1).

(b) The notification required by paragraph (a) shall promptly be laid before the House by the Speaker.

3. (a) Except as specified in paragraph (b) or otherwise ordered by the House, upon notification to the House that a judicial subpoena or order is a proper exercise of jurisdiction by the court and is consistent with the privileges and rights of the House, the Member, Delegate, Resident Commissioner, officer, or employee of the House shall comply with the judicial subpoena or order by supplying copies.

(b) Under no circumstances may minutes or transcripts of executive sessions, or evidence of witnesses in respect thereto, be disclosed or copied. During a period of recess or adjournment of longer than three days, the Speaker may authorize compliance or take such other action as the Speaker considers appropriate under the circumstances. Upon the reconvening of the House, all matters that transpired under this clause shall promptly be laid before the House by the Speaker.

4. Nothing in this rule shall be construed to deprive, condition, or waive the constitutional or legal privileges or rights applicable or available at any time to a Member, Delegate, Resident Commissioner, officer, or employee of the House, or of the House itself, or the right of such Member, Delegate, Resident Commissioner, officer, or employee, or of the House itself, to assert such privileges or rights before a court in the United States.

## RULE IX

### QUESTIONS OF PRIVILEGE

1. Questions of privilege shall be, first, those affecting the rights of the House collectively, its safety, dignity, and the integrity of its proceedings; and second, those affecting the rights, reputation, and conduct of Members, Delegates, or the Resident Commissioner, individually, in their representative capacity only.

2. (a)(1) A resolution reported as a question of the privileges of the House, or offered from the floor by the Majority Leader or the Minority Leader as a question of the privileges of the House, or offered as privileged under clause 1, section 7, article I of the Constitution, shall have precedence of all other questions except motions to adjourn. A resolution offered from the floor by a Member, Delegate, or Resident Commissioner other than the Majority Leader or the Minority Leader as a question of the privileges of the House shall have precedence of all other questions except motions to adjourn only at a time or place, designated by the Speaker, in the legislative schedule within two legislative days after the day on which the proponent announces to the House an intention to offer the resolution and the form of the resolution. Oral announcement of the form of the resolution may be dispensed with by unanimous consent.

(2) The time allotted for debate on a resolution offered from the floor as a question of the privileges of the House shall be equally divided between (A) the proponent of the resolution, and (B) the Majority Leader, the Minority Leader, or a designee, as determined by the Speaker.

(3) A resolution causing a vacancy in the Office of Speaker shall not be privileged except if offered by direction of a party caucus or conference.

(b) A question of personal privilege shall have precedence of all other questions except motions to adjourn.

## RULE X

### ORGANIZATION OF COMMITTEES

### *Committees and their legislative jurisdictions*

1. There shall be in the House the following standing committees, each of which shall have the jurisdiction and related functions assigned by this clause and clauses 2, 3, and 4. All bills, resolutions, and other matters relating to subjects within the jurisdiction of the standing committees listed in this clause shall be referred to those committees, in accordance with clause 2 of rule XII, as follows:

(a) **Committee on Agriculture.**

(1) Adulteration of seeds, insect pests, and protection of birds and animals in forest reserves.

(2) Agriculture generally.

(3) Agricultural and industrial chemistry.

(4) Agricultural colleges and experiment stations.

(5) Agricultural economics and research.

(6) Agricultural education extension services.

(7) Agricultural production and marketing and stabilization of prices of agricultural products, and commodities (not including distribution outside of the United States).

(8) Animal industry and diseases of animals.

(9) Commodity exchanges.

(10) Crop insurance and soil conservation.

(11) Dairy industry.

(12) Entomology and plant quarantine.

(13) Extension of farm credit and farm security.

(14) Inspection of livestock, poultry, meat products, and seafood and seafood products.

(15) Forestry in general and forest reserves other than those created from the public domain.

(16) Human nutrition and home economics.

(17) Plant industry, soils, and agricultural engineering.

(18) Rural electrification.

(19) Rural development.

(20) Water conservation related to activities of the Department of Agriculture.

(b) **Committee on Appropriations.**

(1) Appropriation of the revenue for the support of the Government.

(2) Rescissions of appropriations contained in appropriation Acts.

(3) Transfers of unexpended balances.

(4) Bills and joint resolutions reported by other committees that

# HOUSE OF REPRESENTATIVES

provide new entitlement authority as defined in section 3(9) of the Congressional Budget Act of 1974 and referred to the committee under clause 4(a)(2).

(5) Bills and joint resolutions that provide new budget authority, limitation on the use of funds, or other authority relating to new direct loan obligations and new loan guarantee commitments referencing section 504(b) of the Congressional Budget Act of 1974.

(c) **Committee on Armed Services.**

(1) Ammunition depots; forts; arsenals; and Army, Navy, Marine Corps, Air Force, and Space Force reservations and establishments.

(2) Common defense generally.

(3) Conservation, development, and use of naval petroleum and oil shale reserves.

(4) The Department of Defense generally, including the Departments of the Army, Navy, and Air Force, generally.

(5) Interoceanic canals generally, including measures relating to the maintenance, operation, and administration of interoceanic canals.

(6) Merchant Marine Academy and State Maritime Academies.

(7) Military applications of nuclear energy.

(8) Tactical intelligence and intelligence-related activities of the Department of Defense.

(9) National security aspects of merchant marine, including financial assistance for the construction and operation of vessels, maintenance of the U.S. shipbuilding and ship repair industrial base, cabotage, cargo preference, and merchant marine officers and seafarers as these matters relate to the national security.

(10) Pay, promotion, retirement, and other benefits and privileges of members of the armed forces.

(11) Scientific research and development in support of the armed services.

(12) Selective service.

(13) Size and composition of the Army, Navy, Marine Corps, Air Force, and Space Force.

(14) Soldiers' and sailors' homes.

(15) Strategic and critical materials necessary for the common defense.

(16) Cemeteries administered by the Department of Defense.

(d) **Committee on the Budget.**

(1) Concurrent resolutions on the budget (as defined in section 3(4) of the Congressional Budget Act of 1974), other matters required to be referred to the committee under titles III and IV of that Act, and other measures setting forth appropriate levels of budget totals for the United States Government.

(2) Budget process generally.

(3) Establishment, extension, and enforcement of special controls over the Federal budget, including the budgetary treatment of off-budget Federal agencies and measures providing exemption from reduction under any order issued under part C of the Balanced Budget and Emergency Deficit Control Act of 1985.

(e) **Committee on Education and Labor.**

(1) Child labor.

(2) Gallaudet University and Howard University and Hospital.

(3) Convict labor and the entry of goods made by convicts into interstate commerce.

(4) Food programs for children in schools.

(5) Labor standards and statistics.

(6) Education or labor generally.

(7) Mediation and arbitration of labor disputes.

(8) Regulation or prevention of importation of foreign laborers under contract.

(9) Workers' compensation.

(10) Vocational rehabilitation.

(11) Wages and hours of labor.

(12) Welfare of miners.

(13) Work incentive programs.

(14) Organization, administration, and general management of the Department of Education.

(15) Organization, administration, and general management of the Department of Labor.

(f) **Committee on Energy and Commerce.**

(1) Biomedical research and development.

(2) Consumer affairs and consumer protection.

(3) Health and health facilities (except health care supported by payroll deductions).

(4) Interstate energy compacts.

(5) Interstate and foreign commerce generally.

(6) Exploration, production, storage, supply, marketing, pricing, and regulation of energy resources, including all fossil fuels, solar energy, and other unconventional or renewable energy resources.

(7) Conservation of energy resources.

(8) Energy information generally.

(9) The generation and marketing of power (except by federally chartered or Federal regional power marketing authorities); reliability and interstate transmission of, and ratemaking for, all power; and siting of generation facilities (except the installation of interconnections between Government waterpower projects).

(10) General management of the Department of Energy and management and all functions of the Federal Energy Regulatory Commission.

(11) National energy policy generally.

(12) Public health and quarantine.

(13) Regulation of the domestic nuclear energy industry, including regulation of research and development reactors and nuclear regulatory research.

(14) Regulation of interstate and foreign communications.

(15) Travel and tourism.

The committee shall have the same jurisdiction with respect to regulation of nuclear facilities and of use of nuclear energy as it has with respect to regulation of nonnuclear facilities and of use of nonnuclear energy.

(g) **Committee on Ethics.**

The Code of Official Conduct.

(h) **Committee on Financial Services.**

(1) Banks and banking, including deposit insurance and Federal monetary policy.

(2) Economic stabilization, defense production, renegotiation, and control of the price of commodities, rents, and services.

(3) Financial aid to commerce and industry (other than transportation).

(4) Insurance generally.

(5) International finance.

(6) International financial and monetary organizations.

(7) Money and credit, including currency and the issuance of notes and redemption thereof; gold and silver, including the coinage thereof; valuation and revaluation of the dollar.

(8) Public and private housing.

(9) Securities and exchanges.

(10) Urban development.

(i) **Committee on Foreign Affairs.**

(1) Relations of the United States with foreign nations generally.

(2) Acquisition of land and buildings for embassies and legations in foreign countries.

(3) Establishment of boundary lines between the United States and foreign nations.

(4) Export controls, including nonproliferation of nuclear technology and nuclear hardware.

(5) Foreign loans.

(6) International commodity agreements (other than those involving sugar), including all agreements for cooperation in the export of nuclear technology and nuclear hardware.

(7) International conferences and congresses.

(8) International education.

(9) Intervention abroad and declarations of war.

(10) Diplomatic service.

(11) Measures to foster commercial intercourse with foreign nations and to safeguard American business interests abroad.

(12) International economic policy.

# RULES OF THE

(13) Neutrality.

(14) Protection of American citizens abroad and expatriation.

(15) The American National Red Cross.

(16) Trading with the enemy.

(17) United Nations organizations.

(j) **Committee on Homeland Security.**

(1) Overall homeland security policy.

(2) Organization, administration, and general management of the Department of Homeland Security.

(3) Functions of the Department of Homeland Security relating to the following:

(A) Border and port security (except immigration policy and non-border enforcement).

(B) Customs (except customs revenue).

(C) Integration, analysis, and dissemination of homeland security information.

(D) Domestic preparedness for and collective response to terrorism.

(E) Research and development.

(F) Transportation security.

(k) **Committee on House Administration.**

(1) Appropriations from accounts for committee salaries and expenses (except for the Committee on Appropriations); House Information Resources; and allowance and expenses of Members, Delegates, the Resident Commissioner, officers, and administrative offices of the House.

(2) Auditing and settling of all accounts described in subparagraph (1).

(3) Employment of persons by the House, including staff for Members, Delegates, the Resident Commissioner, and committees; and reporters of debates, subject to rule VI.

(4) Except as provided in paragraph (r)(11), the Library of Congress, including management thereof; the House Library; statuary and pictures; acceptance or purchase of works of art for the Capitol; the Botanic Garden; and purchase of books and manuscripts.

(5) The Smithsonian Institution and the incorporation of similar institutions (except as provided in paragraph (r)(11)).

(6) Expenditure of accounts described in subparagraph (1).

(7) Franking Commission.

(8) Printing and correction of the Congressional Record.

(9) Accounts of the House generally.

(10) Assignment of office space for Members, Delegates, the Resident Commissioner, and committees.

(11) Disposition of useless executive papers.

(12) Election of the President, Vice President, Members, Senators,

Delegates, or the Resident Commissioner; corrupt practices; contested elections; credentials and qualifications; and Federal elections generally.

(13) Services to the House, including the House Restaurant, parking facilities, and administration of the House Office Buildings and of the House wing of the Capitol.

(14) Travel of Members, Delegates, and the Resident Commissioner.

(15) Raising, reporting, and use of campaign contributions for candidates for office of Representative, of Delegate, and of Resident Commissioner.

(16) Compensation, retirement, and other benefits of the Members, Delegates, the Resident Commissioner, officers, and employees of Congress.

(l) **Committee on the Judiciary.**

(1) The judiciary and judicial proceedings, civil and criminal.

(2) Administrative practice and procedure.

(3) Apportionment of Representatives.

(4) Bankruptcy, mutiny, espionage, and counterfeiting.

(5) Civil liberties.

(6) Constitutional amendments.

(7) Criminal law enforcement and criminalization.

(8) Federal courts and judges, and local courts in the Territories and possessions.

(9) Immigration policy and non-border enforcement.

(10) Interstate compacts generally.

(11) Claims against the United States.

(12) Meetings of Congress; attendance of Members, Delegates, and the Resident Commissioner; and their acceptance of incompatible offices.

(13) National penitentiaries.

(14) Patents, the Patent and Trademark Office, copyrights, and trademarks.

(15) Presidential succession.

(16) Protection of trade and commerce against unlawful restraints and monopolies.

(17) Revision and codification of the Statutes of the United States.

(18) State and territorial boundary lines.

(19) Subversive activities affecting the internal security of the United States.

(m) **Committee on Natural Resources.**

(1) Fisheries and wildlife, including research, restoration, refuges, and conservation.

(2) Forest reserves and national parks created from the public domain.

(3) Forfeiture of land grants and alien ownership, including alien ownership of mineral lands.

(4) Geological Survey.

(5) International fishing agreements.

(6) Interstate compacts relating to apportionment of waters for irrigation purposes.

(7) Irrigation and reclamation, including water supply for reclamation projects and easements of public lands for irrigation projects; and acquisition of private lands when necessary to complete irrigation projects.

(8) Native Americans generally, including the care and allotment of Native American lands and general and special measures relating to claims that are paid out of Native American funds.

(9) Insular areas of the United States generally (except those affecting the revenue and appropriations).

(10) Military parks and battlefields, national cemeteries administered by the Secretary of the Interior, parks within the District of Columbia, and the erection of monuments to the memory of individuals.

(11) Mineral land laws and claims and entries thereunder.

(12) Mineral resources of public lands.

(13) Mining interests generally.

(14) Mining schools and experimental stations.

(15) Marine affairs, including coastal zone management (except for measures relating to oil and other pollution of navigable waters).

(16) Oceanography.

(17) Petroleum conservation on public lands and conservation of the radium supply in the United States.

(18) Preservation of prehistoric ruins and objects of interest on the public domain.

(19) Public lands generally, including entry, easements, and grazing thereon.

(20) Relations of the United States with Native Americans and Native American tribes.

(21) Trans-Alaska Oil Pipeline (except ratemaking).

(n) **Committee on Oversight and Reform.**

(1) Federal civil service, including intergovernmental personnel; and the status of officers and employees of the United States, including their compensation, classification, and retirement.

(2) Municipal affairs of the District of Columbia in general (other than appropriations).

(3) Federal paperwork reduction.

(4) Government management and accounting measures generally.

(5) Holidays and celebrations.

# HOUSE OF REPRESENTATIVES

(6) Overall economy, efficiency, and management of government operations and activities, including Federal procurement.

(7) National archives.

(8) Population and demography generally, including the Census.

(9) Postal service generally, including transportation of the mails.

(10) Public information and records.

(11) Relationship of the Federal Government to the States and municipalities generally.

(12) Reorganizations in the executive branch of the Government.

(o) **Committee on Rules.**

(1) Rules and joint rules (other than those relating to the Code of Official Conduct) and the order of business of the House.

(2) Recesses and final adjournments of Congress.

(p) **Committee on Science, Space, and Technology.**

(1) All energy research, development, and demonstration, and projects therefor, and all federally owned or operated nonmilitary energy laboratories.

(2) Astronautical research and development, including resources, personnel, equipment, and facilities.

(3) Civil aviation research and development.

(4) Environmental research and development.

(5) Marine research.

(6) Commercial application of energy technology.

(7) National Institute of Standards and Technology, standardization of weights and measures, and the metric system.

(8) National Aeronautics and Space Administration.

(9) National Space Council.

(10) National Science Foundation.

(11) National Weather Service.

(12) Outer space, including exploration and control thereof.

(13) Science scholarships.

(14) Scientific research, development, and demonstration, and projects therefor.

(q) **Committee on Small Business.**

(1) Assistance to and protection of small business, including financial aid, regulatory flexibility, and paperwork reduction.

(2) Participation of small-business enterprises in Federal procurement and Government contracts.

(r) **Committee on Transportation and Infrastructure.**

(1) Coast Guard, including lifesaving service, lighthouses, lightships, ocean derelicts, and the Coast Guard Academy.

(2) Federal management of emergencies and natural disasters.

(3) Flood control and improvement of rivers and harbors.

(4) Inland waterways.

(5) Inspection of merchant marine vessels, lights and signals, lifesaving equipment, and fire protection on such vessels.

(6) Navigation and laws relating thereto, including pilotage.

(7) Registering and licensing of vessels and small boats.

(8) Rules and international arrangements to prevent collisions at sea.

(9) The Capitol Building and the Senate and House Office Buildings.

(10) Construction or maintenance of roads and post roads (other than appropriations therefor).

(11) Construction or reconstruction, maintenance, and care of buildings and grounds of the Botanic Garden, the Library of Congress, and the Smithsonian Institution.

(12) Merchant marine (except for national security aspects thereof).

(13) Purchase of sites and construction of post offices, custom-houses, Federal courthouses, and Government buildings within the District of Columbia.

(14) Oil and other pollution of navigable waters, including inland, coastal, and ocean waters.

(15) Marine affairs, including coastal zone management, as they relate to oil and other pollution of navigable waters.

(16) Public buildings and occupied or improved grounds of the United States generally.

(17) Public works for the benefit of navigation, including bridges and dams (other than international bridges and dams).

(18) Related transportation regulatory agencies (except the Transportation Security Administration).

(19) Roads and the safety thereof.

(20) Transportation, including civil aviation, railroads, water transportation, transportation safety (except automobile safety and transportation security functions of the Department of Homeland Security), transportation infrastructure, transportation labor, and railroad retirement and unemployment (except revenue measures related thereto).

(21) Water power.

(s) **Committee on Veterans' Affairs.**

(1) Veterans' measures generally.

(2) Cemeteries of the United States in which veterans of any war or conflict are or may be buried, whether in the United States or abroad (except cemeteries administered by the Secretary of the Interior).

(3) Compensation, vocational rehabilitation, and education of veterans.

(4) Life insurance issued by the Government on account of service in the Armed Forces.

(5) Pensions of all the wars of the United States, general and special.

(6) Readjustment of service-members to civil life.

(7) Servicemembers' civil relief.

(8) Veterans' hospitals, medical care, and treatment of veterans.

(t) **Committee on Ways and Means.**

(1) Customs revenue, collection districts, and ports of entry and delivery.

(2) Reciprocal trade agreements.

(3) Revenue measures generally.

(4) Revenue measures relating to insular possessions.

(5) Bonded debt of the United States, subject to the last sentence of clause 4(f).

(6) Deposit of public monies.

(7) Transportation of dutiable goods.

(8) Tax exempt foundations and charitable trusts.

(9) National social security (except health care and facilities programs that are supported from general revenues as opposed to payroll deductions and except work incentive programs).

*General oversight responsibilities*

2. (a) The various standing committees shall have general oversight responsibilities as provided in paragraph (b) in order to assist the House in—

(1) its analysis, appraisal, and evaluation of—

(A) the application, administration, execution, and effectiveness of Federal laws; and

(B) conditions and circumstances that may indicate the necessity or desirability of enacting new or additional legislation; and

(2) its formulation, consideration, and enactment of changes in Federal laws, and of such additional legislation as may be necessary or appropriate.

(b)(1) In order to determine whether laws and programs addressing subjects within the jurisdiction of a committee are being implemented and carried out in accordance with the intent of Congress and whether they should be continued, curtailed, or eliminated, each standing committee (other than the Committee on Appropriations) shall review and study on a continuing basis—

(A) the application, administration, execution, and effectiveness of laws and programs addressing subjects within its jurisdiction;

(B) the organization and operation of Federal agencies and entities having responsibilities for the administration and execution of laws and programs addressing subjects within its jurisdiction;

(C) any conditions or circumstances that may indicate the necessity or desirability of enacting new or additional legislation addressing subjects within its jurisdiction (whether or not a bill or resolution has been introduced with respect thereto); and

# RULES OF THE

(D) future research and forecasting on subjects within its jurisdiction.

(2) Each committee to which subparagraph (1) applies having more than 20 members shall establish an oversight subcommittee, or require its subcommittees to conduct oversight in their respective jurisdictions, to assist in carrying out its responsibilities under this clause. The establishment of an oversight subcommittee does not limit the responsibility of a subcommittee with legislative jurisdiction in carrying out its oversight responsibilities.

(c) Each standing committee shall review and study on a continuing basis the impact or probable impact of tax policies affecting subjects within its jurisdiction as described in clauses 1 and 3.

(d)(1) Not later than March 1 of the first session of a Congress, the chair of each standing committee (other than the Committee on Appropriations, the Committee on Ethics, and the Committee on Rules) shall—

(A) prepare, in consultation with the ranking minority member, an oversight plan for that Congress;

(B) provide a copy of that plan to each member of the committee for at least seven calendar days before its submission; and

(C) submit that plan (including any supplemental, minority, additional, or dissenting views submitted by a member of the committee) simultaneously to the Committee on Oversight and Reform and the Committee on House Administration.

(2) In developing the plan, the chair of each committee shall, to the maximum extent feasible—

(A) consult with other committees that have jurisdiction over the same or related laws, programs, or agencies with the objective of ensuring maximum coordination and cooperation among committees when conducting reviews of such laws, programs, or agencies and include in the plan an explanation of steps that have been or will be taken to ensure such coordination and cooperation;

(B) review specific problems with Federal rules, regulations, statutes, and court decisions that are ambiguous, arbitrary, or nonsensical, or that impose severe financial burdens on individuals;

(C) give priority consideration to including in the plan the review of those laws, programs, or agencies operating under permanent budget authority or permanent statutory authority;

(D) have a view toward ensuring that all significant laws, programs, or agencies within the committee's jurisdiction are subject to review every 10 years;

(E) have a view toward insuring against duplication of Federal programs; and

(F) give priority consideration to including in the plan a discussion of how the committee's work will address issues of inequities on the basis of race, color, ethnicity, religion, sex, sexual orientation, gender identity, disability, age, or national origin.

(3) Not later than April 15 in the first session of a Congress, after consultation with the Speaker, the Majority Leader, and the Minority Leader, the Committee on Oversight and Reform shall report to the House the oversight plans submitted under subparagraph (1) together with any recommendations that it, or the House leadership group described above, may make to ensure the most effective coordination of oversight plans and otherwise to achieve the objectives of this clause.

(e) The Speaker, with the approval of the House, may appoint special ad hoc oversight committees for the purpose of reviewing specific matters within the jurisdiction of two or more standing committees.

## Special oversight functions

3. (a) The Committee on Appropriations shall conduct such studies and examinations of the organization and operation of executive departments and other executive agencies (including an agency the majority of the stock of which is owned by the United States) as it considers necessary to assist it in the determination of matters within its jurisdiction.

(b) The Committee on Armed Services shall review and study on a continuing basis laws, programs, and Government activities relating to international arms control and disarmament and the education of military dependents in schools.

(c) The Committee on the Budget shall study on a continuing basis the effect on budget outlays of relevant existing and proposed legislation and report the results of such studies to the House on a recurring basis.

(d) The Committee on Education and Labor shall review, study, and coordinate on a continuing basis laws, programs, and Government activities relating to domestic educational programs and institutions and programs of student assistance within the jurisdiction of other committees.

(e) The Committee on Energy and Commerce shall review and study on a continuing basis laws, programs, and Government activities relating to nuclear and other energy and nonmilitary nuclear energy research and development including the disposal of nuclear waste.

(f) The Committee on Foreign Affairs shall review and study on a continuing basis laws, programs, and Government activities relating to customs administration, intelligence activities relating to foreign policy, international financial and monetary organizations, and international fishing agreements.

(g)(1) The Committee on Homeland Security shall review and study on a continuing basis all Government activities relating to homeland security, including the interaction of all departments and agencies with the Department of Homeland Security.

(2) In addition, the committee shall review and study on a primary and continuing basis all Government activities, programs and organizations related to homeland security that fall within its primary legislative jurisdiction.

(h) The Committee on Natural Resources shall review and study on a continuing basis laws, programs, and Government activities relating to Native Americans.

(i) The Committee on Oversight and Reform shall review and study on a continuing basis the operation of Government activities at all levels, including the Executive Office of the President.

(j) The Committee on Rules shall review and study on a continuing basis the congressional budget process, and the committee shall report its findings and recommendations to the House from time to time.

(k) The Committee on Science, Space, and Technology shall review and study on a continuing basis laws, programs, and Government activities relating to nonmilitary research and development.

(l) The Committee on Small Business shall study and investigate on a continuing basis the problems of all types of small business.

(m) The Permanent Select Committee on Intelligence shall review and study on a continuing basis laws, programs, and activities of the intelligence community and shall review and study on an exclusive basis the sources and methods of entities described in clause 11(b)(1)(A).

## Additional functions of committees

4. (a)(1)(A) The Committee on Appropriations shall, within 30 days after the transmittal of the Budget to Congress each year, hold hearings on the Budget as a whole with particular reference to—

(i) the basic recommendations and budgetary policies of the President in the presentation of the Budget; and

(ii) the fiscal, financial, and economic assumptions used as bases in arriving at total estimated expenditures and receipts.

(B) In holding hearings under subdivision (A), the committee shall receive testimony from the Secretary of the Treasury, the Director of the Office of Management and Budget, the Chair of the Council of Economic Advisers, and such other persons as the committee may desire.

(C) A hearing under subdivision (A), or any part thereof, shall be held in open session, except when the committee, in open session and with a quorum present, determines by record vote that the testimony to be taken at that hearing on that day may be related to a matter of national security. The committee may by the same procedure close one subsequent day of hearing. A transcript of all such hearings

# HOUSE OF REPRESENTATIVES

shall be printed and a copy thereof furnished to each Member, Delegate, and the Resident Commissioner.

(D) A hearing under subdivision (A), or any part thereof, may be held before a joint meeting of the committee and the Committee on Appropriations of the Senate in accordance with such procedures as the two committees jointly may determine.

(2) Pursuant to section 401(b)(2) of the Congressional Budget Act of 1974, when a committee reports a bill or joint resolution that provides new entitlement authority as defined in section 3(9) of that Act, and enactment of the bill or joint resolution, as reported, would cause a breach of the committee's pertinent allocation of new budget authority under section 302(a) of that Act, the bill or joint resolution may be referred to the Committee on Appropriations with instructions to report it with recommendations (which may include an amendment limiting the total amount of new entitlement authority provided in the bill or joint resolution). If the Committee on Appropriations fails to report a bill or joint resolution so referred within 15 calendar days (not counting any day on which the House is not in session), the committee automatically shall be discharged from consideration of the bill or joint resolution, and the bill or joint resolution shall be placed on the appropriate calendar.

(3) In addition, the Committee on Appropriations shall study on a continuing basis those provisions of law that (on the first day of the first fiscal year for which the congressional budget process is effective) provide spending authority or permanent budget authority and shall report to the House from time to time its recommendations for terminating or modifying such provisions.

(4) In the manner provided by section 302 of the Congressional Budget Act of 1974, the Committee on Appropriations (after consulting with the Committee on Appropriations of the Senate) shall subdivide any allocations made to it in the joint explanatory statement accompanying the conference report on such concurrent resolution, and promptly report the subdivisions to the House as soon as practicable after a concurrent resolution on the budget for a fiscal year is agreed to.

(b) The Committee on the Budget shall—

(1) review on a continuing basis the conduct by the Congressional Budget Office of its functions and duties;

(2) hold hearings and receive testimony from Members, Senators, Delegates, the Resident Commissioner, and such appropriate representatives of Federal departments and agencies, the general public, and national organizations as it considers desirable in developing concurrent resolutions on the budget for each fiscal year;

(3) make all reports required of it by the Congressional Budget Act of 1974;

(4) study on a continuing basis those provisions of law that exempt Federal agencies or any of their activities or outlays from inclusion in the Budget of the United States Government, and report to the House from time to time its recommendations for terminating or modifying such provisions;

(5) study on a continuing basis proposals designed to improve and facilitate the congressional budget process, and report to the House from time to time the results of such studies, together with its recommendations; and

(6) request and evaluate continuing studies of tax expenditures, devise methods of coordinating tax expenditures, policies, and programs with direct budget outlays, and report the results of such studies to the House on a recurring basis.

(c)(1) The Committee on Oversight and Reform shall—

(A) receive and examine reports of the Comptroller General of the United States and submit to the House such recommendations as it considers necessary or desirable in connection with the subject matter of the reports;

(B) evaluate the effects of laws enacted to reorganize the legislative and executive branches of the Government; and

(C) study intergovernmental relationships between the United States and the States and municipalities and between the United States and international organizations of which the United States is a member.

(2) In addition to its duties under subparagraph (1), the Committee on Oversight and Reform may at any time conduct investigations of any matter without regard to clause 1, 2, 3, or this clause conferring jurisdiction over the matter to another standing committee. The findings and recommendations of the committee in such an investigation shall be made available to any other standing committee having jurisdiction over the matter involved.

(3)(A) The Committee on Oversight and Reform may adopt a rule authorizing and regulating the taking of depositions by a member or counsel of the committee, including pursuant to subpoena under clause 2(m) of rule XI (which hereby is made applicable for such purpose).

(B) A rule adopted by the committee pursuant to this subparagraph—

(i) may provide that a deponent be directed to subscribe an oath or affirmation before a person authorized by law to administer the same; and

(ii) shall ensure that the minority members and staff of the committee are accorded equitable treatment with respect to notice of and a reasonable opportunity to participate in any proceeding conducted thereunder.

(C) Information secured pursuant to the authority described in subdivision (A) shall retain the character of dis-covery until offered for admission in evidence before the committee, at which time any proper objection shall be timely.

(d)(1) The Committee on House Administration shall—

(A) provide policy direction for the Chief Administrative Officer, the Inspector General, the Office of Diversity and Inclusion, and the Office of the Whistleblower Ombuds and oversight of the Clerk, Sergeant-at-Arms, Chief Administrative Officer, Inspector General, Office of Diversity and Inclusion, and Office of the Whistleblower Ombuds;

(B) oversee the management of services provided to the House by the Architect of the Capitol, except those services that lie within the jurisdiction of the Committee on Transportation and Infrastructure under clause 1(r);

(C) have the function of accepting on behalf of the House a gift, except as otherwise provided by law, if the gift does not involve a duty, burden, or condition, or is not made dependent on some future performance by the House;

(D) promulgate regulations to carry out subdivision (C); and

(E) establish and maintain standards for making documents publicly available in electronic form by the House and its committees.

(2) An employing office of the House may enter into a settlement of a complaint under the Congressional Accountability Act of 1995 that provides for the payment of funds only after receiving the joint approval of the chair and ranking minority member of the Committee on House Administration concerning the amount of such payment.

(e)(1) Each standing committee shall, in its consideration of all public bills and public joint resolutions within its jurisdiction, ensure that appropriations for continuing programs and activities of the Federal Government and the government of the District of Columbia will be made annually to the maximum extent feasible and consistent with the nature, requirement, and objective of the programs and activities involved. In this subparagraph programs and activities of the Federal Government and the government of the District of Columbia includes programs and activities of any department, agency, establishment, wholly owned Government corporation, or instrumentality of the Federal Government or of the government of the District of Columbia.

(2) Each standing committee shall review from time to time each continuing program within its jurisdiction for which appropriations are not made annually to ascertain whether the program should be modified to provide for annual appropriations.

## Budget Act responsibilities

(f)(1) Each standing committee shall submit to the Committee on the Budg-

# RULES OF THE

not later than six weeks after the submission of the budget by the President, or at such time as the Committee on the Budget may request—

(A) its views and estimates with respect to all matters to be set forth in the concurrent resolution on the budget for the ensuing fiscal year that are within its jurisdiction or functions; and

(B) an estimate of the total amounts of new budget authority, and budget outlays resulting therefrom, to be provided or authorized in all bills and resolutions within its jurisdiction that it intends to be effective during that fiscal year.

(2) The views and estimates submitted by the Committee on Ways and Means under subparagraph (1) shall include a specific recommendation, made after holding public hearings, as to the appropriate level of the public debt that should be set forth in the concurrent resolution on the budget.

### Election and membership of standing committees

5. (a)(1) The standing committees specified in clause 1 shall be elected by the House within seven calendar days after the commencement of each Congress, from nominations submitted by the respective party caucus or conference. A resolution proposing to change the composition of a standing committee shall be privileged if offered by direction of the party caucus or conference concerned.

(2) The Committee on the Budget shall be composed of members as follows:

(A) Members, Delegates, or the Resident Commissioner who are members of other standing committees, including five from the Committee on Appropriations, five from the Committee on Ways and Means, and one from the Committee on Rules;

(B) one Member designated by the elected leadership of the majority party; and

(C) one Member designated by the elected leadership of the minority party.

(3)(A) The Committee on Ethics shall be composed of 10 members, five from the majority party and five from the minority party.

(B) Except as permitted by subdivision (C), a member of the Committee on Ethics may not serve on the committee during more than three Congresses in a period of five successive Congresses (disregarding for this purpose any service for less than a full session in a Congress).

(C) A member of the Committee on Ethics may serve on the committee during a fourth or fifth Congress in a period of five successive Congresses only as either the chair or the ranking minority member of the committee.

(4)(A) At the beginning of a Congress, the Speaker or a designee and the Minority Leader or a designee each shall name 10 Members, Delegates, or the Resident Commissioner from the re-

spective party of such individual who are not members of the Committee on Ethics to be available to serve on investigative subcommittees of that committee during that Congress. The lists of Members, Delegates, or the Resident Commissioner so named shall be announced to the House.

(B) Whenever the chair and the ranking minority member of the Committee on Ethics jointly determine that Members, Delegates, or the Resident Commissioner named under subdivision (A) should be assigned to serve on an investigative subcommittee of that committee, each of them shall select an equal number of such Members, Delegates, or Resident Commissioner from the respective party of such individual to serve on that subcommittee.

(b)(1) Membership on a standing committee during the course of a Congress shall be contingent on continuing membership in the party caucus or conference that nominated the Member, Delegate, or Resident Commissioner concerned for election to such committee. Should a Member, Delegate, or Resident Commissioner cease to be a member of a particular party caucus or conference, that Member, Delegate, or Resident Commissioner shall automatically cease to be a member of each standing committee to which elected on the basis of nomination by that caucus or conference. The chair of the relevant party caucus or conference shall notify the Speaker whenever a Member, Delegate, or Resident Commissioner ceases to be a member of that caucus or conference. The Speaker shall notify the chair of each affected committee that the election of such Member, Delegate, or Resident Commissioner to the committee is automatically vacated under this subparagraph.

(2)(A) Except as specified in subdivision (B), a Member, Delegate, or Resident Commissioner may not serve simultaneously as a member of more than two standing committees or more than four subcommittees of the standing committees.

(B)(i) Ex officio service by a chair or ranking minority member of a committee on each of its subcommittees under a committee rule does not count against the limitation on subcommittee service.

(ii) Service on an investigative subcommittee of the Committee on Ethics under paragraph (a)(4) does not count against the limitation on subcommittee service.

(iii) Any other exception to the limitations in subdivision (A) may be approved by the House on the recommendation of the relevant party caucus or conference.

(C) In this subparagraph the term "subcommittee" includes a panel (other than a special oversight panel of the Committee on Armed Services), task force, special subcommittee, or other subunit of a standing committee that is established for a cumulative pe-

riod longer than six months in a Congress.

(c) One of the members of each standing committee shall be elected by the House, on the nomination of the majority party caucus or conference, as chair thereof. In the absence of the member serving as chair, the member next in rank (and so on, as often as the case shall happen) shall act as chair. Rank shall be determined by the order members are named in resolutions electing them to the committee. In the case of a vacancy in the elected chair of a committee, the House shall elect another chair.

(d)(1) Except as permitted by subparagraph (2), a committee may have not more than five subcommittees.

(2)(A) A committee that maintains a subcommittee on oversight may have not more than six subcommittees.

(B) The Committee on Appropriations may have not more than 13 subcommittees.

(C) The Committee on Armed Services may have not more than seven subcommittees.

(D) The Committee on Foreign Affairs may have not more than seven subcommittees.

(E) The Committee on Oversight and Reform may have not more than seven subcommittees.

(F) The Committee on Transportation and Infrastructure may have not more than six subcommittees.

(e) The House shall fill a vacancy on a standing committee by election on the nomination of the respective party caucus or conference.

### Expense resolutions

6. (a) Whenever a committee, commission, or other entity (other than the Committee on Appropriations) is granted authorization for the payment of its expenses (including staff salaries) for a Congress, such authorization initially shall be procured by one primary expense resolution reported by the Committee on House Administration. A primary expense resolution may include a reserve fund for unanticipated expenses of committees. An amount from such a reserve fund may be allocated to a committee only by the approval of the Committee on House Administration. A primary expense resolution reported to the House may not be considered in the House unless a report thereon was available on the previous calendar day. For the information of the House, such report shall—

(1) state the total amount of the funds to be provided to the committee, commission, or other entity under the primary expense resolution for all anticipated activities and programs of the committee, commission, or other entity; and

(2) to the extent practicable, contain such general statements regarding the estimated foreseeable expenditures for the respective anticipated activities and programs of the committee, commission, or other entity as may be appropriate to provide the

House with basic estimates of the expenditures contemplated by the primary expense resolution.

(b) After the date of adoption by the House of a primary expense resolution for a committee, commission, or other entity for a Congress, authorization for the payment of additional expenses (including staff salaries) in that Congress may be procured by one or more supplemental expense resolutions reported by the Committee on House Administration, as necessary. A supplemental expense resolution reported to the House may not be considered in the House unless a report thereon was available on the previous calendar day. For the information of the House, such report shall—

(1) state the total amount of additional funds to be provided to the committee, commission, or other entity under the supplemental expense resolution and the purposes for which those additional funds are available; and

(2) state the reasons for the failure to procure the additional funds for the committee, commission, or other entity by means of the primary expense resolution.

(c) The preceding provisions of this clause do not apply to—

(1) a resolution providing for the payment from committee salary and expense accounts of the House of sums necessary to pay compensation for staff services performed for, or to pay other expenses of, a committee, commission, or other entity at any time after the beginning of an odd-numbered year and before the date of adoption by the House of the primary expense resolution described in paragraph (a) for that year; or

(2) a resolution providing each of the standing committees in a Congress additional office equipment, airmail and special-delivery postage stamps, supplies, staff personnel, or any other specific item for the operation of the standing committees, and containing an authorization for the payment from committee salary and expense accounts of the House of the expenses of any of the foregoing items provided by that resolution, subject to and until enactment of the provisions of the resolution as permanent law.

(d) From the funds made available for the appointment of committee staff by a primary or additional expense resolution, the chair of each committee shall ensure that sufficient staff is made available to each subcommittee to carry out its responsibilities under the rules of the committee and that the minority party is treated fairly in the appointment of such staff.

(e) Funds authorized for a committee under this clause and clauses 7 and 8 are for expenses incurred in the activities of the committee.

## Interim funding

7. (a) For the period beginning at noon on January 3 and ending at midnight on March 31 in each odd-numbered year, such sums as may be necessary shall be paid out of the committee salary and expense accounts of the House for continuance of necessary investigations and studies by—

(1) each standing and select committee established by these rules; and

(2) except as specified in paragraph (b), each select committee established by resolution.

(b) In the case of the first session of a Congress, amounts shall be made available for a select committee established by resolution in the preceding Congress only if—

(1) a resolution proposing to reestablish such select committee is introduced in the present Congress; and

(2) the House has not adopted a resolution of the preceding Congress providing for termination of funding for investigations and studies by such select committee.

(c) Each committee described in paragraph (a) shall be entitled for each month during the period specified in paragraph (a) to 9 percent (or such lesser percentage as may be determined by the Committee on House Administration) of the total annualized amount made available under expense resolutions for such committee in the preceding session of Congress.

(d) Payments under this clause shall be made on vouchers authorized by the committee involved, signed by the chair of the committee, except as provided in paragraph (e), and approved by the Committee on House Administration.

(e) Notwithstanding any provision of law, rule of the House, or other authority, from noon on January 3 of the first session of a Congress until the election by the House of the committee concerned in that Congress, payments under this clause shall be made on vouchers signed by the ranking member of the committee as it was constituted at the expiration of the preceding Congress who is a member of the majority party in the present Congress.

(f)(1) The authority of a committee to incur expenses under this clause shall expire upon adoption by the House of a primary expense resolution for the committee.

(2) Amounts made available under this clause shall be expended in accordance with regulations prescribed by the Committee on House Administration.

(3) This clause shall be effective only insofar as it is not inconsistent with a resolution reported by the Committee on House Administration and adopted by the House after the adoption of these rules.

## Travel

8. (a) Local currencies owned by the United States shall be made available to the committee and its employees engaged in carrying out their official duties outside the United States or its territories or possessions. Appropriated funds, including those authorized under this clause and clause 6, may not be expended for the purpose of defraying expenses of members of a committee or its employees in a country where local currencies are available for this purpose.

(b) The following conditions shall apply with respect to travel outside the United States or its territories or possessions:

(1) A member or employee of a committee may not receive or expend local currencies for subsistence in a country for a day at a rate in excess of the maximum per diem set forth in applicable Federal law.

(2) A member or employee shall be reimbursed for the expenses of such individual for a day at the lesser of—

(A) the per diem set forth in applicable Federal law; or

(B) the actual, unreimbursed expenses (other than for transportation) incurred during that day.

(3) Each member or employee of a committee shall make to the chair of the committee an itemized report showing the dates each country was visited, the amount of per diem furnished, the cost of transportation furnished, and funds expended for any other official purpose and shall summarize in these categories the total foreign currencies or appropriated funds expended. Each report shall be filed with the chair of the committee not later than 60 days following the completion of travel for use in complying with reporting requirements in applicable Federal law and shall be open for public inspection.

(c)(1) In carrying out the activities of a committee outside the United States in a country where local currencies are unavailable, a member or employee of a committee may not receive reimbursement for expenses (other than for transportation) in excess of the maximum per diem set forth in applicable Federal law.

(2) A member or employee shall be reimbursed for the expenses of such individual for a day, at the lesser of—

(A) the per diem set forth in applicable Federal law; or

(B) the actual unreimbursed expenses (other than for transportation) incurred during that day.

(3) A member or employee of a committee may not receive reimbursement for the cost of any transportation in connection with travel outside the United States unless the member or employee actually paid for the transportation.

(d) The restrictions respecting travel outside the United States set forth in paragraph (c) also shall apply to travel outside the United States by a Member, Delegate, Resident Commissioner, officer, or employee of the House authorized under any standing rule.

## Committee staffs

9. (a)(1) Subject to subparagraph (2) and paragraph (f), each standing committee may appoint, by majority vote,

# RULES OF THE

not more than 30 professional staff members to be compensated from the funds provided for the appointment of committee staff by primary and additional expense resolutions. Each professional staff member appointed under this subparagraph shall be assigned to the chair and the ranking minority member of the committee, as the committee considers advisable.

(2) Subject to paragraph (f) whenever a majority of the minority party members of a standing committee (other than the Committee on Ethics or the Permanent Select Committee on Intelligence) so request, not more than 10 persons (or one-third of the total professional committee staff appointed under this clause, whichever is fewer) may be selected, by majority vote of the minority party members, for appointment by the committee as professional staff members under subparagraph (1). The committee shall appoint persons so selected whose character and qualifications are acceptable to a majority of the committee. If the committee determines that the character and qualifications of a person so selected are unacceptable, a majority of the minority party members may select another person for appointment by the committee to the professional staff until such appointment is made. Each professional staff member appointed under this subparagraph shall be assigned to such committee business as the minority party members of the committee consider advisable.

(b)(1) The professional staff members of each standing committee—

(A) may not engage in any work other than committee business during congressional working hours; and

(B) may not be assigned a duty other than one pertaining to committee business.

(2)(A) Subparagraph (1) does not apply to staff designated by a committee as "associate" or "shared" staff who are not paid exclusively by the committee, provided that the chair certifies that the compensation paid by the committee for any such staff is commensurate with the work performed for the committee in accordance with clause 8 of rule XXIII.

(B) The use of any "associate" or "shared" staff by a committee other than the Committee on Appropriations shall be subject to the review of, and to any terms, conditions, or limitations established by, the Committee on House Administration in connection with the reporting of any primary or additional expense resolution.

(c) Each employee on the professional or investigative staff of a standing committee shall be entitled to pay at a single gross per annum rate, to be fixed by the chair and that does not exceed the maximum rate of pay as in effect from time to time under applicable provisions of law.

(d) Subject to appropriations hereby authorized, the Committee on Appropriations may appoint by majority vote such staff as it determines to be

necessary (in addition to the clerk of the committee and assistants for the minority). The staff appointed under this paragraph, other than minority assistants, shall possess such qualifications as the committee may prescribe.

(e) A committee may not appoint to its staff an expert or other personnel detailed or assigned from a department or agency of the Government except with the written permission of the Committee on House Administration.

(f) If a request for the appointment of a minority professional staff member under paragraph (a) is made when no vacancy exists for such an appointment, the committee nevertheless may appoint under paragraph (a) a person selected by the minority and acceptable to the committee. A person so appointed shall serve as an additional member of the professional staff of the committee until such a vacancy occurs (other than a vacancy in the position of head of the professional staff, by whatever title designated), at which time that person is considered as appointed to that vacancy. Such a person shall be paid from the applicable accounts of the House described in clause 1(k)(1) of rule X. If such a vacancy occurs on the professional staff when seven or more persons have been so appointed who are eligible to fill that vacancy, a majority of the minority party members shall designate which of those persons shall fill the vacancy.

(g) Each staff member appointed pursuant to a request by minority party members under paragraph (a), and each staff member appointed to assist minority members of a committee pursuant to an expense resolution described in clause 6(a), shall be accorded equitable treatment with respect to the fixing of the rate of pay, the assignment of work facilities, and the accessibility of committee records.

(h) Paragraph (a) may not be construed to authorize the appointment of additional professional staff members of a committee pursuant to a request under paragraph (a) by the minority party members of that committee if 10 or more professional staff members provided for in paragraph (a)(1) who are satisfactory to a majority of the minority party members are otherwise assigned to assist the minority party members.

(i) Notwithstanding paragraph (a)(2), a committee may employ nonpartisan staff, in lieu of or in addition to committee staff designated exclusively for the majority or minority party, by an affirmative vote of a majority of the members of the majority party and of a majority of the members of the minority party.

## Select and joint committees

10. (a) Membership on a select or joint committee appointed by the Speaker under clause 11 of rule I during the course of a Congress shall be contingent on continuing membership in the party caucus or conference of which the Member, Delegate, or Resi-

dent Commissioner concerned was a member at the time of appointment. Should a Member, Delegate, or Resident Commissioner cease to be a member of that caucus or conference, that Member, Delegate, or Resident Commissioner shall automatically cease to be a member of any select or joint committee to which assigned. The chair of the relevant party caucus or conference shall notify the Speaker whenever a Member, Delegate, or Resident Commissioner ceases to be a member of a party caucus or conference. The Speaker shall notify the chair of each affected select or joint committee that the appointment of such Member, Delegate, or Resident Commissioner to the select or joint committee is automatically vacated under this paragraph.

(b) Each select or joint committee, other than a conference committee, shall comply with clause 2(a) of rule XI unless specifically exempted by law.

## Permanent Select Committee on Intelligence

11. (a)(1) There is established a Permanent Select Committee on Intelligence (hereafter in this clause referred to as the "select committee"). The select committee shall be composed of not more than 22 Members, Delegates, or the Resident Commissioner, of whom not more than 13 may be from the same party. The select committee shall include at least one Member, Delegate, or the Resident Commissioner from each of the following committees:

(A) the Committee on Appropriations;

(B) the Committee on Armed Services;

(C) the Committee on Foreign Affairs; and

(D) the Committee on the Judiciary.

(2) The Speaker and the Minority Leader shall be ex officio members of the select committee but shall have no vote in the select committee and may not be counted for purposes of determining a quorum thereof.

(3) The Speaker and Minority Leader each may designate a respective leadership staff member to assist in the capacity of the Speaker or Minority Leader as ex officio member, with the same access to committee meetings, hearings, briefings, and materials as employees of the select committee and subject to the same security clearance and confidentiality requirements as employees of the select committee under this clause.

(4)(A) Except as permitted by subdivision (B), a Member, Delegate, or Resident Commissioner, other than the Speaker or the Minority Leader, may not serve as a member of the select committee during more than four Congresses in a period of six successive Congresses (disregarding for this purpose any service for less than a full session in a Congress).

# HOUSE OF REPRESENTATIVES

(B) In the case of a Member, Delegate, or Resident Commissioner appointed to serve as the chair or the ranking minority member of the select committee, tenure on the select committee shall not be limited.

(b)(1) There shall be referred to the select committee proposed legislation, messages, petitions, memorials, and other matters relating to the following:

(A) The Central Intelligence Agency, the Director of National Intelligence, and the National Intelligence Program as defined in section 3(6) of the National Security Act of 1947.

(B) Intelligence and intelligence-related activities of all other departments and agencies of the Government, including the tactical intelligence and intelligence-related activities of the Department of Defense.

(C) The organization or reorganization of a department or agency of the Government to the extent that the organization or reorganization relates to a function or activity involving intelligence or intelligence-related activities.

(D) Authorizations for appropriations, both direct and indirect, for the following:

(i) The Central Intelligence Agency, the Director of National Intelligence, and the National Intelligence Program as defined in section 3(6) of the National Security Act of 1947.

(ii) Intelligence and intelligence-related activities of all other departments and agencies of the Government, including the tactical intelligence and intelligence-related activities of the Department of Defense.

(iii) A department, agency, subdivision, or program that is a successor to an agency or program named or referred to in (i) or (ii).

(2) Proposed legislation initially reported by the select committee (other than provisions solely involving matters specified in subparagraph (1)(A) or subparagraph (1)(D)(i)) containing any matter otherwise within the jurisdiction of a standing committee shall be referred by the Speaker to that standing committee. Proposed legislation initially reported by another committee that contains matter within the jurisdiction of the select committee shall be referred by the Speaker to the select committee if requested by the chair of the select committee.

(3) Nothing in this clause shall be construed as prohibiting or otherwise restricting the authority of any other committee to study and review an intelligence or intelligence-related activity to the extent that such activity directly affects a matter otherwise within the jurisdiction of that committee.

(4) Nothing in this clause shall be construed as amending, limiting, or otherwise changing the authority of a standing committee to obtain full and prompt access to the product of the intelligence and intelligence-related activities of a department or agency of the Government relevant to a matter otherwise within the jurisdiction of that committee.

(c)(1) For purposes of accountability to the House, the select committee shall make regular and periodic reports to the House on the nature and extent of the intelligence and intelligence-related activities of the various departments and agencies of the United States. The select committee shall promptly call to the attention of the House, or to any other appropriate committee, a matter requiring the attention of the House or another committee. In making such report, the select committee shall proceed in a manner consistent with paragraph (g) to protect national security.

(2) The select committee shall obtain annual reports from the Director of National Intelligence, the Director of the Central Intelligence Agency, the Secretary of Defense, the Secretary of State, and the Director of the Federal Bureau of Investigation. Such reports shall review the intelligence and intelligence-related activities of the agency or department concerned and the intelligence and intelligence-related activities of foreign countries directed at the United States or its interests. An unclassified version of each report may be made available to the public at the discretion of the select committee. Nothing herein shall be construed as requiring the public disclosure in such reports of the names of persons engaged in intelligence or intelligence-related activities for the United States or the divulging of intelligence methods employed or the sources of information on which the reports are based or the amount of funds authorized to be appropriated for intelligence and intelligence-related activities.

(3) Within six weeks after the President submits a budget under section 1105(a) of title 31, United States Code, or at such time as the Committee on the Budget may request, the select committee shall submit to the Committee on the Budget the views and estimates described in section 301(d) of the Congressional Budget Act of 1974 regarding matters within the jurisdiction of the select committee.

(d)(1) Except as specified in subparagraph (2), clauses 8(a), (b), and (c) and 9(a), (b), and (c) of this rule, and clauses 1, 2, and 4 of rule XI shall apply to the select committee to the extent not inconsistent with this clause.

(2) Notwithstanding the requirements of the first sentence of clause 2(g)(2) of rule XI, in the presence of the number of members required under the rules of the select committee for the purpose of taking testimony or receiving evidence, the select committee may vote to close a hearing whenever a majority of those present determines that the testimony or evidence would endanger the national security.

(e) An employee of the select committee, or a person engaged by contract or otherwise to perform services for or at the request of the select committee, may not be given access to any classified information by the select committee unless such employee or person has—

(1) agreed in writing and under oath to be bound by the Rules of the House, including the jurisdiction of the Committee on Ethics and of the select committee concerning the security of classified information during and after the period of the employment or contractual agreement of such employee or person with the select committee; and

(2) received an appropriate security clearance, as determined by the select committee in consultation with the Director of National Intelligence, that is commensurate with the sensitivity of the classified information to which such employee or person will be given access by the select committee.

(f) The select committee shall formulate and carry out such rules and procedures as it considers necessary to prevent the disclosure, without the consent of each person concerned, of information in the possession of the select committee that unduly infringes on the privacy or that violates the constitutional rights of such person. Nothing herein shall be construed to prevent the select committee from publicly disclosing classified information in a case in which it determines that national interest in the disclosure of classified information clearly outweighs any infringement on the privacy of a person.

(g)(1) The select committee may disclose publicly any information in its possession after a determination by the select committee that the public interest would be served by such disclosure. With respect to the disclosure of information for which this paragraph requires action by the select committee—

(A) the select committee shall meet to vote on the matter within five days after a member of the select committee requests a vote; and

(B) a member of the select committee may not make such a disclosure before a vote by the select committee on the matter, or after a vote by the select committee on the matter except in accordance with this paragraph.

(2)(A) In a case in which the select committee votes to disclose publicly any information that has been classified under established security procedures, that has been submitted to it by the executive branch, and that the executive branch requests be kept secret, the select committee shall notify the President of such vote.

(B) The select committee may disclose publicly such information after the expiration of a five-day period following the day on which notice of the vote to disclose is transmitted to the

# RULES OF THE

President unless, before the expiration of the five-day period, the President, personally in writing, notifies the select committee that the President objects to the disclosure of such information, provides reasons therefor, and certifies that the threat to the national interest of the United States posed by the disclosure is of such gravity that it outweighs any public interest in the disclosure.

(C) If the President, personally in writing, notifies the select committee of objections to the disclosure of information as provided in subdivision (B), the select committee may, by majority vote, refer the question of the disclosure of such information, with a recommendation thereon, to the House. The select committee may not publicly disclose such information without leave of the House.

(D) Whenever the select committee votes to refer the question of disclosure of any information to the House under subdivision (C), the chair shall, not later than the first day on which the House is in session following the day on which the vote occurs, report the matter to the House for its consideration.

(E) If the chair of the select committee does not offer in the House a motion to consider in closed session a matter reported under subdivision (D) within four calendar days on which the House is in session after the recommendation described in subdivision (C) is reported, then such a motion shall be privileged when offered by a Member, Delegate, or Resident Commissioner. In either case such a motion shall be decided without debate or intervening motion except one that the House adjourn.

(F) Upon adoption by the House of a motion to resolve into closed session as described in subdivision (E), the Speaker may declare a recess subject to the call of the Chair. At the expiration of the recess, the pending question, in closed session, shall be, ''Shall the House approve the recommendation of the select committee?''.

(G) Debate on the question described in subdivision (F) shall be limited to two hours equally divided and controlled by the chair and ranking minority member of the select committee. After such debate the previous question shall be considered as ordered on the question of approving the recommendation without intervening motion except one motion that the House adjourn. The House shall vote on the question in open session but without divulging the information with respect to which the vote is taken. If the recommendation of the select committee is not approved, then the question is considered as recommitted to the select committee for further recommendation.

(3)(A) Information in the possession of the select committee relating to the lawful intelligence or intelligence-related activities of a department or agency of the United States that has been classified under established security procedures, and that the select committee has determined should not be disclosed under subparagraph (1) or (2), may not be made available to any person by a Member, Delegate, Resident Commissioner, officer, or employee of the House except as provided in subdivision (B).

(B) The select committee shall, under such regulations as it may prescribe, make information described in subdivision (A) available to a committee or a Member, Delegate, or Resident Commissioner, and permit a Member, Delegate, or Resident Commissioner to attend a hearing of the select committee that is closed to the public. Whenever the select committee makes such information available, it shall keep a written record showing, in the case of particular information, which committee or which Member, Delegate, or Resident Commissioner received the information. A Member, Delegate, or Resident Commissioner who, and a committee that, receives information under this subdivision may not disclose the information except in a closed session of the House.

(4) The Committee on Ethics shall investigate any unauthorized disclosure of intelligence or intelligence-related information by a Member, Delegate, Resident Commissioner, officer, or employee of the House in violation of subparagraph (3) and report to the House concerning any allegation that it finds to be substantiated.

(5) Upon the request of a person who is subject to an investigation described in subparagraph (4), the Committee on Ethics shall release to such person at the conclusion of its investigation a summary of its investigation, together with its findings. If, at the conclusion of its investigation, the Committee on Ethics determines that there has been a significant breach of confidentiality or unauthorized disclosure by a Member, Delegate, Resident Commissioner, officer, or employee of the House, it shall report its findings to the House and recommend appropriate action. Recommendations may include censure, removal from committee membership, or expulsion from the House, in the case of a Member, or removal from office or employment or punishment for contempt, in the case of an officer or employee.

(h) The select committee may permit a personal representative of the President, designated by the President to serve as a liaison to the select committee, to attend any closed meeting of the select committee.

(i) Subject to the Rules of the House, funds may not be appropriated for a fiscal year, with the exception of a bill or joint resolution continuing appropriations, or an amendment thereto, or a conference report thereon, to, or for use of, a department or agency of the United States to carry out any of the following activities, unless the funds shall previously have been authorized by a bill or joint resolution passed by the House during the same or preceding fiscal year to carry out such activity for such fiscal year:

(1) The activities of the Director of National Intelligence and the Office of the Director of National Intelligence.

(2) The activities of the Central Intelligence Agency.

(3) The activities of the Defense Intelligence Agency.

(4) The activities of the National Security Agency.

(5) The intelligence and intelligence-related activities of other agencies and subdivisions of the Department of Defense.

(6) The intelligence and intelligence-related activities of the Department of State.

(7) The intelligence and intelligence-related activities of the Federal Bureau of Investigation.

(8) The intelligence and intelligence-related activities of all other departments and agencies of the executive branch.

(j)(1) In this clause the term ''intelligence and intelligence-related activities'' includes—

(A) the collection, analysis, production, dissemination, or use of information that relates to a foreign country, or a government, political group, party, military force, movement, or other association in a foreign country, and that relates to the defense, foreign policy, national security, or related politics of the United States and other activity in support of the collection, analysis, production, dissemination, or use of such information;

(B) activities taken to counter similar activities directed against the United States;

(C) covert or clandestine activities affecting the relations of the United States with a foreign government, political group, party, military force, movement, or other association;

(D) the collection, analysis, production, dissemination, or use of information about activities of persons within the United States, its territories and possessions, or nationals of the United States abroad whose political and related activities pose, or may be considered by a department, agency, bureau, office, division, instrumentality, or employee of the United States to pose, a threat to the internal security of the United States; and

(E) covert or clandestine activities directed against persons described in subdivision (D).

(2) In this clause the term ''department or agency'' includes any organization, committee, council, establishment, or office within the Federal Government.

(3) For purposes of this clause, reference to a department, agency, bureau, or subdivision shall include a reference to any successor department, agency, bureau, or subdivision to the extent that a successor engages in in-

# HOUSE OF REPRESENTATIVES

telligence or intelligence-related activities now conducted by the department, agency, bureau, or subdivision referred to in this clause.

(k) Clause 12(a) of rule XXII does not apply to meetings of a conference committee respecting legislation (or any part thereof) reported by the Permanent Select Committee on Intelligence.

## RULE XI

### PROCEDURES OF COMMITTEES AND UNFINISHED BUSINESS

*In general*

1. (a)(1)(A) The Rules of the House are the rules of its committees and subcommittees so far as applicable.

(B) Each subcommittee is a part of its committee and is subject to the authority and direction of that committee and to its rules, so far as applicable.

(2)(A) In a committee or subcommittee—

(i) a motion to recess from day to day, or to recess subject to the call of the Chair (within 24 hours), shall be privileged; and

(ii) a motion to dispense with the first reading (in full) of a bill or resolution shall be privileged if printed copies are available.

(B) A motion accorded privilege under this subparagraph shall be decided without debate.

(b)(1) Each committee may conduct at any time such investigations and studies as it considers necessary or appropriate in the exercise of its responsibilities under rule X. Subject to the adoption of expense resolutions as required by clause 6 of rule X, each committee may incur expenses, including travel expenses, in connection with such investigations and studies.

(2) A proposed investigative or oversight report shall be considered as read in committee if it has been available to the members for at least 24 hours (excluding Saturdays, Sundays, or legal holidays except when the House is in session on such a day).

(3) A report of an investigation or study conducted jointly by more than one committee may be filed jointly, provided that each of the committees complies independently with all requirements for approval and filing of the report.

(4) After an adjournment sine die of the last regular session of a Congress, an investigative or oversight report may be filed with the Clerk at any time, provided that a member who gives timely notice of intention to file supplemental, minority, additional, or dissenting views shall be entitled to not less than seven calendar days in which to submit such views for inclusion in the report.

(c) Each committee may have printed and bound such testimony and other data as may be presented at hearings held by the committee or its subcommittees. All costs of stenographic services and transcripts in connection with a meeting or hearing of a committee shall be paid from the applica-

ble accounts of the House described in clause 1(k)(1) of rule X.

(d)(1) Not later than January 2 of each odd-numbered year, a committee shall submit to the House a report on the activities of that committee.

(2) Such report shall include—

(A) separate sections summarizing the legislative and oversight activities of that committee under this rule and rule X during the Congress;

(B) a summary of the oversight plans submitted by the committee under clause 2(d) of rule X;

(C) a summary of the actions taken and recommendations made with respect to the oversight plans specified in subdivision (B);

(D) a summary of any additional oversight activities undertaken by that committee and any recommendations made or actions taken thereon; and

(E) a delineation of any hearings held pursuant to clauses 2(n), (o), or (p) of this rule.

(3) After an adjournment sine die of the last regular session of a Congress, or after December 15 of an even-numbered year, whichever occurs first, the chair of a committee may file the report described in subparagraph (1) with the Clerk at any time and without approval of the committee, provided that—

(A) a copy of the report has been available to each member of the committee for at least seven calendar days; and

(B) the report includes any supplemental, minority, additional, or dissenting views submitted by a member of the committee.

*Adoption of written rules*

2. (a)(1) Each standing committee shall adopt written rules governing its procedure. Such rules—

(A) shall be adopted in a meeting that is open to the public unless the committee, in open session and with a quorum present, determines by record vote that all or part of the meeting on that day shall be closed to the public;

(B) may not be inconsistent with the Rules of the House or with those provisions of law having the force and effect of Rules of the House;

(C) shall in any event incorporate all of the succeeding provisions of this clause to the extent applicable; and

(D) shall include provisions to govern the implementation of clause 4 as provided in paragraph (f) of such clause.

(2) Each committee shall make its rules publicly available in electronic form and submit such rules for publication in the Congressional Record not later than 60 days after the chair of the committee is elected in each odd-numbered year.

(3) A committee may adopt a rule providing that the chair be directed to offer a motion under clause 1 of rule

XXII whenever the chair considers it appropriate.

*Regular meeting days*

(b) Each standing committee shall establish regular meeting days for the conduct of its business, which shall be not less frequent than monthly. Each such committee shall meet for the consideration of a bill or resolution pending before the committee or the transaction of other committee business on all regular meeting days fixed by the committee if notice is given pursuant to paragraph (g)(3).

*Additional and special meetings*

(c)(1) The chair of each standing committee may call and convene, as the chair considers necessary, additional and special meetings of the committee for the consideration of a bill or resolution pending before the committee or for the conduct of other committee business, subject to such rules as the committee may adopt. The committee shall meet for such purpose under that call of the chair.

(2) Three or more members of a standing committee may file in the offices of the committee a written request that the chair call a special meeting of the committee. Such request shall specify the measure or matter to be considered. Immediately upon the filing of the request, the clerk or the committee shall notify the chair of the filing of the request. If the chair does not call the requested special meeting within three calendar days after the filing of the request (to be held within seven calendar days after the filing of the request) a majority of the members of the committee may file in the offices of the committee their written notice that a special meeting of the committee will be held. The written notice shall specify the date and hour of the special meeting and the measure or matter to be considered. The committee shall meet on that date and hour. Immediately upon the filing of the notice, the clerk of the committee shall notify all members of the committee that such special meeting will be held and inform them of its date and hour and the measure or matter to be considered. Such notice shall also be made publicly available in electronic form and shall be deemed to satisfy paragraph (g)(3)(A)(ii). Only the measure or matter specified in that notice may be considered at that special meeting.

*Temporary absence of chair*

(d) A member of the majority party on each standing committee or subcommittee thereof shall be designated by the chair of the full committee as the vice chair of the committee or subcommittee, as the case may be, and shall preside during the absence of the chair from any meeting. If the chair and vice chair of a committee or subcommittee are not present at any meeting of the committee or subcommittee, the ranking majority mem-

# RULES OF THE

ber who is present shall preside at that meeting.

***Committee records***

(e)(1)(A) Each committee shall keep a complete record of all committee action which shall include—

(i) in the case of a meeting or hearing transcript, a substantially verbatim account of remarks actually made during the proceedings, subject only to technical, grammatical, and typographical corrections authorized by the person making the remarks involved; and

(ii) a record of the votes on any question on which a record vote is taken.

(B)(i) Except as provided in item (ii) and subject to paragraph (k)(7), the result of each such record vote shall be made publicly available in electronic form within 48 hours of such record vote. Information so available shall include a description of the amendment, motion, order, or other proposition, the name of each member voting for and each member voting against such amendment, motion, order, or proposition, and the names of those members of the committee present but not voting.

(ii) The result of any record vote taken in executive session in the Committee on Ethics may not be made publicly available without an affirmative vote of a majority of the members of the committee.

(2)(A) Except as provided in subdivision (B), all committee records (including hearings, data, charts, and files) shall be kept separate and distinct from the congressional office records of the member serving as its chair. Such records shall be the property of the House, and each Member, Delegate, and the Resident Commissioner shall have access thereto.

(B) A Member, Delegate, or Resident Commissioner, other than members of the Committee on Ethics, may not have access to the records of that committee respecting the conduct of a Member, Delegate, Resident Commissioner, officer, or employee of the House without the specific prior permission of that committee.

(3) Each committee shall include in its rules standards for availability of records of the committee delivered to the Archivist of the United States under rule VII. Such standards shall specify procedures for orders of the committee under clause 3(b)(3) and clause 4(b) of rule VII, including a requirement that nonavailability of a record for a period longer than the period otherwise applicable under that rule shall be approved by vote of the committee.

(4) Each committee shall make its publications available in electronic form to the maximum extent feasible.

(5) To the maximum extent practicable, each committee shall—

(A) provide audio and video coverage of each hearing or meeting for the transaction of business in a man-

ner that allows the public to easily listen to and view the proceedings; and

(B) maintain the recordings of such coverage in a manner that is easily accessible to the public.

(6) Not later than 24 hours after the adoption of any amendment, or 48 hours after the disposition or withdrawal of any other amendment, to a measure or matter considered by a committee, the chair of such committee shall cause the text of each such amendment to be made publicly available in electronic form.

***Prohibition against proxy voting***

(f) A vote by a member of a committee or subcommittee with respect to any measure or matter may not be cast by proxy.

***Open meetings and hearings***

(g)(1) Each meeting for the transaction of business, including the markup of legislation, by a standing committee or subcommittee thereof (other than the Committee on Ethics or its subcommittees) shall be open to the public, including to radio, television, and still photography coverage, except when the committee or subcommittee, in open session and with a majority present, determines by record vote that all or part of the remainder of the meeting on that day shall be in executive session because disclosure of matters to be considered would endanger national security, would compromise sensitive law enforcement information, would tend to defame, degrade, or incriminate any person, or otherwise would violate a law or rule of the House. Persons, other than members of the committee and such noncommittee Members, Delegates, Resident Commissioner, congressional staff, or departmental representatives as the committee may authorize, may not be present at a business or markup session that is held in executive session. This subparagraph does not apply to open committee hearings, which are governed by clause 4(a)(1) of rule X or by subparagraph (2).

(2)(A) Each hearing conducted by a committee or subcommittee (other than the Committee on Ethics or its subcommittees) shall be open to the public, including to radio, television, and still photography coverage, except when the committee or subcommittee, in open session and with a majority present, determines by record vote that all or part of the remainder of that hearing on that day shall be closed to the public because disclosure of testimony, evidence, or other matters to be considered would endanger national security, would compromise sensitive law enforcement information, or would violate a law or rule of the House.

(B) Notwithstanding the requirements of subdivision (A), in the presence of the number of members required under the rules of the committee for the purpose of taking testimony, a majority of those present may—

(i) agree to close the hearing for the sole purpose of discussing whether testimony or evidence to be received would endanger national security, would compromise sensitive law enforcement information, or would violate clause 2(k)(5); or

(ii) agree to close the hearing as provided in clause 2(k)(5).

(C) A Member, Delegate, or Resident Commissioner may not be excluded from nonparticipatory attendance at a hearing of a committee or subcommittee (other than the Committee on Ethics or its subcommittees) unless the House by majority vote authorizes a particular committee or subcommittee, for purposes of a particular series of hearings on a particular article of legislation or on a particular subject of investigation, to close its hearings to Members, Delegates, and the Resident Commissioner by the same procedures specified in this subparagraph for closing hearings to the public.

(D) The committee or subcommittee may vote by the same procedure described in this subparagraph to close one subsequent day of hearing, except that the Committee on Appropriations, the Committee on Armed Services, the Committee on Homeland Security, and the Permanent Select Committee on Intelligence, and the subcommittees thereof, may vote by the same procedure to close up to five additional, consecutive days of hearings.

(3)(A) The chair of a committee shall announce the date, place, and subject matter of—

(i) a committee hearing, which may not commence earlier than one week after such notice; or

(ii) a committee meeting, which may not commence earlier than the third calendar day (excluding Saturdays, Sundays, or legal holidays except when the House is in session on such a day) on which members have notice thereof.

(B) A hearing or meeting may begin sooner than specified in subdivision (A) in either of the following circumstances (in which case the chair shall make the announcement specified in subdivision (A) at the earliest possible time):

(i) the chair of the committee, with the concurrence of the ranking minority member, determines that there is good cause; or

(ii) the committee so determines by majority vote in the presence of the number of members required under the rules of the committee for the transaction of business.

(C) An announcement made under this subparagraph shall be published promptly in the Daily Digest and made publicly available in electronic form.

(D) This subparagraph and subparagraph (4) shall not apply to the Committee on Rules.

(4) At least 24 hours prior to the commencement of a meeting for the markup of legislation, or at the time of an announcement under subparagraph

# HOUSE OF REPRESENTATIVES

(3)(B) made within 24 hours before such meeting, the chair of the committee shall cause the text of such legislation to be made publicly available in electronic form.

(5)(A) Each committee shall, to the greatest extent practicable, require witnesses who appear before it to submit in advance written statements of proposed testimony and to limit their initial presentations to the committee to brief summaries thereof.

(B) In the case of a witness appearing in a non-governmental capacity, a written statement of proposed testimony shall include—

(i) a curriculum vitae;

(ii) a disclosure of any Federal grants or contracts, or contracts, grants, or payments originating with a foreign government, received during the past 36 months by the witness or by an entity represented by the witness and related to the subject matter of the hearing; and

(iii) a disclosure of whether the witness is a fiduciary (including, but not limited to, a director, officer, advisor, or resident agent) of any organization or entity that has an interest in the subject matter of the hearing.

(C) The disclosure referred to in subdivision (B)(ii) shall include—

(i) the amount and source of each Federal grant (or subgrant thereof) or contract (or subcontract thereof) related to the subject matter of the hearing; and

(ii) the amount and country of origin of any payment or contract related to the subject matter of the hearing originating with a foreign government.

(D) Such statements, with appropriate redactions to protect the privacy or security of the witness, shall be made publicly available in electronic form 24 hours before the witness appears to the extent practicable, but not later than one day after the witness appears.

(6)(A) Except as provided in subdivision (B), a point of order does not lie with respect to a measure reported by a committee on the ground that hearings on such measure were not conducted in accordance with this clause.

(B) A point of order on the ground described in subdivision (A) may be made by a member of the committee that reported the measure if such point of order was timely made and improperly disposed of in the committee.

(7) This paragraph does not apply to hearings of the Committee on Appropriations under clause 4(a)(1) of rule X.

## Quorum requirements

(h)(1) A measure or recommendation may not be reported by a committee unless a majority of the committee is actually present.

(2) Each committee may fix the number of its members to constitute a quorum for taking testimony and re-

ceiving evidence, which may not be less than two.

(3) Each committee (other than the Committee on Appropriations, the Committee on the Budget, and the Committee on Ways and Means) may fix the number of its members to constitute a quorum for taking any action other than one for which the presence of a majority of the committee is otherwise required, which may not be less than one-third of the members.

(4)(A) Each committee may adopt a rule authorizing the chair of a committee or subcommittee—

(i) to postpone further proceedings when a record vote is ordered on the question of approving a measure or matter or on adopting an amendment; and

(ii) to resume proceedings on a postponed question at any time after reasonable notice.

(B) A rule adopted pursuant to this subparagraph shall provide that when proceedings resume on a postponed question, notwithstanding any intervening order for the previous question, an underlying proposition shall remain subject to further debate or amendment to the same extent as when the question was postponed.

## Limitation on committee sittings

(i) A committee may not sit during a joint session of the House and Senate or during a recess when a joint meeting of the House and Senate is in progress.

## Calling and questioning of witnesses

(j)(1) Whenever a hearing is conducted by a committee on a measure or matter, the minority members of the committee shall be entitled, upon request to the chair by a majority of them before the completion of the hearing, to call witnesses selected by the minority to testify with respect to that measure or matter during at least one day of hearing thereon.

(2)(A) Subject to subdivisions (B) and (C), each committee shall apply the five-minute rule during the questioning of witnesses in a hearing until such time as each member of the committee who so desires has had an opportunity to question each witness.

(B) A committee may adopt a rule or motion permitting a specified number of its members to question a witness for longer than five minutes. The time for extended questioning of a witness under this subdivision shall be equal for the majority party and the minority party and may not exceed one hour in the aggregate.

(C) A committee may adopt a rule or motion permitting committee staff for its majority and minority party members to question a witness for equal specified periods. The time for extended questioning of a witness under this subdivision shall be equal for the majority party and the minority party and may not exceed one hour in the aggregate.

## Hearing procedures

(k)(1) The chair at a hearing shall announce in an opening statement the subject of the hearing.

(2) A copy of the committee rules and of this clause shall be made available to each witness on request.

(3) Witnesses at hearings may be accompanied by their own counsel for the purpose of advising them concerning their constitutional rights.

(4) The chair may punish breaches of order and decorum, and of professional ethics on the part of counsel, by censure and exclusion from the hearings; and the committee may cite the offender to the House for contempt.

(5) Whenever it is asserted by a member of the committee that the evidence or testimony at a hearing may tend to defame, degrade, or incriminate any person, or it is asserted by a witness that the evidence or testimony that the witness would give at a hearing may tend to defame, degrade, or incriminate the witness—

(A) notwithstanding paragraph (g)(2), such testimony or evidence shall be presented in executive session if, in the presence of the number of members required under the rules of the committee for the purpose of taking testimony, the committee determines by vote of a majority of those present that such evidence or testimony may tend to defame, degrade, or incriminate any person; and

(B) the committee shall proceed to receive such testimony in open session only if the committee, a majority being present, determines that such evidence or testimony will not tend to defame, degrade, or incriminate any person.

In either case the committee shall afford such person an opportunity voluntarily to appear as a witness, and receive and dispose of requests from such person to subpoena additional witnesses.

(6) Except as provided in subparagraph (5), the chair shall receive and the committee shall dispose of requests to subpoena additional witnesses.

(7) Evidence or testimony taken in executive session, and proceedings conducted in executive session, may be released or used in public sessions only when authorized by the committee, a majority being present.

(8) In the discretion of the committee, witnesses may submit brief and pertinent sworn statements in writing for inclusion in the record. The committee is the sole judge of the pertinence of testimony and evidence adduced at its hearing.

(9) A witness may obtain a transcript copy of the testimony of such witness given at a public session or, if given at an executive session, when authorized by the committee.

## Supplemental, minority, additional, or dissenting views

(l) If at the time of approval of a measure or matter by a committee (other than the Committee on Rules) a

# RULES OF THE

member of the committee gives notice of intention to file supplemental, minority, additional, or dissenting views for inclusion in the report to the House thereon, all members shall be entitled to not less than two additional calendar days after the day of such notice (excluding Saturdays, Sundays, and legal holidays except when the House is in session on such a day) to file such written and signed views (including in electronic form) with the clerk of the committee.

*Power to sit and act; subpoena power*

(m)(1) For the purpose of carrying out any of its functions and duties under this rule and rule X (including any matters referred to it under clause 2 of rule XII), a committee or subcommittee is authorized (subject to subparagraph (3)(A))—

(A) to sit and act at such times and places within the United States, whether the House is in session, has recessed, or has adjourned, and to hold such hearings as it considers necessary; and

(B) to require, by subpoena or otherwise, the attendance and testimony of such witnesses and the production of such books, records, correspondence, memoranda, papers, and documents as it considers necessary.

(2) The chair of the committee, or a member designated by the chair, may administer oaths to witnesses.

(3)(A)(i) Except as provided in subdivision (A)(ii), a subpoena may be authorized and issued by a committee or subcommittee under subparagraph (1)(B) in the conduct of an investigation or series of investigations or activities only when authorized by the committee or subcommittee, a majority being present. The power to authorize and issue subpoenas under subparagraph (1)(B) may be delegated to the chair of the committee under such rules and under such limitations as the committee may prescribe. Authorized subpoenas shall be signed by the chair of the committee or by a member designated by the committee.

(ii) In the case of a subcommittee of the Committee on Ethics, a subpoena may be authorized and issued only by an affirmative vote of a majority of its members.

(B) A subpoena duces tecum may specify terms of return other than at a meeting or hearing of the committee or subcommittee authorizing the subpoena.

(C) Compliance with a subpoena issued by a committee or subcommittee under subparagraph (1)(B) may be enforced only as authorized or directed by the House.

(D) Subpoenas for documents or testimony may be issued to any person or entity, whether governmental, public, or private, within the United States, including, but not limited to, the President, and the Vice President, whether current or former, in a personal or official capacity, as well as the White House, the Office of the President, the Executive Office of the President, and any individual currently or formerly employed in the White House, Office of the President, or Executive Office of the President.

(n)(1) Each standing committee, or a subcommittee thereof, shall hold at least one hearing during each 120-day period following the establishment of the committee on the topic of waste, fraud, abuse, or mismanagement in Government programs which that committee may authorize.

(2) A hearing described in subparagraph (1) shall include a focus on the most egregious instances of waste, fraud, abuse, or mismanagement as documented by any report the committee has received from a Federal Office of the Inspector General or the Comptroller General of the United States.

(o) Each committee, or a subcommittee thereof, shall hold at least one hearing in any session in which the committee has received disclaimers of agency financial statements from auditors of any Federal agency that the committee may authorize to hear testimony on such disclaimers from representatives of any such agency.

(p) Each standing committee, or a subcommittee thereof, shall hold at least one hearing on issues raised by reports issued by the Comptroller General of the United States indicating that Federal programs or operations that the committee may authorize are at high risk for waste, fraud, and mismanagement, known as the "high-risk list" or the "high-risk series."

*Committee on Ethics*

3. (a) The Committee on Ethics has the following functions:

(1) The committee may recommend to the House from time to time such administrative actions as it may consider appropriate to establish or enforce standards of official conduct for Members, Delegates, the Resident Commissioner, officers, and employees of the House. A letter of reproval or other administrative action of the committee pursuant to an investigation under subparagraph (2) shall only be issued or implemented as a part of a report required by such subparagraph.

(2) The committee may investigate, subject to paragraph (b), an alleged violation by a Member, Delegate, Resident Commissioner, officer, or employee of the House of the Code of Official Conduct or of a law, rule, regulation, or other standard of conduct applicable to the conduct of such Member, Delegate, Resident Commissioner, officer, or employee in the performance of the duties or the discharge of the responsibilities of such individual. After notice and hearing (unless the right to a hearing is waived by the Member, Delegate, Resident Commissioner, officer, or employee), the committee shall report to the House its findings of fact and recommendations, if any, for the final disposition of any such investigation and such action as the committee may consider appropriate in the circumstances.

(3) The committee may report to the appropriate Federal or State authorities, either with the approval of the House or by an affirmative vote of two-thirds of the members of the committee, any substantial evidence of a violation by a Member, Delegate, Resident Commissioner, officer, or employee of the House, of a law applicable to the performance of the duties or the discharge of the responsibilities of such individual that may have been disclosed in a committee investigation.

(4) The committee may consider the request of a Member, Delegate, Resident Commissioner, officer, or employee of the House for an advisory opinion with respect to the general propriety of any current or proposed conduct of such Member, Delegate, Resident Commissioner, officer, or employee. With appropriate deletions to ensure the privacy of the person concerned, the committee may publish such opinion for the guidance of other Members, Delegates, the Resident Commissioner, officers, and employees of the House.

(5) The committee may consider the request of a Member, Delegate, Resident Commissioner, officer, or employee of the House for a written waiver in exceptional circumstances with respect to clause 4 of rule XXIII.

(6)(A) The committee shall offer annual ethics training to each Member, Delegate, Resident Commissioner, officer, and employee of the House. Such training shall—

(i) involve the classes of employees for whom the committee determines such training to be appropriate; and

(ii) include such knowledge of the Code of Official Conduct and related House rules as may be determined appropriate by the committee.

(B)(i) A new Member, Delegate, Resident Commissioner, officer, or employee of the House shall receive training under this paragraph not later than 60 days after beginning service to the House.

(ii) Not later than January 31 of each year, each Member, Delegate, Resident Commissioner, officer, and employee of the House shall file a certification with the committee that the Member, Delegate, Resident Commissioner, officer or employee attended ethics training in the last year as established by this subparagraph.

(b)(1)(A) Unless approved by an affirmative vote of a majority of its members, the Committee on Ethics may not report a resolution, report, recommendation, or advisory opinion relating to the official conduct of a Member, Delegate, Resident Commissioner, officer, or employee of the House, or, except as provided in sub-

paragraph (2), undertake an investigation of such conduct.

(B)(i) Upon the receipt of information offered as a complaint that is in compliance with this rule and the rules of the committee, the chair and ranking minority member jointly may appoint members to serve as an investigative subcommittee.

(ii) The chair and ranking minority member of the committee jointly may gather additional information concerning alleged conduct that is the basis of a complaint or of information offered as a complaint until they have established an investigative subcommittee or either of them has placed on the agenda of the committee the issue of whether to establish an investigative subcommittee.

(2) Except in the case of an investigation undertaken by the committee on its own initiative, the committee may undertake an investigation relating to the official conduct of an individual Member, Delegate, Resident Commissioner, officer, or employee of the House only—

(A) upon receipt of information offered as a complaint, in writing and under oath, from a Member, Delegate, or Resident Commissioner and transmitted to the committee by such Member, Delegate, or Resident Commissioner;

(B) upon receipt of information offered as a complaint, in writing and under oath, from a person not a Member, Delegate, or Resident Commissioner provided that a Member, Delegate, or Resident Commissioner certifies in writing to the committee that such Member, Delegate, or Resident Commissioner believes the information is submitted in good faith and warrants the review and consideration of the committee; or

(C) upon receipt of a report regarding a referral from the board of the Office of Congressional Ethics.

If a complaint is not disposed of within the applicable periods set forth in the rules of the Committee on Ethics, the chair and ranking minority member shall establish jointly an investigative subcommittee and forward the complaint, or any portion thereof, to that subcommittee for its consideration. However, if at any time during those periods either the chair or ranking minority member places on the agenda the issue of whether to establish an investigative subcommittee, then an investigative subcommittee may be established only by an affirmative vote of a majority of the members of the committee.

(3) The committee may not undertake an investigation of an alleged violation of a law, rule, regulation, or standard of conduct that was not in effect at the time of the alleged violation. The committee may not undertake an investigation of such an alleged violation that occurred before the third previous Congress unless the committee determines that the alleged violation is directly related to an al-

leged violation that occurred in a more recent Congress.

(4) A member of the committee shall be ineligible to participate as a member of the committee in a committee proceeding relating to the member's official conduct. Whenever a member of the committee is ineligible to act as a member of the committee under the preceding sentence, the Speaker shall designate a Member, Delegate, or Resident Commissioner from the same political party as the ineligible member to act in any proceeding of the committee relating to that conduct.

(5) A member of the committee may seek disqualification from participating in an investigation of the conduct of a Member, Delegate, or Resident Commissioner, officer, or employee of the House upon the submission in writing and under oath of an affidavit of disqualification stating that the member cannot render an impartial and unbiased decision in the case in which the member seeks to be disqualified. If the committee approves and accepts such affidavit of disqualification, the chair shall so notify the Speaker and request the Speaker to designate a Member, Delegate, or Resident Commissioner from the same political party as the disqualifying member to act in any proceeding of the committee relating to that case.

(6) Information or testimony received, or the contents of a complaint or the fact of its filing, may not be publicly disclosed by any committee or staff member unless specifically authorized in each instance by a vote of the full committee.

(7) The committee shall have the functions designated in titles I and V of the Ethics in Government Act of 1978, in sections 7342, 7351, and 7353 of title 5, United States Code, and in clause 11(g)(4) of rule X.

(8)(A) Except as provided by subdivisions (B), (C), and (D), not later than 45 calendar days or 5 legislative days, whichever is later, after receipt of a written report and any findings and supporting documentation regarding a referral from the board of the Office of Congressional Ethics or of a referral of the matter from the board pursuant to a request under paragraph (r), the chair of the Committee on Ethics shall make public the written report and findings of the board unless the chair and ranking member, acting jointly, decide or the committee votes to withhold such information for not more than one additional period of the same duration, in which case the chair shall—

(i) upon the termination of such additional period, make public the written report and findings; and

(ii) upon the day of such decision or vote, make a public statement that the matter, relating to the referral made by the board of the Office of Congressional Ethics regarding the Member, Delegate, Resident Commissioner, officer, or employee of the House who is the subject of the applicable referral, has been extended.

At least one calendar day before the committee makes public any written report and findings of the board, the chair shall notify such board and the applicable Member, Delegate, Resident Commissioner, officer, or employee of that fact and transmit to such individual a copy of the statement on the committee's disposition of, and any committee report on, the matter.

(B)(i) Notwithstanding subdivision (A)(i), if the committee votes to dismiss a matter which is the subject of a referral from the board of the Office of Congressional Ethics, the committee is not required to make public the written report and findings described in such subdivision unless the committee's vote is inconsistent with the recommendation of the board. For purposes of the previous sentence, a vote by the committee to dismiss a matter is not inconsistent with a report from the board respecting the matter as unresolved due to a tie vote.

(ii) Notwithstanding subdivision (A)(ii), if the board transmits a report respecting any matter with a recommendation to dismiss or as unresolved due to a tie vote, and the the matter is extended for an additional period as provided in subdivision (A), the committee is not required to make a public statement that the matter has been extended.

(iii) Except as provided by subdivision (E), if the committee establishes an investigative subcommittee respecting any such matter, then the report and findings of the board shall not be made public until the conclusion of the investigative subcommittee process and the committee shall issue a public statement of the establishment of an investigative subcommittee, which statement shall include the name of the applicable Member, Delegate, Resident Commissioner, officer, or employee, and shall set forth the alleged violation. If any such investigative subcommittee does not conclude its review within one year after the board transmits a report respecting any matter, then the committee shall make public the report and upon the expiration of the Congress in which the report is made public, the committee shall make public any findings.

(C)(i) If, after receipt of a written report and any findings and supporting documentation regarding a referral from the board of the Office of Congressional Ethics or of a referral of the matter from the board pursuant to a request under paragraph (r), the committee agrees to a request from an appropriate law enforcement or regulatory authority to defer taking action on the matter—

(I) notwithstanding subdivision (A)(i), the committee is not required to make public the written report and findings described in such subdivision, except that if the recommendation of the board with respect to the report is that the matter requires further review, the com-

# RULES OF THE

mittee shall make public the written report but not the findings; and

(II) before the end of the first day (excluding Saturdays, Sundays, and public holidays) after the day that the committee agrees to the request, the committee shall make a public statement that it is deferring taking action on the matter at the request of such authority.

(ii) If, upon the expiration of the one-year period that begins on the date the committee makes the public statement described in item (i)(II), the committee has not acted on the matter, the committee shall make a new public statement that it is still deferring taking action on the matter, and shall make a new statement upon the expiration of each succeeding one-year period during which the committee has not acted on the matter.

(D) The committee may not receive any referral from the board of the Office of Congressional Ethics within 60 days before a Federal, State, or local election in which the subject of the referral is a candidate. The committee may delay any reporting requirement under this subparagraph that falls within that 60-day period until the end of such period and in that case, for purposes of subdivision (A), days within the 60-day period shall not be counted.

(E) If, at the close of any applicable period for a reporting requirement under this subparagraph with respect to a referral from the board of the Office of Congressional Ethics, the vote of the committee is a tie or the committee fails to act, the report and the findings of the board shall be made public by the committee, along with a public statement by the chair explaining the status of the matter.

(c)(1) Notwithstanding clause 2(g)(1) of rule XI, each meeting of the Committee on Ethics or a subcommittee thereof shall occur in executive session unless the committee or subcommittee, by an affirmative vote of a majority of its members, opens the meeting to the public.

(2) Notwithstanding clause 2(g)(2) of rule XI, each hearing of an adjudicatory subcommittee or sanction hearing of the Committee on Ethics shall be held in open session unless the committee or subcommittee, in open session by an affirmative vote of a majority of its members, closes all or part of the remainder of the hearing on that day to the public.

(d) Before a member, officer, or employee of the Committee on Ethics, including members of a subcommittee of the committee selected under clause 5(a)(4) of rule X and shared staff, may have access to information that is confidential under the rules of the committee, the following oath (or affirmation) shall be executed:

''I do solemnly swear (or affirm) that I will not disclose, to any person or entity outside the Committee on Ethics, any information received in the course of my service with the committee, except as authorized by

the committee or in accordance with its rules.''

Copies of the executed oath shall be retained by the Clerk as part of the records of the House. This paragraph establishes a standard of conduct within the meaning of paragraph (a)(2). Breaches of confidentiality shall be investigated by the Committee on Ethics and appropriate action shall be taken.

(e)(1) If a complaint or information offered as a complaint is deemed frivolous by an affirmative vote of a majority of the members of the Committee on Ethics, the committee may take such action as it, by an affirmative vote of a majority of its members, considers appropriate in the circumstances.

(2) Complaints filed before the One Hundred Fifth Congress may not be deemed frivolous by the Committee on Ethics.

### Committee agendas

(f) The committee shall adopt rules providing that the chair shall establish the agenda for meetings of the committee, but shall not preclude the ranking minority member from placing any item on the agenda.

### Committee staff

(g)(1) The committee shall adopt rules providing that—

(A) the staff be assembled and retained as a professional, nonpartisan staff;

(B) each member of the staff shall be professional and demonstrably qualified for the position for which hired;

(C) the staff as a whole and each member of the staff shall perform all official duties in a nonpartisan manner;

(D) no member of the staff shall engage in any partisan political activity directly affecting any congressional or presidential election;

(E) no member of the staff or outside counsel may accept public speaking engagements or write for publication on any subject that is in any way related to the employment or duties with the committee of such individual without specific prior approval from the chair and ranking minority member; and

(F) no member of the staff or outside counsel may make public, unless approved by an affirmative vote of a majority of the members of the committee, any information, document, or other material that is confidential, derived from executive session, or classified and that is obtained during the course of employment with the committee.

(2) Only subdivisions (C), (E), and (F) of subparagraph (1) shall apply to shared staff.

(3)(A) All staff members shall be appointed by an affirmative vote of a majority of the members of the committee. Such vote shall occur at the first meeting of the membership of the committee during each Congress and as necessary during the Congress.

(B) Subject to the approval of the Committee on House Administration, the committee may retain counsel not employed by the House of Representatives whenever the committee determines, by an affirmative vote of a majority of the members of the committee, that the retention of outside counsel is necessary and appropriate.

(C) If the committee determines that it is necessary to retain staff members for the purpose of a particular investigation or other proceeding, then such staff shall be retained only for the duration of that particular investigation or proceeding.

(D) Outside counsel may be dismissed before the end of a contract between the committee and such counsel only by an affirmative vote of a majority of the members of the committee.

(4) In addition to any other staff provided for by law, rule, or other authority, with respect to the committee, the chair and ranking minority member each may appoint one individual as a shared staff member from the respective personal staff of the chair or ranking minority member to perform service for the committee. Such shared staff may assist the chair or ranking minority member on any subcommittee on which the chair or ranking minority member serves.

### Meetings and hearings

(h) The committee shall adopt rules providing that—

(1) all meetings or hearings of the committee or any subcommittee thereof, other than any hearing held by an adjudicatory subcommittee or any sanction hearing held by the committee, shall occur in executive session unless the committee or subcommittee by an affirmative vote of a majority of its members opens the meeting or hearing to the public; and

(2) any hearing held by an adjudicatory subcommittee or any sanction hearing held by the committee shall be open to the public unless the committee or subcommittee by an affirmative vote of a majority of its members closes the hearing to the public.

### Public disclosure

(i) The committee shall adopt rules providing that, unless otherwise determined by a vote of the committee, only the chair or ranking minority member, after consultation with each other, may make public statements regarding matters before the committee or any subcommittee thereof.

### Requirements to constitute a complaint

(j) The committee shall adopt rules regarding complaints to provide that whenever information offered as a complaint is submitted to the committee, the chair and ranking minority member shall have 14 calendar days or five legislative days, whichever is sooner, to determine whether the information meets the requirements of the rules of the committee for what constitutes a complaint.

# HOUSE OF REPRESENTATIVES

## Duties of chair and ranking minority member regarding properly filed complaints

(k)(1) The committee shall adopt rules providing that whenever the chair and ranking minority member jointly determine that information submitted to the committee meets the requirements of the rules of the committee for what constitutes a complaint, they shall have 45 calendar days or five legislative days, whichever is later, after that determination (unless the committee by an affirmative vote of a majority of its members votes otherwise) to—

(A) recommend to the committee that it dispose of the complaint, or any portion thereof, in any manner that does not require action by the House, which may include dismissal of the complaint or resolution of the complaint by a letter to the Member, Delegate, Resident Commissioner, officer, or employee of the House against whom the complaint is made;

(B) establish an investigative subcommittee; or

(C) request that the committee extend the applicable 45-calendar day or five-legislative day period by one additional 45-calendar day period when they determine more time is necessary in order to make a recommendation under subdivision (A).

(2) The committee shall adopt rules providing that if the chair and ranking minority member jointly determine that information submitted to the committee meets the requirements of the rules of the committee for what constitutes a complaint, and the complaint is not disposed of within the applicable time periods under subparagraph (1), then they shall establish an investigative subcommittee and forward the complaint, or any portion thereof, to that subcommittee for its consideration. However, if, at any time during those periods, either the chair or ranking minority member places on the agenda the issue of whether to establish an investigative subcommittee, then an investigative subcommittee may be established only by an affirmative vote of a majority of the members of the committee.

## Duties of chair and ranking minority member regarding information not constituting a complaint

(l) The committee shall adopt rules providing that whenever the chair and ranking minority member jointly determine that information submitted to the committee does not meet the requirements of the rules of the committee for what constitutes a complaint, they may—

(1) return the information to the complainant with a statement that it fails to meet the requirements of the rules of the committee for what constitutes a complaint; or

(2) recommend to the committee that it authorize the establishment of an investigative subcommittee.

## Investigative and adjudicatory subcommittees

(m) The committee shall adopt rules providing that—

(1)(A) an investigative subcommittee shall be composed of four Members, Delegates, or the Resident Commissioner (with equal representation from the majority and minority parties) whenever such a subcommittee is established pursuant to the rules of the committee;

(B) an adjudicatory subcommittee shall be composed of the members of the committee who did not serve on the pertinent investigative subcommittee (with equal representation from the majority and minority parties) whenever such a subcommittee is established pursuant to the rules of the committee; and

(C) notwithstanding any other provision of this clause, the chair and ranking minority member of the committee may consult with an investigative subcommittee either on their own initiative or on the initiative of the subcommittee, shall have access to information before a subcommittee with which they so consult, and shall not thereby be precluded from serving as full, voting members of any adjudicatory subcommittee;

(2) at the time of appointment, the chair shall designate one member of a subcommittee to serve as chair and the ranking minority member shall designate one member of the subcommittee to serve as the ranking minority member; and

(3) the chair and ranking minority member of the committee may serve as members of an investigative subcommittee, but may not serve as non-voting, ex officio members.

## Standard of proof for adoption of statement of alleged violation

(n) The committee shall adopt rules to provide that an investigative subcommittee may adopt a statement of alleged violation only if it determines by an affirmative vote of a majority of the members of the subcommittee that there is substantial reason to believe that a violation of the Code of Official Conduct, or of a law, rule, regulation, or other standard of conduct applicable to the performance of official duties or the discharge of official responsibilities by a Member, Delegate, Resident Commissioner, officer, or employee of the House of Representatives, has occurred.

## Subcommittee powers

(o)(1) The committee shall adopt rules providing that an investigative subcommittee or an adjudicatory subcommittee may authorize and issue subpoenas only when authorized by an affirmative vote of a majority of the members of the subcommittee.

(2) The committee shall adopt rules providing that an investigative subcommittee may, upon an affirmative vote of a majority of its members, expand the scope of its investigation when approved by an affirmative vote of a majority of the members of the committee.

(3) The committee shall adopt rules to provide that—

(A) an investigative subcommittee may, upon an affirmative vote of a majority of its members, amend its statement of alleged violation anytime before the statement of alleged violation is transmitted to the committee; and

(B) if an investigative subcommittee amends its statement of alleged violation, the respondent shall be notified in writing and shall have 30 calendar days from the date of that notification to file an answer to the amended statement of alleged violation.

## Due process rights of respondents

(p) The committee shall adopt rules to provide that—

(1) not less than 10 calendar days before a scheduled vote by an investigative subcommittee on a statement of alleged violation, the subcommittee shall provide the respondent with a copy of the statement of alleged violation it intends to adopt together with all evidence it intends to use to prove those charges which it intends to adopt, including documentary evidence, witness testimony, memoranda of witness interviews, and physical evidence, unless the subcommittee by an affirmative vote of a majority of its members decides to withhold certain evidence in order to protect a witness; but if such evidence is withheld, the subcommittee shall inform the respondent that evidence is being withheld and of the count to which such evidence relates;

(2) neither the respondent nor the counsel of the respondent shall, directly or indirectly, contact the subcommittee or any member thereof during the period of time set forth in paragraph (1) except for the sole purpose of settlement discussions where counsel for the respondent and the subcommittee are present;

(3) if, at any time after the issuance of a statement of alleged violation, the committee or any subcommittee thereof determines that it intends to use evidence not provided to a respondent under paragraph (1) to prove the charges contained in the statement of alleged violation (or any amendment thereof), such evidence shall be made immediately available to the respondent, and it may be used in any further proceeding under the rules of the committee;

(4) evidence provided pursuant to paragraph (1) or (3) shall be made available to the respondent and the counsel of the respondent only after each agrees, in writing, that no document, information, or other materials obtained pursuant to that paragraph shall be made public until—

(A) such time as a statement of alleged violation is made public by the committee if the respondent has waived the adjudicatory hearing; or

(B) the commencement of an adjudicatory hearing if the respondent has not waived an adjudicatory hearing;

but the failure of respondent and the counsel of the respondent to so agree in writing, and their consequent failure to receive the evidence, shall not preclude the issuance of a statement of alleged violation at the end of the period referred to in paragraph (1);

(5) a respondent shall receive written notice whenever—

(A) the chair and ranking minority member determine that information the committee has received constitutes a complaint;

(B) a complaint or allegation is transmitted to an investigative subcommittee;

(C) an investigative subcommittee votes to authorize its first subpoena or to take testimony under oath, whichever occurs first;

(D) an investigative subcommittee votes to expand the scope of its investigation; or

(E) the committee or an investigative subcommittee determines to take into evidence the trial transcript or exhibits admitted into evidence at a criminal trial pursuant to subparagraph (9);

(6) whenever an investigative subcommittee adopts a statement of alleged violation and a respondent enters into an agreement with that subcommittee to settle a complaint on which that statement is based, that agreement, unless the respondent requests otherwise, shall be in writing and signed by the respondent and respondent's counsel, the chair and ranking minority member of the subcommittee, and the outside counsel, if any;

(7) statements or information derived solely from a respondent or the counsel of a respondent during any settlement discussions between the committee or a subcommittee thereof and the respondent shall not be included in any report of the subcommittee or the committee or otherwise publicly disclosed without the consent of the respondent;

(8) whenever a motion to establish an investigative subcommittee does not prevail, the committee shall promptly send a letter to the respondent informing the respondent of such vote; and

(9) in any investigation permitted by House or committee rules, in addition to any other evidence which the committee or an investigative subcommittee may consider, if the respondent has been convicted by a court of record for a crime which is related to the subject of the investigation, the committee or investigative subcommittee may take into

evidence the trial transcript and all exhibits admitted into evidence at the trial.

*Committee reporting requirements*

(q) The committee shall adopt rules to provide that—

(1) whenever an investigative subcommittee does not adopt a statement of alleged violation and transmits a report to that effect to the committee, the committee may by an affirmative vote of a majority of its members transmit such report to the House of Representatives;

(2) whenever an investigative subcommittee adopts a statement of alleged violation, the respondent admits to the violations set forth in such statement, the respondent waives the right to an adjudicatory hearing, and the respondent's waiver is approved by the committee—

(A) the subcommittee shall prepare a report for transmittal to the committee, a final draft of which shall be provided to the respondent not less than 15 calendar days before the subcommittee votes on whether to adopt the report;

(B) the respondent may submit views in writing regarding the final draft to the subcommittee within seven calendar days of receipt of that draft;

(C) the subcommittee shall transmit a report to the committee regarding the statement of alleged violation together with any views submitted by the respondent pursuant to subdivision (B), and the committee shall make the report together with the respondent's views available to the public before the commencement of any sanction hearing; and

(D) the committee shall by an affirmative vote of a majority of its members issue a report and transmit such report to the House of Representatives, together with the respondent's views previously submitted pursuant to subdivision (B) and any additional views respondent may submit for attachment to the final report; and

(3) members of the committee shall have not less than 72 hours to review any report transmitted to the committee by an investigative subcommittee before both the commencement of a sanction hearing and the committee vote on whether to adopt the report.

(r) Upon receipt of any written notification from the board of the Office of Congressional Ethics that the board is undertaking a review of any alleged conduct of any Member, Delegate, Resident Commissioner, officer, or employee of the House and if the committee is investigating such matter, the committee may at any time so notify the board and request that the board cease its review and refer the matter to the committee for its consideration. If at the end of the applicable time period (including any permissible

extension) the committee has not reached a final resolution of the matter or has not referred the matter to the appropriate Federal or State authorities, the committee shall so notify the board of the Office of Congressional Ethics in writing. The committee may not request the same matter from the board more than one time.

(s) The committee may not take any action that would deny any person any right or protection provided under the Constitution of the United States.

*Audio and visual coverage of committee proceedings*

4. (a) The purpose of this clause is to provide a means, in conformity with acceptable standards of dignity, propriety, and decorum, by which committee hearings or committee meetings that are open to the public may be covered by audio and visual means—

(1) for the education, enlightenment, and information of the general public, on the basis of accurate and impartial news coverage, regarding the operations, procedures, and practices of the House as a legislative and representative body, and regarding the measures, public issues, and other matters before the House and its committees, the consideration thereof, and the action taken thereon; and

(2) for the development of the perspective and understanding of the general public with respect to the role and function of the House under the Constitution as an institution of the Federal Government.

(b) In addition, it is the intent of this clause that audio and video recordings of any coverage under this clause may not be used for any partisan political campaign purpose or be made available for such use.

(c) It is, further, the intent of this clause that the general conduct of each meeting (whether of a hearing or otherwise) covered under authority of this clause by audio or visual means, and the personal behavior of the committee members and staff, other Government officials and personnel, witnesses, television, radio, and press media personnel, and the general public at the hearing or other meeting, shall be in strict conformity with and observance of the acceptable standards of dignity, propriety, courtesy, and decorum traditionally observed by the House in its operations, and may not be such as to—

(1) distort the objects and purposes of the hearing or other meeting or the activities of committee members in connection with that hearing or meeting or in connection with the general work of the committee or of the House; or

(2) cast discredit or dishonor on the House, the committee, or a Member, Delegate, or Resident Commissioner or bring the House, the committee, or a Member, Delegate, or Resident Commissioner into disrepute.

(d) The coverage of committee hearings and meetings by audio and visual

# HOUSE OF REPRESENTATIVES

means shall be permitted and conducted only in strict conformity with the purposes, provisions, and requirements of this clause.

(e) Whenever a hearing or meeting conducted by a committee or subcommittee is open to the public, those proceedings shall be open to coverage by audio and visual means. A committee or subcommittee chair may not limit the number of television or still cameras to fewer than two representatives from each medium (except for legitimate space or safety considerations, in which case pool coverage shall be authorized.)

(f) Written rules adopted by each committee pursuant to clause 2(a)(1)(D) shall contain provisions to the following effect:

(1) If audio or visual coverage of the hearing or meeting is to be presented to the public as live coverage, that coverage shall be conducted and presented without commercial sponsorship.

(2) The allocation among the television media of the positions or the number of television cameras permitted by a committee or subcommittee chair in a hearing or meeting room shall be in accordance with fair and equitable procedures devised by the Executive Committee of the Radio and Television Correspondents' Galleries.

(3) Television cameras shall be placed so as not to obstruct in any way the space between a witness giving evidence or testimony and any member of the committee or the visibility of that witness and that member to each other.

(4) Television cameras shall operate from fixed positions but may not be placed in positions that obstruct unnecessarily the coverage of the hearing or meeting by the other media.

(5) Equipment necessary for coverage by the television and radio media may not be installed in, or removed from, the hearing or meeting room while the committee is in session.

(6)(A) Except as provided in subdivision (B), floodlights, spotlights, strobelights, and flashguns may not be used in providing any method of coverage of the hearing or meeting.

(B) The television media may install additional lighting in a hearing or meeting room, without cost to the Government, in order to raise the ambient lighting level in a hearing or meeting room to the lowest level necessary to provide adequate television coverage of a hearing or meeting at the current state of the art of television coverage.

(7) If requests are made by more of the media than will be permitted by a committee or subcommittee chair for coverage of a hearing or meeting by still photography, that coverage shall be permitted on the basis of a fair and equitable pool arrangement devised by the Standing Committee of Press Photographers.

(8) Photographers may not position themselves between the witness table and the members of the committee at any time during the course of a hearing or meeting.

(9) Photographers may not place themselves in positions that obstruct unnecessarily the coverage of the hearing by the other media.

(10) Personnel providing coverage by the television and radio media shall be currently accredited to the Radio and Television Correspondents' Galleries.

(11) Personnel providing coverage by still photography shall be currently accredited to the Press Photographers' Gallery.

(12) Personnel providing coverage by the television and radio media and by still photography shall conduct themselves and their coverage activities in an orderly and unobtrusive manner.

## Pay of witnesses

5. Witnesses appearing before the House or any of its committees shall be paid the same per diem rate as established, authorized, and regulated by the Committee on House Administration for Members, Delegates, and the Resident Commissioner, and employees of the House, plus actual expenses of travel to or from the place of examination. Such per diem may not be paid when a witness has been summoned at the place of examination.

## Unfinished business of the session

6. All business of the House at the end of one session shall be resumed at the commencement of the next session of the same Congress in the same manner as if no adjournment had taken place.

## RULE XII

### RECEIPT AND REFERRAL OF MEASURES AND MATTERS

## Messages

1. Messages received from the Senate, or from the President, shall be entered on the Journal and published in the Congressional Record of the proceedings of that day.

## Referral

2. (a) The Speaker shall refer each bill, resolution, or other matter that relates to a subject listed under a standing committee named in clause 1 of rule X in accordance with the provisions of this clause.

(b) The Speaker shall refer matters under paragraph (a) in such manner as to ensure to the maximum extent feasible that each committee that has jurisdiction under clause 1 of rule X over the subject matter of a provision thereof may consider such provision and report to the House thereon. Precedents, rulings, or procedures in effect before the Ninety-Fourth Congress shall be applied to referrals under this clause only to the extent that they will con-

tribute to the achievement of the objectives of this clause.

(c) In carrying out paragraphs (a) and (b) with respect to the referral of a matter, the Speaker—

(1) shall designate a committee of primary jurisdiction (except where the Speaker determines that extraordinary circumstances justify review by more than one committee as though primary);

(2) may refer the matter to one or more additional committees for consideration in sequence, either initially or after the matter has been reported by the committee of primary jurisdiction;

(3) may refer portions of the matter reflecting different subjects and jurisdictions to one or more additional committees;

(4) may refer the matter to a special, ad hoc committee appointed by the Speaker with the approval of the House, and including members of the committees of jurisdiction, for the specific purpose of considering that matter and reporting to the House thereon;

(5) may subject a referral to appropriate time limitations; and

(6) may make such other provision as may be considered appropriate.

(d) A bill for the payment or adjudication of a private claim against the Government may not be referred to a committee other than the Committee on Foreign Affairs or the Committee on the Judiciary, except by unanimous consent.

## Petitions, memorials, and private bills

3. If a Member, Delegate, or Resident Commissioner has a petition, memorial, or private bill to present, the Member, Delegate, or Resident Commissioner shall sign it, deliver it to the Clerk, and may specify the reference or disposition to be made thereof. Such petition, memorial, or private bill (except when judged by the Speaker to be obscene or insulting) shall be entered on the Journal with the name of the Member, Delegate, or Resident Commissioner presenting it and shall be printed in the Congressional Record.

4. A private bill or private resolution (including an omnibus claim or pension bill), or amendment thereto, may not be received or considered in the House if it authorizes or directs—

(a) the payment of money for property damages, for personal injuries or death for which suit may be instituted under the Tort Claims Procedure provided in title 28, United States Code, or for a pension (other than to carry out a provision of law or treaty stipulation);

(b) the construction of a bridge across a navigable stream; or

(c) the correction of a military or naval record.

## Prohibition on commemorations

5. (a) A bill or resolution, or an amendment thereto, may not be introduced or considered in the House if it

# RULES OF THE

establishes or expresses a commemoration.

(b) In this clause the term "commemoration" means a remembrance, celebration, or recognition for any purpose through the designation of a specified period of time.

### Excluded matters

6. A petition, memorial, bill, or resolution excluded under this rule shall be returned to the Member, Delegate, or Resident Commissioner from whom it was received. A petition or private bill that has been inappropriately referred may, by direction of the committee having possession of it, be properly referred in the manner originally presented. An erroneous reference of a petition or private bill under this clause does not confer jurisdiction on a committee to consider or report it.

### Sponsorship

7. (a) Bills, memorials, petitions, and resolutions, endorsed with the names of Members, Delegates, or the Resident Commissioner introducing them, may be delivered to the Speaker to be referred. The titles and references of all bills, memorials, petitions, resolutions, and other documents referred under this rule shall be entered on the Journal and printed in the Congressional Record. An erroneous reference may be corrected by the House in accordance with rule X on any day immediately after the Pledge of Allegiance to the Flag by unanimous consent or motion. Such a motion shall be privileged if offered by direction of a committee to which the bill has been erroneously referred or by direction of a committee claiming jurisdiction and shall be decided without debate.

(b)(1) The sponsor of a public bill or public resolution may name cosponsors. The name of a cosponsor added after the initial printing of a bill or resolution shall appear in the next printing of the bill or resolution on the written request of the sponsor. Such a request may be submitted to the Speaker at any time until the last committee authorized to consider and report the bill or resolution reports it to the House or is discharged from its consideration.

(2) The name of a cosponsor of a bill or resolution may be deleted only by a demand from the floor made by the Member, Delegate, or Resident Commissioner whose name is to be deleted, or by a unanimous-consent request from the sponsor. The Speaker may only entertain such a demand or request until the last committee authorized to consider and report the bill or resolution reports it to the House or is discharged from its consideration. The Speaker may not entertain a request to delete the name of the sponsor of a bill or resolution. A deletion shall be indicated by date in the next printing of the bill or resolution.

(3) The addition or deletion of the name of a cosponsor of a bill or resolution shall be entered on the Journal and printed in the Congressional Record of that day.

(4) A bill or resolution shall be reprinted on the written request of the sponsor. Such a request may be submitted to the Speaker only when 20 or more cosponsors have been added since the last printing of the bill or resolution.

(5) When a bill or resolution is introduced "by request," those words shall be entered on the Journal and printed in the Congressional Record.

(c)(1) A bill or joint resolution may not be introduced unless the sponsor submits for printing in the Congressional Record a statement citing as specifically as practicable the power or powers granted to Congress in the Constitution to enact the bill or joint resolution. The statement shall appear in a portion of the Record designated for that purpose and be made publicly available in electronic form by the Clerk.

(2) Before consideration of a Senate bill or joint resolution, the chair of a committee of jurisdiction may submit the statement required under subparagraph (1) as though the chair were the sponsor of the Senate bill or joint resolution.

### Executive communications

8. Estimates of appropriations and all other communications from the executive departments intended for the consideration of any committees of the House shall be addressed to the Speaker for referral as provided in clause 2 of rule XIV.

## RULE XIII

CALENDARS AND COMMITTEE REPORTS

### Calendars

1. (a) All business reported by committees shall be referred to one of the following three calendars:

(1) A Calendar of the Committee of the Whole House on the state of the Union, to which shall be referred public bills and public resolutions raising revenue, involving a tax or charge on the people, directly or indirectly making appropriations of money or property or requiring such appropriations to be made, authorizing payments out of appropriations already made, or releasing any liability to the United States for money or property.

(2) A House Calendar, to which shall be referred all public bills and public resolutions not requiring referral to the Calendar of the Committee of the Whole House on the state of the Union.

(3) A Private Calendar as provided in clause 5 of rule XV, to which shall be referred all private bills and private resolutions.

(b) There is established a Calendar of Motions to Discharge Committees as provided in clause 2 of rule XV.

(c) There is established a Consensus Calendar as provided in clause 7 of rule XV.

### Filing and printing of reports

2. (a)(1) Except as provided in subparagraphs (2) and (3), all reports of committees (other than those filed from the floor) shall be delivered to the Clerk for printing and reference to the proper calendar under the direction of the Speaker in accordance with clause 1. The title or subject of each report shall be entered on the Journal and printed in the Congressional Record.

(2) A bill or resolution reported adversely (other than those filed as privileged) shall be laid on the table unless a committee to which the bill or resolution was referred requests at the time of the report its referral to an appropriate calendar under clause 1 or unless, within three days thereafter, a Member, Delegate, or Resident Commissioner makes such a request.

(3) All reports of committees may be delivered to the Clerk in electronic form.

(b)(1) It shall be the duty of the chair of each committee to report or cause to be reported promptly to the House a measure or matter approved by the committee and to take or cause to be taken steps necessary to bring the measure or matter to a vote.

(2) In any event, the report of a committee on a measure that has been approved by the committee shall be filed within seven calendar days (exclusive of days on which the House is not in session) after the day on which a written request for the filing of the report, signed by a majority of the members of the committee, has been filed with the clerk of the committee. The clerk of the committee shall immediately notify the chair of the filing of such a request. This subparagraph does not apply to a report of the Committee on Rules with respect to a rule, joint rule, or order of business of the House, or to the reporting of a resolution of inquiry addressed to the head of an executive department.

(c) All supplemental, minority, additional, or dissenting views filed under clause 2(l) of rule XI by one or more members of a committee shall be included in, and shall be a part of, the report filed by the committee with respect to a measure or matter. When time guaranteed by clause 2(l) of rule XI has expired (or, if sooner, when all separate views have been received), the committee may arrange to file its report with the Clerk not later than one hour after the expiration of such time. This clause and provisions of clause 2(l) of rule XI do not preclude the immediate filing or printing of a committee report in the absence of a timely request for the opportunity to file supplemental, minority, additional, or dissenting views as provided in clause 2(l) of rule XI.

### Content of reports

3. (a)(1) Except as provided in subparagraph (2), the report of a committee on a measure or matter shall be printed in a single volume that—

# HOUSE OF REPRESENTATIVES

(A) shall include all supplemental, minority, additional, or dissenting views that have been submitted by the time of the filing of the report; and

(B) shall bear on its cover a recital that any such supplemental, minority, additional, or dissenting views (and any material submitted under paragraph (c)(3)) are included as part of the report.

(2) A committee may file a supplemental report for the correction of a technical error in its previous report on a measure or matter. A supplemental report only correcting errors in the depiction of record votes under paragraph (b) may be filed under this subparagraph and shall not be subject to the requirement in clause 4 or clause 6 concerning the availability of reports.

(b) With respect to each record vote on a motion to report a measure or matter of a public nature, and on any amendment offered to the measure or matter, the total number of votes cast for and against, and the names of members voting for and against, shall be included in the committee report. The preceding sentence does not apply to votes taken in executive session by the Committee on Ethics, and applies only to the maximum extent practicable to a report by the Committee on Rules on a rule, joint rule, or the order of business.

(c) The report of a committee on a measure that has been approved by the committee shall include, separately set out and clearly identified, the following:

(1) Oversight findings and recommendations under clause 2(b)(1) of rule X.

(2) The statement required by section 308(a) of the Congressional Budget Act of 1974, except that an estimate of new budget authority shall include, when practicable, a comparison of the total estimated funding level for the relevant programs to the appropriate levels under current law.

(3) An estimate and comparison prepared by the Director of the Congressional Budget Office under section 402 of the Congressional Budget Act of 1974 if timely submitted to the committee before the filing of the report.

(4) A statement of general performance goals and objectives, including outcome-related goals and objectives, for which the measure authorizes funding.

(5) On a bill or joint resolution that establishes or reauthorizes a Federal program, a statement indicating whether any such program is known to be duplicative of another such program, including at a minimum an explanation of whether any such program was included in a report to Congress pursuant to section 21 of Public Law 111–139 or whether the most recent Catalog of Federal Domestic Assistance (published pursuant to section 6104 of title 31, United States

Code) identified other programs related to the program established or reauthorized by the measure.

(6)(A) On a bill or joint resolution to be considered pursuant to a special order of business reported by the Committee on Rules—

(i) a list of related committee and subcommittee hearings; and

(ii) a designation of at least one committee or subcommittee hearing that was used to develop or consider such bill or joint resolution.

(B) Subdivision (A) shall not apply to a bill or joint resolution—

(i) continuing appropriations for a fiscal year; or

(ii) containing an emergency designation under section 251(b)(2) or section 252(e) of the Balanced Budget and Emergency Deficit Control Act of 1985.

(d) Each report of a committee on a public bill or public joint resolution shall contain the following:

(1)(A) An estimate by the committee of the costs that would be incurred in carrying out the bill or joint resolution in the fiscal year in which it is reported and in each of the five fiscal years following that fiscal year (or for the authorized duration of any program authorized by the bill or joint resolution if less than five years);

(B) a comparison of the estimate of costs described in subdivision (A) made by the committee with any estimate of such costs made by a Government agency and submitted to such committee; and

(C) when practicable, a comparison of the total estimated funding level for the relevant programs with the appropriate levels under current law.

(2)(A) In subparagraph (1) the term ''Government agency'' includes any department, agency, establishment, wholly owned Government corporation, or instrumentality of the Federal Government or the government of the District of Columbia.

(B) Subparagraph (1) does not apply to the Committee on Appropriations, the Committee on House Administration, the Committee on Rules, or the Committee on Ethics, and does not apply when a cost estimate and comparison prepared by the Director of the Congressional Budget Office under section 402 of the Congressional Budget Act of 1974 has been included in the report under paragraph (c)(3).

(e)(1) Whenever a committee reports a bill or joint resolution proposing to repeal or amend a statute or part thereof, it shall include in its report or in an accompanying document (showing by appropriate typographical devices the omissions and insertions proposed)—

(A) the entire text of each section of a statute that is proposed to be repealed; and

(B) a comparative print of each amendment to the entire text of a

section of a statute that the bill or joint resolution proposes to make.

(2) If a committee reports a bill or joint resolution proposing to repeal or amend a statute or part thereof with a recommendation that the bill or joint resolution be amended, the comparative print required by subparagraph (1) shall reflect the changes in existing law proposed to be made by the bill or joint resolution as proposed to be amended.

(f)(1) A report of the Committee on Appropriations on a general appropriation bill shall include—

(A) a concise statement describing the effect of any provision of the accompanying bill that directly or indirectly changes the application of existing law; and

(B) a list of all appropriations contained in the bill for expenditures not currently authorized by law for the period concerned (excepting classified intelligence or national security programs, projects, or activities), along with a statement of the last year for which such expenditures were authorized, the level of expenditures authorized for that year, the actual level of expenditures for that year, and the level of appropriations in the bill for such expenditures.

(2) Whenever the Committee on Appropriations reports a bill or joint resolution including matter specified in clause 1(b)(2) or (3) of rule X, it shall include—

(A) in the bill or joint resolution, separate headings for ''Rescissions'' and ''Transfers of Unexpended Balances''; and

(B) in the report of the committee, a separate section listing such rescissions and transfers.

(g) Whenever the Committee on Rules reports a resolution proposing to repeal or amend a standing rule of the House, it shall include in its report or in an accompanying document—

(1) the text of any rule or part thereof that is proposed to be repealed; and

(2) a comparative print of any part of the resolution proposing to amend the rule and of the rule or part thereof proposed to be amended, showing by appropriate typographical devices the omissions and insertions proposed.

(h) It shall not be in order to consider a bill or joint resolution reported by the Committee on Ways and Means that proposes to amend the Internal Revenue Code of 1986 unless—

(1) the report includes a tax complexity analysis prepared by the Joint Committee on Taxation in accordance with section 4022(b) of the Internal Revenue Service Restructuring and Reform Act of 1998; or

(2) the chair of the Committee on Ways and Means causes such a tax complexity analysis to be printed in the Congressional Record before consideration of the bill or joint resolution.

# RULES OF THE

### *Availability of reports*

4. (a)(1) Except as specified in subparagraph (2), it shall not be in order to consider in the House a measure or matter reported by a committee until the proposed text of each report (except views referred to in clause 2(l) of rule XI) of a committee on that measure or matter has been available to Members, Delegates, and the Resident Commissioner for 72 hours.

(2) Subparagraph (1) does not apply to—

(A) a resolution providing a rule, joint rule, or order of business reported by the Committee on Rules considered under clause 6;

(B) a resolution providing amounts from the applicable accounts described in clause 1(k)(1) of rule X reported by the Committee on House Administration considered under clause 6 of rule X;

(C) a resolution presenting a question of the privileges of the House reported by any committee;

(D) a measure for the declaration of war, or the declaration of a national emergency, by Congress; and

(E) a measure providing for the disapproval of a decision, determination, or action by a Government agency that would become, or continue to be, effective unless disapproved or otherwise invalidated by one or both Houses of Congress. In this subdivision the term "Government agency" includes any department, agency, establishment, wholly owned Government corporation, or instrumentality of the Federal Government or of the government of the District of Columbia.

(b) A committee that reports a measure or matter shall make every reasonable effort to have its hearings thereon (if any) printed and available for distribution to Members, Delegates, and the Resident Commissioner before the consideration of the measure or matter in the House.

### *Privileged reports, generally*

5. (a) The following committees shall have leave to report at any time on the following matters, respectively:

(1) The Committee on Appropriations, on general appropriation bills and on joint resolutions continuing appropriations for a fiscal year after September 15 in the preceding fiscal year.

(2) The Committee on the Budget, on the matters required to be reported by such committee under titles III and IV of the Congressional Budget Act of 1974.

(3) The Committee on House Administration, on enrolled bills, on contested elections, on matters referred to it concerning printing for the use of the House or the two Houses, on expenditure of the applicable accounts of the House described in clause 1(k)(1) of rule X, and on matters relating to preservation and availability of noncurrent records of the House under rule VII.

(4) The Committee on Rules, on rules, joint rules, and the order of business.

(5) The Committee on Ethics, on resolutions recommending action by the House with respect to a Member, Delegate, Resident Commissioner, officer, or employee of the House as a result of an investigation by the committee relating to the official conduct of such Member, Delegate, Resident Commissioner, officer, or employee.

(b) A report filed from the floor, pursuant to clause 2(a)(3), or pursuant to clause 2(c), as privileged under paragraph (a) may be called up as a privileged question by direction of the reporting committee, subject to any requirement concerning its availability to Members, Delegates, and the Resident Commissioner under clause 4 or concerning the timing of its consideration under clause 6.

### *Privileged reports by the Committee on Rules*

6. (a) A report by the Committee on Rules on a rule, joint rule, or the order of business may not be called up for consideration on the same day it is presented to the House except—

(1) when so determined by a vote of two-thirds of the Members voting, a quorum being present;

(2) in the case of a resolution proposing only to waive a requirement of clause 4 or of clause 8 of rule XXII concerning the availability of reports; or

(3) during the last three days of a session of Congress.

(b) Pending the consideration of a report by the Committee on Rules on a rule, joint rule, or the order of business, the Speaker may entertain one motion that the House adjourn but may not entertain any other dilatory motion until the report shall have been disposed of.

(c) The Committee on Rules may not report a rule or order that would prevent the motion to recommit a bill or joint resolution from being made as provided in clause 2(b) of rule XIX, if offered by the Minority Leader or a designee, except with respect to a Senate bill or joint resolution for which the text of a House-passed measure has been substituted.

(d) The Committee on Rules shall present to the House reports concerning rules, joint rules, and the order of business, within three legislative days of the time when they are ordered. If such a report is not considered immediately, it shall be referred to the calendar. If such a report on the calendar is not called up by the member of the committee who filed the report within seven legislative days, any member of the committee may call it up as a privileged question on the day after the calendar day on which the member announces to the House intention to do so. The Speaker shall recognize a member of the committee who seeks recognition for that purpose.

(e) An adverse report by the Committee on Rules on a resolution proposing a special order of business for the consideration of a public bill or public joint resolution may be called up as a privileged question by a Member, Delegate, or Resident Commissioner on the second and fourth Mondays of a month.

(f) If the House has adopted a resolution making in order a motion to consider a bill or resolution, and such a motion has not been offered within seven calendar days thereafter, such a motion shall be privileged if offered by direction of all reporting committees having initial jurisdiction of the bill or resolution.

(g) Whenever the Committee on Rules reports a resolution providing for the consideration of a measure, it shall to the maximum extent possible specify in the accompanying report any waiver of a point of order against the measure or against its consideration.

### *Resolutions of inquiry*

7. A report on a resolution of inquiry addressed to the head of an executive department may be filed from the floor as privileged. If such a resolution is not reported to the House within 14 legislative days after its introduction, a motion to discharge a committee from its consideration shall be privileged.

### RULE XIV

#### Order and Priority of Business

1. The daily order of business (unless varied by the application of other rules and except for the disposition of matters of higher precedence) shall be as follows:

First. Prayer by the Chaplain.

Second. Reading and approval of the Journal, unless postponed under clause 8 of rule XX.

Third. The Pledge of Allegiance to the Flag.

Fourth. Correction of reference of public bills.

Fifth. Disposal of business on the Speaker's table as provided in clause 2.

Sixth. Unfinished business as provided in clause 3.

Seventh. The morning hour for the consideration of bills called up by committees as provided in clause 4.

Eighth. Motions that the House resolve into the Committee of the Whole House on the state of the Union subject to clause 5.

Ninth. Orders of the day.

2. Business on the Speaker's table shall be disposed of as follows:

(a) Messages from the President shall be referred to the appropriate committees without debate.

(b) Communications addressed to the House, including reports and communications from heads of departments and bills, resolutions, and messages from the Senate, may be referred to the appropriate committees in the same manner and with the same right of correction as public bills and public resolutions presented

# HOUSE OF REPRESENTATIVES

by Members, Delegates, or the Resident Commissioner.

(c) Motions to dispose of Senate amendments on the Speaker's table may be entertained as provided in clauses 1, 2, and 4 of rule XXII.

(d) Senate bills and resolutions substantially the same as House measures already favorably reported and not required to be considered in the Committee of the Whole House on the state of the Union may be disposed of by motion. Such a motion shall be privileged if offered by direction of all reporting committees having initial jurisdiction of the House measure.

3. Consideration of unfinished business in which the House may have been engaged at an adjournment, except business in the morning hour and proceedings postponed under clause 8 of rule XX, shall be resumed as soon as the business on the Speaker's table is finished, and at the same time each day thereafter until disposed of. The consideration of all other unfinished business shall be resumed whenever the class of business to which it belongs shall be in order under the rules.

4. After the unfinished business has been disposed of, the Speaker shall call each standing committee in regular order and then select committees. Each committee when named may call up for consideration a bill or resolution reported by it on a previous day and on the House Calendar. If the Speaker does not complete the call of the committees before the House passes to other business, the next call shall resume at the point it left off, giving preference to the last bill or resolution under consideration. A committee that has occupied the call for two days may not call up another bill or resolution until the other committees have been called in their turn.

5. After consideration of bills or resolutions under clause 4 for one hour, it shall be in order, pending consideration thereof, to entertain a motion that the House resolve into the Committee of the Whole House on the state of the Union or, when authorized by a committee, that the House resolve into the Committee of the Whole House on the state of the Union to consider a particular bill. Such a motion shall be subject to only one amendment designating another bill. If such a motion is decided in the negative, another such motion may not be considered until the matter that was pending when such motion was offered is disposed of.

6. All questions relating to the priority of business shall be decided by a majority without debate.

## RULE XV

BUSINESS IN ORDER ON SPECIAL DAYS

### Suspensions

1. (a) A rule may not be suspended except by a vote of two-thirds of the Members voting, a quorum being present. The Speaker may not entertain a motion that the House suspend the rules except on Mondays, Tuesdays, and Wednesdays and during the last six days of a session of Congress.

(b) Pending a motion that the House suspend the rules, the Speaker may entertain one motion that the House adjourn but may not entertain any other motion until the vote is taken on the suspension.

(c) A motion that the House suspend the rules is debatable for 40 minutes, one-half in favor of the motion and one-half in opposition thereto.

### Discharge motions

2. (a)(1) A Member may present to the Clerk a motion in writing to discharge—

(A) a committee from consideration of a public bill or public resolution that has been referred to it for 30 legislative days; or

(B) the Committee on Rules from consideration of a resolution that has been referred to it for seven legislative days and that proposes a special order of business for the consideration of a public bill or public resolution that has been reported by a committee or has been referred to a committee for 30 legislative days.

(2) Only one motion may be presented for a bill or resolution. A Member may not file a motion to discharge the Committee on Rules from consideration of a resolution providing for the consideration of more than one public bill or public resolution or admitting or effecting a nongermane amendment to a public bill or public resolution.

(b) A motion presented under paragraph (a) shall be placed in the custody of the Clerk, who shall arrange a convenient place for the signatures of Members. A signature may be withdrawn by a Member in writing at any time before a motion is entered on the Journal. The Clerk shall make the signatories a matter of public record, causing the names of the Members who have signed a discharge motion during a week to be published in a portion of the Congressional Record designated for that purpose on the last legislative day of the week and making cumulative lists of such names available each day for public inspection in an appropriate office of the House. The Clerk shall devise a means for making such lists available to offices of the House and to the public in electronic form. When a majority of the total membership of the House shall have signed the motion, it shall be entered on the Journal, published with the signatories thereto in the Record, and referred to the Calendar of Motions to Discharge Committees.

(c)(1) A motion to discharge that has been on the calendar for at least seven legislative days (except during the last six days of a session of Congress) shall be privileged only at a time or place, designated by the Speaker, in the legislative schedule within two legislative days after the day on which a Member whose signature appears thereon announces to the House an intention to offer the motion. When such a motion

is called up, the House shall proceed to its consideration under this paragraph without intervening motion except one motion to adjourn. Privileged motions to discharge shall have precedence in the order of their entry on the Journal.

(2) When a motion to discharge is called up, the bill or resolution to which it relates shall be read by title only. The motion is debatable for 20 minutes, one-half in favor of the motion and one-half in opposition thereto.

(d)(1) If a motion prevails to discharge the Committee on Rules from consideration of a resolution, the House shall immediately consider the resolution, pending which the Speaker may entertain one motion that the House adjourn but may not entertain any other dilatory motion until the resolution has been disposed of. If the resolution is adopted, the House shall immediately proceed to its execution.

(2) If a motion prevails to discharge a committee from consideration of a public bill or public resolution, a motion that the House proceed to the immediate consideration of such bill or resolution shall be privileged if offered by a Member whose signature appeared on the motion to discharge. The motion to proceed is not debatable. If the motion to proceed is adopted, the bill or resolution shall be considered immediately under the general rules of the House. If unfinished before adjournment of the day on which it is called up, the bill or resolution shall remain the unfinished business until it is disposed of. If the motion to proceed is rejected, the bill or resolution shall be referred to the appropriate calendar, where it shall have the same status as if the committee from which it was discharged had duly reported it to the House.

(e)(1) When a motion to discharge originated under this clause has once been acted on by the House, it shall not be in order to entertain during the same session of Congress—

(A) a motion to discharge a committee from consideration of that bill or resolution or of any other bill or resolution that, by relating in substance to or dealing with the same subject matter, is substantially the same; or

(B) a motion to discharge the Committee on Rules from consideration of a resolution providing a special order of business for the consideration of that bill or resolution or of any other bill or resolution that, by relating in substance to or dealing with the same subject matter, is substantially the same.

(2) A motion to discharge on the Calendar of Motions to Discharge Committees that is rendered out of order under subparagraph (1) shall be stricken from that calendar.

### Adverse report by the Committee on Rules, second and fourth Mondays

3. An adverse report by the Committee on Rules on a resolution proposing a special order of business for

# RULES OF THE

the consideration of a public bill or public joint resolution may be called up under clause 6(e) of rule XIII as a privileged question by a Member, Delegate, or Resident Commissioner on the second and fourth Mondays of a month.

4. (RESERVED.)

*Private Calendar*

5. (a) On the first Tuesday of a month, the Speaker shall direct the Clerk to call the bills and resolutions on the Private Calendar after disposal of such business on the Speaker's table as requires reference only. If two or more Members, Delegates, or the Resident Commissioner object to the consideration of a bill or resolution so called, it shall be recommitted to the committee that reported it. No other business shall be in order before completion of the call of the Private Calendar on this day unless two-thirds of the Members voting, a quorum being present, agree to a motion that the House dispense with the call.

(b)(1) On any day, after the disposal of such business on the Speaker's table as requires reference only, the Speaker may direct the Clerk to call any bill or resolution that has been on the Private Calendar for at least seven days, but only on the second legislative day after the legislative day on which the Speaker or a designee announces to the House an intention to do so. Preference shall be given to omnibus bills containing the texts of bills or resolutions that have previously been objected to on a call of the Private Calendar. If two or more Members, Delegates, or the Resident Commissioner object to the consideration of a bill or resolution so called (other than an omnibus bill), it shall be recommitted to the committee that reported it. Two-thirds of the Members voting, a quorum being present, may adopt a motion that the House dispense with the call on this day.

(2) Omnibus bills shall be read for amendment by paragraph. No amendment shall be in order except to strike or to reduce amounts of money or to provide limitations. An item or matter stricken from an omnibus bill may not thereafter during the same session of Congress be included in an omnibus bill. Upon passage such an omnibus bill shall be resolved into the several bills and resolutions of which it is composed. The several bills and resolutions, with any amendments adopted by the House, shall be engrossed, when necessary, and otherwise considered as passed severally by the House as distinct bills and resolutions.

(c) The Speaker may not entertain a reservation of the right to object to the consideration of a bill or resolution under this clause. A bill or resolution considered under this clause shall be considered in the House as in the Committee of the Whole. A motion to dispense with the call of the Private Calendar under this clause shall be privileged. Debate on such a motion shall be

limited to five minutes in support and five minutes in opposition.

*Calendar Call of Committees, Wednesdays*

6. (a) On Wednesday of each week, business shall not be in order before completion of the call of those committees (except as provided by clause 4 of rule XIV) whose chair, or other member authorized by the committee, has announced to the House a request for such call on the preceding legislative day.

(b) A bill or resolution on either the House or the Union Calendar, except bills or resolutions that are privileged under the Rules of the House, may be called under this clause. A bill or resolution called up from the Union Calendar shall be considered in the Committee of the Whole House on the state of the Union without motion, subject to clause 3 of rule XVI. General debate on a measure considered under this clause shall be confined to the measure and may not exceed two hours equally divided between a proponent and an opponent.

(c) This clause does not apply during the last two weeks of a session of Congress.

(d) Precedents, rulings, or procedures in effect before the One Hundred Eleventh Congress regarding the priority of business and the availability of other business on Wednesday shall be applied only to the extent consistent with this clause.

*Consensus Calendar*

7. (a)(1) At least once during any week in which the House convenes, the House shall consider a measure on the Consensus Calendar as designated by the Speaker.

(2) This paragraph does not apply before March 1 of an odd-numbered year or after September 30 of an even-numbered year.

(b)(1) The sponsor of a measure that has accumulated 290 cosponsors and has not been reported by the committee of primary jurisdiction may present to the Clerk a motion in writing to place that measure on the Consensus Calendar.

(2) A proper motion presented under subparagraph (1) shall be placed in the custody of the Clerk, and shall appear in a portion of the Congressional Record designated for that purpose. The Clerk shall maintain a cumulative list of such motions, and shall make such list publicly available in electronic form.

(3) A motion presented under subparagraph (1) shall be considered as withdrawn if the measure is reported by the committee of primary jurisdiction prior to its placement on the Consensus Calendar.

(c) After a measure has maintained at least 290 cosponsors for a cumulative period of 25 legislative days after the presentation of a motion under paragraph (b)(1), the measure shall be placed on the Consensus Calendar.

Such measure shall remain on the Consensus Calendar until it is—

(1) considered in the House; or
(2) reported by the committee of primary jurisdiction.

RULE XVI
MOTIONS AND AMENDMENTS

*Motions*

1. Every motion entertained by the Speaker shall be reduced to writing on the demand of a Member, Delegate, or Resident Commissioner and, unless it is withdrawn the same day, shall be entered on the Journal with the name of the Member, Delegate, or Resident Commissioner offering it. A dilatory motion may not be entertained by the Speaker.

*Withdrawal*

2. When a motion is entertained, the Speaker shall state it or cause it to be read aloud by the Clerk before it is debated. The motion then shall be in the possession of the House but may be withdrawn at any time before a decision or amendment thereon.

*Question of consideration*

3. When a motion or proposition is entertained, the question, ''Will the House now consider it?'' may not be put unless demanded by a Member, Delegate, or Resident Commissioner.

*Precedence of motions*

4. (a) When a question is under debate, only the following motions may be entertained (which shall take precedence in the following order):

(1) To adjourn.
(2) To lay on the table.
(3) For the previous question.
(4) To postpone to a day certain.
(5) To refer.
(6) To amend.
(7) To postpone indefinitely.

(b) A motion to adjourn, to lay on the table, or for the previous question shall be decided without debate. A motion to postpone to a day certain, to refer, or to postpone indefinitely, being decided, may not be allowed again on the same day at the same stage of the question.

(c)(1) It shall be in order at any time for the Speaker, in the discretion of the Speaker, to entertain a motion—

(A) that the Speaker be authorized to declare a recess; or
(B) that when the House adjourns it stand adjourned to a day and time certain.

(2) Either motion shall be of equal privilege with the motion to adjourn and shall be decided without debate.

*Divisibility*

5. (a) Except as provided in paragraph (b), a question shall be divided on the demand of a Member, Delegate, or Resident Commissioner before the question is put if it includes propositions so distinct in substance that, one being taken away, a substantive proposition remains.

(b)(1) A motion or resolution to elect members to a standing committee of

# HOUSE OF REPRESENTATIVES

the House, or to a joint standing committee, is not divisible.

(2) A resolution or order reported by the Committee on Rules providing a special order of business is not divisible.

(c) A motion to strike and insert is not divisible, but rejection of a motion to strike does not preclude another motion to amend.

### Amendments

6. When an amendable proposition is under consideration, a motion to amend and a motion to amend that amendment shall be in order, and it also shall be in order to offer a further amendment by way of substitute for the original motion to amend, to which one amendment may be offered but which may not be voted on until the original amendment is perfected. An amendment may be withdrawn in the House at any time before a decision or amendment thereon. An amendment to the title of a bill or resolution shall not be in order until after its passage or adoption, shall be in order only if offered by the Majority Leader or a designee, and shall be decided without debate.

### Germaneness

7. No motion or proposition on a subject different from that under consideration shall be admitted under color of amendment.

### Readings

8. Bills and joint resolutions are subject to readings as follows:

(a) A first reading is in full when the bill or joint resolution is first considered.

(b) A second reading occurs only when the bill or joint resolution is read for amendment in a Committee of the Whole House on the state of the Union under clause 5 of rule XVIII.

(c) A third reading precedes passage when the Speaker states the question: "Shall the bill [or joint resolution] be engrossed [when applicable] and read a third time?" If that question is decided in the affirmative, then the bill or joint resolution shall be read the final time by title and then the question shall be put on its passage.

## RULE XVII
### DECORUM AND DEBATE

### Decorum

1. (a) A Member, Delegate, or Resident Commissioner who desires to speak or deliver a matter to the House shall respectfully address the Speaker and, on being recognized, may address the House from any place on the floor. When invited by the Chair, a Member, Delegate, or Resident Commissioner may speak from the Clerk's desk.

(b) Remarks in debate (which may include references to the Senate or its Members) shall be confined to the question under debate, avoiding personality.

### Recognition

2. When two or more Members, Delegates, or the Resident Commissioner seek recognition, the Speaker shall name the Member, Delegate, or Resident Commissioner who is first to speak. A Member, Delegate, or Resident Commissioner may not occupy more than one hour in debate on a question in the House or in the Committee of the Whole House on the state of the Union except as otherwise provided in this rule.

### Managing debate

3. (a) The Member, Delegate, or Resident Commissioner who calls up a measure may open and close debate thereon. When general debate extends beyond one day, that Member, Delegate, or Resident Commissioner shall be entitled to one hour to close without regard to the time used in opening.

(b) Except as provided in paragraph (a), a Member, Delegate, or Resident Commissioner may not speak more than once to the same question without leave of the House.

(c) A manager of a measure who opposes an amendment thereto is entitled to close controlled debate thereon.

### Call to order

4. (a) If a Member, Delegate, or Resident Commissioner, in speaking or otherwise, transgresses the Rules of the House, the Speaker shall, or a Member, Delegate, or Resident Commissioner may, call to order the offending Member, Delegate, or Resident Commissioner, who shall immediately sit down unless permitted on motion of another Member, Delegate, or the Resident Commissioner to explain. If a Member, Delegate, or Resident Commissioner is called to order, the Member, Delegate, or Resident Commissioner making the call to order shall indicate the words excepted to, which shall be taken down in writing at the Clerk's desk and read aloud to the House.

(b) The Speaker shall decide the validity of a call to order. The House, if appealed to, shall decide the question without debate. If the decision is in favor of the Member, Delegate, or Resident Commissioner called to order, the Member, Delegate, or Resident Commissioner shall be at liberty to proceed, but not otherwise. If the case requires it, an offending Member, Delegate, or Resident Commissioner shall be liable to censure or such other punishment as the House may consider proper. A Member, Delegate, or Resident Commissioner may not be held to answer a call to order, and may not be subject to the censure of the House therefor, if further debate or other business has intervened.

### Comportment

5. When the Speaker is putting a question or addressing the House, a Member, Delegate, or Resident Commissioner may not exit or cross the Hall. When a Member, Delegate, or Resident Commissioner is speaking, a Member, Delegate, or Resident Com-

missioner may not pass between the person speaking and the Chair. During the session of the House, a Member, Delegate, or Resident Commissioner may not wear non-religious headdress or a hat or remain by the Clerk's desk during the call of the roll or the counting of ballots. A person on the floor of the House may not smoke or use a mobile electronic device that impairs decorum. The Sergeant-at-Arms is charged with the strict enforcement of this clause.

### Exhibits

6. When the use of an exhibit in debate is objected to by a Member, Delegate, or Resident Commissioner, the Chair, in the discretion of the Chair, may submit the question of its use to the House without debate.

### Galleries

7. During a session of the House, it shall not be in order for a Member, Delegate, or Resident Commissioner to introduce to or to bring to the attention of the House an occupant in the galleries of the House. The Speaker may not entertain a request for the suspension of this rule by unanimous consent or otherwise.

### Congressional Record

8. (a) The Congressional Record shall be a substantially verbatim account of remarks made during the proceedings of the House, subject only to technical, grammatical, and typographical corrections authorized by the Member, Delegate, or Resident Commissioner making the remarks.

(b) Unparliamentary remarks may be deleted only by permission or order of the House.

(c) This clause establishes a standard of conduct within the meaning of clause 3(a)(2) of rule XI.

### Legislative Proceedings

9.(a) A Member, Delegate, the Resident Commissioner, officer, or employee of the House may not engage in disorderly or disruptive conduct in the Chamber, including—

(1) intentionally obstructing or impeding the passage of others in the Chamber;

(2) the use of an exhibit to impede, disrupt, or disturb the proceedings of the House; and

(3) the denial of legislative instruments to others seeking to engage in legislative proceedings.

(b) This clause establishes a standard of conduct within the meaning of clause 3(a)(2) of rule XI.

### Secret sessions

10. When confidential communications are received from the President, or when the Speaker or a Member, Delegate, or Resident Commissioner informs the House that such individual has communications that such individual believes ought to be kept secret for the present, the House shall be cleared of all persons except the Members, Delegates, Resident Commissioner, and officers of the House for the

# RULES OF THE

reading of such communications, and debates and proceedings thereon, unless otherwise ordered by the House.

RULE XVIII

THE COMMITTEE OF THE WHOLE HOUSE ON THE STATE OF THE UNION

*Resolving into the Committee of the Whole*

1. Whenever the House resolves into the Committee of the Whole House on state of the Union, the Speaker shall leave the chair after appointing a Member, Delegate, or the Resident Commissioner as Chair to preside. In case of disturbance or disorderly conduct in the galleries or lobby, the Chair may cause the same to be cleared.

2. (a) Except as provided in paragraph (b) and in clause 6 of rule XV, the House resolves into the Committee of the Whole House on the state of the Union by motion. When such a motion is entertained, the Speaker shall put the question without debate: "Shall the House resolve itself into the Committee of the Whole House on the state of the Union for consideration of this matter?", naming it.

(b) After the House has adopted a resolution reported by the Committee on Rules providing a special order of business for the consideration of a measure in the Committee of the Whole House on the state of the Union, the Speaker may at any time, when no question is pending before the House, declare the House resolved into the Committee of the Whole for the consideration of that measure without intervening motion, unless the special order of business provides otherwise.

*Measures requiring initial consideration in the Committee of the Whole*

3. All public bills, resolutions, or Senate amendments (as provided in clause 3 of rule XXII) involving a tax or charge on the people, raising revenue, directly or indirectly making appropriations of money or property or requiring such appropriations to be made, authorizing payments out of appropriations already made, or releasing any liability to the United States for money or property, shall be first considered in the Committee of the Whole House on the state of the Union. A bill, resolution, or Senate amendment that fails to comply with this clause is subject to a point of order against its consideration.

*Order of business*

4. (a) Subject to subparagraph (b) business on the calendar of the Committee of the Whole House on the state of the Union may be taken up in regular order, or in such order as the Committee may determine, unless the measure to be considered was determined by the House at the time of resolving into the Committee of the Whole.

(b) Motions to resolve into the Committee of the Whole for consideration of bills and joint resolutions making general appropriations have precedence under this clause.

*Reading for amendment*

5. (a) Before general debate commences on a measure in the Committee of the Whole House on the state of the Union, it shall be read in full. When general debate is concluded or closed by order of the House, the measure under consideration shall be read for amendment. A Member, Delegate, or Resident Commissioner who offers an amendment shall be allowed five minutes to explain it, after which the Member, Delegate, or Resident Commissioner who shall first obtain the floor shall be allowed five minutes to speak in opposition to it. There shall be no further debate thereon, but the same privilege of debate shall be allowed in favor of and against any amendment that may be offered to an amendment. An amendment, or an amendment to an amendment, may be withdrawn by its proponent only by the unanimous consent of the Committee of the Whole.

(b) When a Member, Delegate, or Resident Commissioner offers an amendment in the Committee of the Whole House on the state of the Union, the Clerk shall promptly transmit five copies of the amendment to the majority committee table and five copies to the minority committee table. The Clerk also shall deliver at least one copy of the amendment to the majority cloakroom and at least one copy to the minority cloakroom.

*Quorum and voting*

6. (a) A quorum of a Committee of the Whole House on the state of the Union is 100 Members, Delegates, and the Resident Commissioner. The first time that a Committee of the Whole finds itself without a quorum during a day, the Chair shall invoke the procedure for a quorum call set forth in clause 2 of rule XX, unless the Chair elects to invoke an alternate procedure set forth in clause 3 or clause 4(a) of rule XX. If a quorum appears, the Committee of the Whole shall continue its business. If a quorum does not appear, the Committee of the Whole shall rise, and the Chair shall report the names of absentees to the House.

(b)(1) The Chair may refuse to entertain a point of order that a quorum is not present during general debate.

(2) After a quorum has once been established on a day, the Chair may entertain a point of order that a quorum is not present only when the Committee of the Whole House on the state of the Union is operating under the five-minute rule and the Chair has put the pending proposition to a vote.

(3) Upon sustaining a point of order that a quorum is not present, the Chair may announce that, following a regular quorum call under paragraph (a), the minimum time for electronic voting on the pending question shall be not less than two minutes.

(c) When ordering a quorum call in the Committee of the Whole House on the state of the Union, the Chair may announce an intention to declare that a quorum is constituted at any time during the quorum call when the Chair determines that a quorum has appeared. If the Chair interrupts the quorum call by declaring that a quorum is constituted, proceedings under the quorum call shall be considered as vacated, and the Committee of the Whole shall continue its sitting and resume its business.

(d) A quorum is not required in the Committee of the Whole House on the state of the Union for adoption of a motion that the Committee rise.

(e) In the Committee of the Whole House on the state of the Union, the Chair shall order a recorded vote on a request supported by at least 25 Members, Delegates, and the Resident Commissioner.

(f) In the Committee of the Whole House on the state of the Union, the Chair may reduce to not less than two minutes the minimum time for electronic voting on any or all pending amendments after a record vote has been taken on the first pending amendment, if in the discretion of the Chair Members, Delegates, and the Resident Commissioner would be afforded an adequate opportunity to vote.

(g) The Chair may postpone a request for a recorded vote on any amendment. The Chair may resume proceedings on a postponed request at any time. The Chair may reduce to not less than two minutes the minimum time for electronic voting—

(1) on any postponed question that follows another electronic vote, provided that the minimum time for electronic voting on the first in any series of questions shall be 15 minutes; or

(2) on any postponed question taken after the Committee of the Whole resumes its sitting if in the discretion of the Chair Members, Delegates, and the Resident Commissioner would be afforded an adequate opportunity to vote.

(h) Whenever a recorded vote on any question has been decided by a margin within which the votes cast by the Delegates and the Resident Commissioner have been decisive, the Committee of the Whole shall rise and the Speaker shall put such question de novo without intervening motion. Upon the announcement of the vote on that question, the Committee of the Whole shall resume its sitting without intervening motion.

*Dispensing with the reading of an amendment*

7. It shall be in order in the Committee of the Whole House on the state of the Union to move that the Committee of the Whole dispense with the reading of an amendment that has been printed in the bill or resolution as reported by a committee, or an amendment that a Member, Delegate, or Resident Commissioner has caused to be printed in the Congressional Record.

# HOUSE OF REPRESENTATIVES

Such a motion shall be decided without debate.

### Closing debate

8. (a) Subject to paragraph (b) at any time after the Committee of the Whole House on the state of the Union has begun five-minute debate on amendments to any portion of a bill or resolution, it shall be in order to move that the Committee of the Whole close all debate on that portion of the bill or resolution or on the pending amendments only. Such a motion shall be decided without debate. The adoption of such a motion does not preclude further amendment, to be decided without debate.

(b) If the Committee of the Whole House on the state of the Union closes debate on any portion of a bill or resolution before there has been debate on an amendment that a Member, Delegate, or Resident Commissioner has caused to be printed in the Congressional Record at least one day before its consideration, the Member, Delegate, or Resident Commissioner who caused the amendment to be printed in the Record shall be allowed five minutes to explain it, after which the Member, Delegate, or Resident Commissioner who shall first obtain the floor shall be allowed five minutes to speak in opposition to it. There shall be no further debate thereon.

(c) Material submitted for printing in the Congressional Record under this clause shall indicate the full text of the proposed amendment, the name of the Member, Delegate, or Resident Commissioner proposing it, the number of the bill or resolution to which it will be offered, and the point in the bill or resolution or amendment thereto where the amendment is intended to be offered. The amendment shall appear in a portion of the Record designated for that purpose. Amendments to a specified measure submitted for printing in that portion of the Record shall be numbered in the order printed.

### Striking the enacting clause

9. A motion that the Committee of the Whole House on the state of the Union rise and report a bill or resolution to the House with the recommendation that the enacting or resolving clause be stricken shall have precedence of a motion to amend, and, if carried in the House, shall constitute a rejection of the bill or resolution. Whenever a bill or resolution is reported from the Committee of the Whole with such adverse recommendation and the recommendation is rejected by the House, the bill or resolution shall stand recommitted to the Committee of the Whole without further action by the House. Before the question of concurrence is submitted, it shall be in order to move that the House refer the bill or resolution to a committee, with or without instructions. If a bill or resolution is so referred, then when it is again reported to the House it shall be referred to the Committee of the Whole without debate.

### Concurrent resolution on the budget

10. (a) At the conclusion of general debate in the Committee of the Whole House on the state of the Union on a concurrent resolution on the budget under section 305(a) of the Congressional Budget Act of 1974, the concurrent resolution shall be considered as read for amendment.

(b) It shall not be in order in the House or in the Committee of the Whole House on the state of the Union to consider an amendment to a concurrent resolution on the budget, or an amendment thereto, unless the concurrent resolution, as amended by such amendment or amendments—

(1) would be mathematically consistent except as limited by paragraph (c); and

(2) would contain all the matter set forth in paragraphs (1) through (5) of section 301(a) of the Congressional Budget Act of 1974.

(c)(1) Except as specified in subparagraph (2), it shall not be in order in the House or in the Committee of the Whole House on the state of the Union to consider an amendment to a concurrent resolution on the budget, or an amendment thereto, that proposes to change the amount of the appropriate level of the public debt set forth in the concurrent resolution, as reported.

(2) Amendments to achieve mathematical consistency under section 305(a)(5) of the Congressional Budget Act of 1974, if offered by direction of the Committee on the Budget, may propose to adjust the amount of the appropriate level of the public debt set forth in the concurrent resolution, as reported, to reflect changes made in other figures contained in the concurrent resolution.

### Applicability of Rules of the House

11. The Rules of the House are the rules of the Committee of the Whole House on the state of the Union so far as applicable.

## RULE XIX

### Motions Following the Amendment Stage

### Previous question

1. (a) There shall be a motion for the previous question, which, being ordered, shall have the effect of cutting off all debate and bringing the House to a direct vote on the immediate question or questions on which it has been ordered. Whenever the previous question has been ordered on an otherwise debatable question on which there has been no debate, it shall be in order to debate that question for 40 minutes, equally divided and controlled by a proponent of the question and an opponent. The previous question may be moved and ordered on a single question, on a series of questions allowable under the rules, or on an amendment or amendments, or may embrace all authorized motions or amendments and include the bill or resolution to its passage, adoption, or rejection.

(b) Incidental questions of order arising during the pendency of a motion for the previous question shall be decided, whether on appeal or otherwise, without debate.

(c) Notwithstanding paragraph (a), when the previous question is operating to adoption or passage of a measure pursuant to a special order of business, the Chair may postpone further consideration of such measure in the House to such time as may be designated by the Speaker.

### Recommit

2. (a) After the previous question has been ordered on passage or adoption of a measure, or pending a motion to that end, it shall be in order to move that the House recommit (or commit, as the case may be) the measure, without instructions, to a standing or select committee. For such a motion to recommit, the Speaker shall give preference in recognition to a Member, Delegate, or Resident Commissioner who is opposed to the measure.

(b) The previous question shall be considered as ordered on any motion to recommit (or commit, as the case may be).

### Reconsideration

3. When a motion has been carried or lost, it shall be in order on the same or succeeding day for a Member on the prevailing side of the question to enter a motion for the reconsideration thereof. The entry of such a motion shall take precedence over all other questions except the consideration of a conference report or a motion to adjourn, and may not be withdrawn after such succeeding day without the consent of the House. Once entered, a motion may be called up for consideration by any Member. During the last six days of a session of Congress, such a motion shall be disposed of when entered.

4. A bill, petition, memorial, or resolution referred to a committee, or reported therefrom for printing and recommitment, may not be brought back to the House on a motion to reconsider.

## RULE XX

### Voting and Quorum Calls

1. (a) The House shall divide after the Speaker has put a question to a vote by voice as provided in clause 6 of rule I if the Speaker is in doubt or division is demanded. Those in favor of the question shall first rise or otherwise indicate from their seats and be counted, and then those opposed.

(b) If a Member, Delegate, or Resident Commissioner requests a recorded vote, and that request is supported by at least one-fifth of a quorum, the vote shall be taken by electronic device unless the Speaker invokes another procedure for recording votes provided in this rule. A recorded vote taken in the House under this paragraph shall be considered a vote by the yeas and nays.

(c) In case of a tie vote, a question shall be lost.

# RULES OF THE

2. (a) Unless the Speaker directs otherwise, the Clerk shall conduct a record vote or quorum call by electronic device. In such a case the Clerk shall enter on the Journal and publish in the Congressional Record, in alphabetical order in each category, the names of Members recorded as voting in the affirmative, the names of Members recorded as voting in the negative, and the names of Members answering present as if they had been called in the manner provided in clause 3. Except as otherwise permitted under clause 8 or 9 of this rule or under clause 6 of rule XVIII, the minimum time for a record vote or quorum call by electronic device shall be 15 minutes.

(b) When the electronic voting system is inoperable or is not used, the Speaker or Chair may direct the Clerk to conduct a record vote or quorum call as provided in clause 3 or 4.

3. The Speaker may direct the Clerk to conduct a record vote or quorum call by call of the roll. In such a case the Clerk shall call the names of Members, alphabetically by surname. When two or more have the same surname, the name of the State (and, if necessary to distinguish among Members from the same State, the given names of the Members) shall be added. After the roll has been called once, the Clerk shall call the names of those not recorded, alphabetically by surname. Members appearing after the second call, but before the result is announced, may vote or announce a pair.

4. (a) The Speaker may direct a record vote or quorum call to be conducted by tellers. In such a case the tellers named by the Speaker shall record the names of the Members voting on each side of the question or record their presence, as the case may be, which the Clerk shall enter on the Journal and publish in the Congressional Record. Absentees shall be noted, but the doors may not be closed except when ordered by the Speaker. The minimum time for a record vote or quorum call by tellers shall be 15 minutes.

(b) On the demand of a Member, or at the suggestion of the Speaker, the names of Members sufficient to make a quorum in the Hall of the House who do not vote shall be noted by the Clerk, entered on the Journal, reported to the Speaker with the names of the Members voting, and be counted and announced in determining the presence of a quorum to do business.

5. (a) In the absence of a quorum, a majority comprising at least 15 Members, which may include the Speaker, may compel the attendance of absent Members.

(b) Subject to clause 7(b) a majority described in paragraph (a) may order the Sergeant-at-Arms to send officers appointed by the Sergeant-at-Arms to arrest those Members for whom no sufficient excuse is made and shall secure and retain their attendance. The House shall determine on what condition they shall be discharged. Unless the House otherwise directs, the Members who voluntarily appear shall be admitted immediately to the Hall of the House and shall report their names to the Clerk to be entered on the Journal as present.

(c)(1) If the House should be without a quorum due to catastrophic circumstances, then—

(A) until there appear in the House a sufficient number of Representatives to constitute a quorum among the whole number of the House, a quorum in the House shall be determined based upon the provisional number of the House; and

(B) the provisional number of the House, as of the close of the call of the House described in subparagraph (3)(C), shall be the number of Representatives responding to that call of the House.

(2) If a Representative counted in determining the provisional number of the House thereafter ceases to be a Representative, or if a Representative not counted in determining the provisional number of the House thereafter appears in the House, the provisional number of the House shall be adjusted accordingly.

(3) For the purposes of subparagraph (1), the House shall be considered to be without a quorum due to catastrophic circumstances if, after a motion under paragraph (a) has been disposed of and without intervening adjournment, each of the following occurs in the stated sequence:

(A) A call of the House (or a series of calls of the House) is closed after aggregating a period in excess of 72 hours (excluding time the House is in recess) without producing a quorum.

(B) The Speaker—

(i) with the Majority Leader and the Minority Leader (or their respective designees), receives from the Sergeant-at-Arms (or a designee) a catastrophic quorum failure report, as described in subparagraph (4);

(ii) consults with the Majority Leader and the Minority Leader (or their respective designees) on the content of that report; and

(iii) announces the content of that report to the House.

(C) A further call of the House (or a series of calls of the House) is closed after aggregating a period in excess of 24 hours (excluding time the House is in recess) without producing a quorum.

(4)(A) For purposes of subparagraph (3), a catastrophic quorum failure report is a report advising that the inability of the House to establish a quorum is attributable to catastrophic circumstances involving natural disaster, attack, contagion, or similar calamity rendering Representatives incapable of attending the proceedings of the House.

(B) Such report shall specify the following:

(i) The number of vacancies in the House and the names of former Representatives whose seats are vacant.

(ii) The names of Representatives considered incapacitated.

(iii) The names of Representatives not incapacitated but otherwise incapable of attending the proceedings of the House.

(iv) The names of Representatives unaccounted for.

(C) Such report shall be prepared on the basis of the most authoritative information available after consultation with the Attending Physician to the Congress and the Clerk (or their respective designees) and pertinent public health and law enforcement officials.

(D) Such report shall be updated every legislative day for the duration of any proceedings under or in reliance on this paragraph. The Speaker shall make such updates available to the House.

(5) An announcement by the Speaker under subparagraph (3)(B)(iii) shall not be subject to appeal.

(6) Subparagraph (1) does not apply to a proposal to create a vacancy in the representation from any State in respect of a Representative not incapacitated but otherwise incapable of attending the proceedings of the House.

(7) For purposes of this paragraph:

(A) The term "provisional number of the House" means the number of Representatives upon which a quorum will be computed in the House until Representatives sufficient in number to constitute a quorum among the whole number of the House appear in the House.

(B) The term "whole number of the House" means the number of Representatives chosen, sworn, and living whose membership in the House has not been terminated by resignation or by the action of the House.

(d) Upon the death, resignation, expulsion, disqualification, removal, or swearing of a Member, the whole number of the House shall be adjusted accordingly. The Speaker shall announce the adjustment to the House. Such an announcement shall not be subject to appeal. In the case of a death, the Speaker may lay before the House such documentation from Federal, State, or local officials as the Speaker deems pertinent.

6. (a) When a quorum fails to vote on a question, a quorum is not present, and objection is made for that cause (unless the House shall adjourn)—

(1) there shall be a call of the House;

(2) the Sergeant-at-Arms shall proceed forthwith to bring in absent Members; and

(3) the yeas and nays on the pending question shall at the same time be considered as ordered.

(b) The Clerk shall record Members by the yeas and nays on the pending question, using such procedure as the Speaker may invoke under clause 2, 3, or 4. Each Member arrested under this

34

# HOUSE OF REPRESENTATIVES

clause shall be brought by the Sergeant-at-Arms before the House, whereupon the Member shall be noted as present, discharged from arrest, and given an opportunity to vote; and such vote shall be recorded. If those voting on the question and those who are present and decline to vote together make a majority of the House, the Speaker shall declare that a quorum is constituted, and the pending question shall be decided as the requisite majority of those voting shall have determined. Thereupon further proceedings under the call shall be considered as dispensed with.

(c) At any time after Members have had the requisite opportunity to respond by the yeas and nays ordered under this clause, but before a result has been announced, a motion that the House adjourn shall be in order if seconded by a majority of those present, to be ascertained by actual count by the Speaker. If the House adjourns on such a motion, all proceedings under this clause shall be considered as vacated.

7. (a) The Speaker may not entertain a point of order that a quorum is not present unless a question has been put to a vote.

(b) Subject to paragraph (c) the Speaker may recognize a Member, Delegate, or Resident Commissioner to move a call of the House at any time. When a quorum is established pursuant to a call of the House, further proceedings under the call shall be considered as dispensed with unless the Speaker recognizes for a motion to compel attendance of Members under clause 5(b).

(c) A call of the House shall not be in order after the previous question is ordered unless the Speaker determines by actual count that a quorum is not present.

## Postponement of proceedings

8. (a)(1) When a recorded vote is ordered, or the yeas and nays are ordered, or a vote is objected to under clause 6—

(A) on any of the questions specified in subparagraph (2), the Speaker may postpone further proceedings to a designated place in the legislative schedule within two additional legislative days; and

(B) on the question of agreeing to the Speaker's approval of the Journal, the Speaker may postpone further proceedings to a designated place in the legislative schedule on that legislative day.

(2) The questions described in subparagraph (1) are as follows:

(A) The question of passing a bill or joint resolution.

(B) The question of adopting a resolution or concurrent resolution.

(C) The question of agreeing to a motion to instruct managers on the part of the House (except that proceedings may not resume on such a motion under clause 7(c) of rule XXII

if the managers have filed a report in the House).

(D) The question of agreeing to a conference report.

(E) The question of adopting a motion to recommit.

(F) The question of agreeing to a motion to concur in a Senate amendment, with or without amendment.

(G) The question of agreeing to an amendment.

(H) The question of ordering the previous question on a question described in subdivisions (A) through (G).

(I) The question of agreeing to a motion to suspend the rules.

(J) The question of agreeing to a motion to reconsider or the question of agreeing to a motion to lay on the table a motion to reconsider.

(b) At the time designated by the Speaker for further proceedings on questions postponed under paragraph (a), the Speaker shall resume proceedings on each postponed question.

(c) If the House adjourns on a legislative day designated for further proceedings on questions postponed under this clause without disposing of such questions, then on the next legislative day the unfinished business is the disposition of such questions.

## Five-minute votes

9. (a) The Speaker may reduce to five minutes the minimum time for electronic voting on any question that follows another electronic vote or a report from the Committee of the Whole, if in the discretion of the Speaker Members would be afforded an adequate opportunity to vote.

(b) To the maximum extent practicable, notice of possible five-minute voting for a given series of votes shall be issued prior to the first electronic vote in the series.

## Automatic yeas and nays

10. The yeas and nays shall be considered as ordered when the Speaker puts the question on passage of a bill or joint resolution, or on adoption of a conference report, making general appropriations, or on final adoption of a concurrent resolution on the budget or conference report thereon.

## Ballot votes

11. In a case of ballot for election, a majority of the votes shall be necessary to an election. When there is not such a majority on the first ballot, the process shall be repeated until a majority is obtained. In all balloting blanks shall be rejected, may not be counted in the enumeration of votes, and may not be reported by the tellers.

## RULE XXI

## RESTRICTIONS ON CERTAIN BILLS

## Reservation of certain points of order

1. At the time a general appropriation bill is reported, all points of order against provisions therein shall be considered as reserved.

## General appropriation bills and amendments

2. (a)(1) An appropriation may not be reported in a general appropriation bill, and may not be in order as an amendment thereto, for an expenditure not previously authorized by law, except to continue appropriations for public works and objects that are already in progress.

(2) A reappropriation of unexpended balances of appropriations may not be reported in a general appropriation bill, and may not be in order as an amendment thereto, except to continue appropriations for public works and objects that are already in progress. This subparagraph does not apply to transfers of unexpended balances within the department or agency for which they were originally appropriated that are reported by the Committee on Appropriations.

(b) A provision changing existing law may not be reported in a general appropriation bill, including a provision making the availability of funds contingent on the receipt or possession of information not required by existing law for the period of the appropriation, except germane provisions that retrench expenditures by the reduction of amounts of money covered by the bill (which may include those recommended to the Committee on Appropriations by direction of a legislative committee having jurisdiction over the subject matter) and except rescissions of appropriations contained in appropriation Acts.

(c) An amendment to a general appropriation bill shall not be in order if changing existing law, including an amendment making the availability of funds contingent on the receipt or possession of information not required by existing law for the period of the appropriation. Except as provided in paragraph (d), an amendment proposing a limitation not specifically contained or authorized in existing law for the period of the limitation shall not be in order during consideration of a general appropriation bill.

(d) After a general appropriation bill has been read for amendment, a motion that the Committee of the Whole House on the state of the Union rise and report the bill to the House with such amendments as may have been adopted shall, if offered by the Majority Leader or a designee, have precedence over motions to amend the bill. If such a motion to rise and report is rejected or not offered, amendments proposing limitations not specifically contained or authorized in existing law for the period of the limitation or proposing germane amendments that retrench expenditures by reductions of amounts of money covered by the bill may be considered.

(e) A provision other than an appropriation designated an emergency under section 251(b)(2) or section 252(e) of the Balanced Budget and Emergency Deficit Control Act, a rescission of budget authority, or a reduction in di-

# RULES OF THE

rect spending or an amount for a designated emergency may not be reported in an appropriation bill or joint resolution containing an emergency designation under section 251(b)(2) or section 252(e) of such Act and may not be in order as an amendment thereto.

(f) During the reading of an appropriation bill for amendment in the Committee of the Whole House on the state of the Union, it shall be in order to consider en bloc amendments proposing only to transfer appropriations among objects in the bill without increasing the levels of budget authority or outlays in the bill. When considered en bloc under this paragraph, such amendments may amend portions of the bill not yet read for amendment (following disposition of any points of order against such portions) and are not subject to a demand for division of the question in the House or in the Committee of the Whole.

3. It shall not be in order to consider a general appropriation bill or joint resolution, or conference report thereon, that—

(a) provides spending authority derived from receipts deposited in the Highway Trust Fund (excluding any transfers from the General Fund of the Treasury); or

(b) reduces or otherwise limits the accruing balances of the Highway Trust Fund,

for any purpose other than for those activities authorized for the highway or mass transit categories.

## Appropriations on legislative bills

4. A bill or joint resolution carrying an appropriation may not be reported by a committee not having jurisdiction to report appropriations, and an amendment proposing an appropriation shall not be in order during the consideration of a bill or joint resolution reported by a committee not having that jurisdiction. A point of order against an appropriation in such a bill, joint resolution, or amendment thereto may be raised at any time during pendency of that measure for amendment.

## Tax and tariff measures and amendments

5. (a)(1) A bill or joint resolution carrying a tax or tariff measure may not be reported by a committee not having jurisdiction to report tax or tariff measures, and an amendment in the House or proposed by the Senate carrying a tax or tariff measure shall not be in order during the consideration of a bill or joint resolution reported by a committee not having that jurisdiction. A point of order against a tax or tariff measure in such a bill, joint resolution, or amendment thereto may be raised at any time during pendency of that measure for amendment.

(2) For purposes of subparagraph (1), a tax or tariff measure includes an amendment proposing a limitation on funds in a general appropriation bill for the administration of a tax or tariff.

## Consideration of retroactive tax rate increases

(b) It shall not be in order to consider a bill, joint resolution, amendment, or conference report carrying a retroactive Federal income tax rate increase. In this paragraph—

(1) the term "Federal income tax rate increase" means any amendment to subsection (a), (b), (c), (d), or (e) of section 1, or to section 11(b) or 55(b), of the Internal Revenue Code of 1986, that imposes a new percentage as a rate of tax and thereby increases the amount of tax imposed by any such section; and

(2) a Federal income tax rate increase is retroactive if it applies to a period beginning before the enactment of the provision.

## Designation of public works

6. It shall not be in order to consider a bill, joint resolution, amendment, or conference report that provides for the designation or redesignation of a public work in honor of an individual then serving as a Member, Delegate, Resident Commissioner, or Senator.

7. (RESERVED.)

8. With respect to measures considered pursuant to a special order of business, points of order under title III of the Congressional Budget Act of 1974 shall operate without regard to whether the measure concerned has been reported from committee. Such points of order shall operate with respect to (as the case may be)—

(a) the form of a measure recommended by the reporting committee where the statute uses the term "as reported" (in the case of a measure that has been so reported);

(b) the form of the measure made in order as an original bill or joint resolution for the purpose of amendment; or

(c) the form of the measure on which the previous question is ordered directly to passage.

9. (a) It shall not be in order to consider—

(1) a bill or joint resolution reported by a committee unless the report includes a list of congressional earmarks, limited tax benefits, and limited tariff benefits in the bill or in the report (and the name of any Member, Delegate, or Resident Commissioner who submitted a request to the committee for each respective item included in such list) or a statement that the proposition contains no congressional earmarks, limited tax benefits, or limited tariff benefits;

(2) a bill or joint resolution not reported by a committee unless the chair of each committee of initial referral has caused a list of congressional earmarks, limited tax benefits, and limited tariff benefits in the bill (and the name of any Member, Delegate, or Resident Commissioner who submitted a request to the committee for each respective item included in such list) or a statement

that the proposition contains no congressional earmarks, limited tax benefits, or limited tariff benefits to be printed in the Congressional Record prior to its consideration;

(3) an amendment to a bill or joint resolution to be offered at the outset of its consideration for amendment by a member of a committee of initial referral as designated in a report of the Committee on Rules to accompany a resolution prescribing a special order of business unless the proponent has caused a list of congressional earmarks, limited tax benefits, and limited tariff benefits in the amendment (and the name of any Member, Delegate, or Resident Commissioner who submitted a request to the proponent for each respective item included in such list) or a statement that the proposition contains no congressional earmarks, limited tax benefits, or limited tariff benefits to be printed in the Congressional Record prior to its consideration; or

(4) a conference report to accompany a bill or joint resolution unless the joint explanatory statement prepared by the managers on the part of the House and the managers on the part of the Senate includes a list of congressional earmarks, limited tax benefits, and limited tariff benefits in the conference report or joint statement (and the name of any Member, Delegate, Resident Commissioner, or Senator who submitted a request to the House or Senate committees of jurisdiction for each respective item included in such list) or a statement that the proposition contains no congressional earmarks, limited tax benefits, or limited tariff benefits.

(b) It shall not be in order to consider a conference report to accompany a regular general appropriation bill unless the joint explanatory statement prepared by the managers on the part of the House and the managers on the part of the Senate includes—

(1) a list of congressional earmarks, limited tax benefits, and limited tariff benefits in the conference report or joint statement (and the name of any Member, Delegate, Resident Commissioner, or Senator who submitted a request to the House or Senate committees of jurisdiction for each respective item included in such list) that were neither committed to the conference committee by either House nor in a report of a committee of either House on such bill or on a companion measure; or

(2) a statement that the proposition contains no such congressional earmarks, limited tax benefits, or limited tariff benefits.

(c) It shall not be in order to consider a rule or order that waives the application of paragraph (a) or (b). As disposition of a point of order under this paragraph or paragraph (b), the Chair shall put the question of consideration with respect to the rule or order or conference report, as applicable. The ques-

# HOUSE OF REPRESENTATIVES

tion of consideration shall be debatable for 10 minutes by the Member initiating the point of order and for 10 minutes by an opponent, but shall otherwise be decided without intervening motion except one that the House adjourn.

(d) In order to be cognizable by the Chair, a point of order raised under paragraph (a) may be based only on the failure of a report, submission to the Congressional Record, or joint explanatory statement to include a list required by paragraph (a) or a statement that the proposition contains no congressional earmarks, limited tax benefits, or limited tariff benefits.

(e) For the purpose of this clause, the term "congressional earmark" means a provision or report language included primarily at the request of a Member, Delegate, Resident Commissioner, or Senator providing, authorizing or recommending a specific amount of discretionary budget authority, credit authority, or other spending authority for a contract, loan, loan guarantee, grant, loan authority, or other expenditure with or to an entity, or targeted to a specific State, locality or Congressional district, other than through a statutory or administrative formula-driven or competitive award process.

(f) For the purpose of this clause, the term "limited tax benefit" means—

(1) any revenue-losing provision that—

(A) provides a Federal tax deduction, credit, exclusion, or preference to 10 or fewer beneficiaries under the Internal Revenue Code of 1986, and

(B) contains eligibility criteria that are not uniform in application with respect to potential beneficiaries of such provision; or

(2) any Federal tax provision which provides one beneficiary temporary or permanent transition relief from a change to the Internal Revenue Code of 1986.

(g) For the purpose of this clause, the term "limited tariff benefit" means a provision modifying the Harmonized Tariff Schedule of the United States in a manner that benefits 10 or fewer entities.

10. (a)(1) Except as provided in paragraphs (b) and (c), it shall not be in order to consider any bill, joint resolution, amendment, or conference report if the provisions of such measure affecting direct spending and revenues have the net effect of increasing the deficit or reducing the surplus for either the period comprising—

(A) the current fiscal year, the budget year, and the four fiscal years following that budget year; or

(B) the current fiscal year, the budget year, and the nine fiscal years following that budget year.

(2) The effect of such measure on the deficit or surplus shall be determined on the basis of estimates made by the Committee on the Budget relative to baseline estimates supplied by the Congressional Budget Office consistent with section 257 of the Balanced Budget and Emergency Deficit Control Act of 1985.

(b) If a bill, joint resolution, or amendment is considered pursuant to a special order of the House directing the Clerk to add as new matter at the end of such measure the provisions of a separate measure as passed by the House, the provisions of such separate measure as passed by the House shall be included in the evaluation under paragraph (a) of the bill, joint resolution, or amendment.

(c)(1) Except as provided in subparagraph (2), the evaluation under paragraph (a) shall exclude a provision expressly designated as an emergency for purposes of pay-as-you-go principles in the case of a point of order under this clause against consideration of—

(A) a bill or joint resolution;

(B) an amendment made in order as original text by a special order of business;

(C) a conference report; or

(D) an amendment between the Houses.

(2) In the case of an amendment (other than one specified in subparagraph (1)) to a bill or joint resolution, the evaluation under paragraph (a) shall give no cognizance to any designation of emergency.

(3) If a bill, joint resolution, an amendment made in order as original text by a special order of business, a conference report, or an amendment between the Houses includes a provision expressly designated as an emergency for purposes of pay-as-you-go principles, the Chair shall put the question of consideration with respect thereto.

(d) For the purpose of this clause, the terms "budget year" and "current year" have the meanings specified in section 250 of the Balanced Budget and Emergency Deficit Control Act of 1985, and the term "direct spending" has the meaning specified in such section 250 except that such term shall also include provisions in appropriations Acts that make outyear modifications to substantive law as described in section 3(4)(C) of the Statutory Pay-As-You-Go Act of 2010.

11. It shall not be in order to consider a bill or joint resolution which has not been reported by a committee until the text of such measure has been available to Members, Delegates, and the Resident Commissioner for 72 hours.

12. (a) It shall not be in order to consider a bill or joint resolution pursuant to a special order of business reported by the Committee on Rules that has not been reported by a committee.

(b) Paragraph (a) shall not apply to a bill or joint resolution—

(1) continuing appropriations for a fiscal year;

(2) containing an emergency designation under section 251(b)(2) or section 252(e) of the Balanced Budget and Emergency Deficit Control Act of 1985;

(3) designated pursuant to clause 7(a) of rule XV; or

(4) not referred to committee.

(c) Paragraph (a) does not apply before March 1 of an odd-numbered year.

## RULE XXII

### House and Senate Relations

*Senate amendments*

1. A motion to disagree to Senate amendments to a House proposition and to request or agree to a conference with the Senate, or a motion to insist on House amendments to a Senate proposition and to request or agree to a conference with the Senate, shall be privileged in the discretion of the Speaker if offered by direction of the primary committee and of all reporting committees that had initial referral of the proposition.

2. A motion to dispose of House bills with Senate amendments not requiring consideration in the Committee of the Whole House on the state of the Union shall be privileged.

3. Except as permitted by clause 1, before the stage of disagreement, a Senate amendment to a House bill or resolution shall be subject to the point of order that it must first be considered in the Committee of the Whole House on the state of the Union if, originating in the House, it would be subject to such a point under clause 3 of rule XVIII.

4. When the stage of disagreement has been reached on a bill or resolution with House or Senate amendments, a motion to dispose of any amendment shall be privileged.

5. (a) Managers on the part of the House may not agree to a Senate amendment described in paragraph (b) unless specific authority to agree to the amendment first is given by the House by a separate vote with respect thereto. If specific authority is not granted, the Senate amendment shall be reported in disagreement by the conference committee back to the two Houses for disposition by separate motion.

(b) The managers on the part of the House may not agree to a Senate amendment described in paragraph (a) that—

(1) would violate clause 2(a)(1) or (c) of rule XXI if originating in the House; or

(2) proposes an appropriation on a bill other than a general appropriation bill.

6. A Senate amendment carrying a tax or tariff measure in violation of clause 5(a) of rule XXI may not be agreed to.

*Conference reports; amendments reported in disagreement*

7. (a) The presentation of a conference report shall be in order at any time except during a reading of the Journal or the conduct of a record vote, a vote by division, or a quorum call.

(b)(1) Subject to subparagraph (2) the time allotted for debate on a motion to

# RULES OF THE

instruct managers on the part of the House shall be equally divided between the majority and minority parties.

(2) If the proponent of a motion to instruct managers on the part of the House and the Member, Delegate, or Resident Commissioner of the other party identified under subparagraph (1) both support the motion, one-third of the time for debate thereon shall be allotted to a Member, Delegate, or Resident Commissioner who opposes the motion on demand of that Member, Delegate, or Resident Commissioner.

(c)(1) A motion to instruct managers on the part of the House, or a motion to discharge all managers on the part of the House and to appoint new conferees, shall be privileged after a conference committee has been appointed for 45 calendar days and 25 legislative days without making a report, but only on the day after the calendar day on which the Member, Delegate, or Resident Commissioner offering the motion announces to the House intention to do so and the form of the motion.

(2) The Speaker may designate a time in the legislative schedule on that legislative day for consideration of a motion described in subparagraph (1).

(3) During the last six days of a session of Congress, a motion under subparagraph (1) shall be privileged after a conference committee has been appointed for 36 hours without making a report and the proponent meets the notice requirement in subparagraph (1).

(d) Instructions to conferees in a motion to instruct may not include argument.

(e) Each conference report to the House shall be printed as a report of the House. Each such report shall be accompanied by a joint explanatory statement prepared jointly by the managers on the part of the House and the managers on the part of the Senate. The joint explanatory statement shall be sufficiently detailed and explicit to inform the House of the effects of the report on the matters committed to conference.

8. (a)(1) Except as specified in subparagraph (2), it shall not be in order to consider a conference report until—

(A) the conference report and the accompanying joint explanatory statement have been available to Members, Delegates, and the Resident Commissioner for 72 hours in the Congressional Record or pursuant to clause 3 of rule XXIX; and

(B) printed or electronic copies of the conference report and the accompanying joint explanatory statement have been available to Members, Delegates, and the Resident Commissioner for at least two hours.

(2) Subparagraph (1)(A) does not apply during the last six days of a session of Congress.

(b)(1) Except as specified in subparagraph (2), it shall not be in order to consider a motion to dispose of a Senate amendment reported in disagreement by a conference committee until—

(A) the report in disagreement and any accompanying statement have been available to Members, Delegates, and the Resident Commissioner for 72 hours in the Congressional Record or pursuant to clause 3 of rule XXIX; and

(B) copies of the report in disagreement and any accompanying statement, together with the text of the Senate amendment, have been available to Members, Delegates, and the Resident Commissioner for at least two hours.

(2) Subparagraph (1)(A) does not apply during the last six days of a session of Congress.

(3) During consideration of a Senate amendment reported in disagreement by a conference committee on a general appropriation bill, a motion to insist on disagreement to the Senate amendment shall be preferential to any other motion to dispose of that amendment if the original motion offered by the floor manager proposes to change existing law and the motion to insist is offered before debate on the original motion by the chair of the committee having jurisdiction of the subject matter of the amendment or a designee. Such a preferential motion shall be separately debatable for one hour equally divided between its proponent and the proponent of the original motion. The previous question shall be considered as ordered on the preferential motion to its adoption without intervening motion.

(c) A conference report or a Senate amendment reported in disagreement by a conference committee that has been available as provided in paragraph (a) or (b) shall be considered as read when called up.

(d)(1) Subject to subparagraph (2), the time allotted for debate on a conference report or on a motion to dispose of a Senate amendment reported in disagreement by a conference committee shall be equally divided between the majority and minority parties.

(2) If the floor manager for the majority and the floor manager for the minority both support the conference report or motion, one-third of the time for debate thereon shall be allotted to a Member, Delegate, or Resident Commissioner who opposes the conference report or motion on demand of that Member, Delegate, or Resident Commissioner.

(e) Under clause 6(a)(2) of rule XIII, a resolution proposing only to waive a requirement of this clause concerning the availability of reports to Members, Delegates, and the Resident Commissioner may be considered by the House on the same day it is reported by the Committee on Rules.

9. Whenever a disagreement to an amendment has been committed to a conference committee, the managers on the part of the House may propose a substitute that is a germane modification of the matter in disagreement. The introduction of any language presenting specific additional matter not

committed to the conference committee by either House does not constitute a germane modification of the matter in disagreement. Moreover, a conference report may not include matter not committed to the conference committee by either House and may not include a modification of specific matter committed to the conference committee by either or both Houses if that modification is beyond the scope of that specific matter as committed to the conference committee.

10. (a)(1) A Member, Delegate, or Resident Commissioner may raise a point of order against nongermane matter, as specified in subparagraph (2), before the commencement of debate on—

(A) a conference report;

(B) a motion that the House recede from its disagreement to a Senate amendment reported in disagreement by a conference committee and concur therein, with or without amendment; or

(C) a motion that the House recede from its disagreement to a Senate amendment on which the stage of disagreement has been reached and concur therein, with or without amendment.

(2) A point of order against nongermane matter is one asserting that a proposition described in subparagraph (1) contains specified matter that would violate clause 7 of rule XVI if it were offered in the House as an amendment to the underlying measure in the form it was passed by the House.

(b) If a point of order under paragraph (a) is sustained, a motion that the House reject the nongermane matter identified by the point of order shall be privileged. Such a motion is debatable for 40 minutes, one-half in favor of the motion and one-half in opposition thereto.

(c) After disposition of a point of order under paragraph (a) or a motion to reject under paragraph (b), any further points of order under paragraph (a) not covered by a previous point of order, and any consequent motions to reject under paragraph (b), shall be likewise disposed of.

(d)(1) If a motion to reject under paragraph (b) is adopted, then after disposition of all points of order under paragraph (a) and any consequent motions to reject under paragraph (b), the conference report or motion, as the case may be, shall be considered as rejected and the matter remaining in disagreement shall be disposed of under subparagraph (2) or (3), as the case may be.

(2) After the House has adopted one or more motions to reject nongermane matter contained in a conference report under the preceding provisions of this clause—

(A) if the conference report accompanied a House measure amended by the Senate, the pending question shall be whether the House shall recede and concur in the Senate

# HOUSE OF REPRESENTATIVES

amendment with an amendment consisting of so much of the conference report as was not rejected; and

(B) if the conference report accompanied a Senate measure amended by the House, the pending question shall be whether the House shall insist further on the House amendment.

(3) After the House has adopted one or more motions to reject nongermane matter contained in a motion that the House recede and concur in a Senate amendment, with or without amendment, the following motions shall be privileged and shall have precedence in the order stated:

(A) A motion that the House recede and concur in the Senate amendment with an amendment in writing then available on the floor.

(B) A motion that the House insist on its disagreement to the Senate amendment and request a further conference with the Senate.

(C) A motion that the House insist on its disagreement to the Senate amendment.

(e) If, on a division of the question on a motion described in paragraph (a)(1)(B) or (C), the House agrees to recede, then a Member, Delegate, or Resident Commissioner may raise a point of order against nongermane matter, as specified in paragraph (a)(2), before the commencement of debate on concurring in the Senate amendment, with or without amendment. A point of order under this paragraph shall be disposed of according to the preceding provisions of this clause in the same manner as a point of order under paragraph (a).

11. It shall not be in order to consider a conference report to accompany a bill or joint resolution that proposes to amend the Internal Revenue Code of 1986 unless—

(a) the joint explanatory statement of the managers includes a tax complexity analysis prepared by the Joint Committee on Taxation in accordance with section 4022(b) of the Internal Revenue Service Restructuring and Reform Act of 1998; or

(b) the chair of the Committee on Ways and Means causes such a tax complexity analysis to be printed in the Congressional Record before consideration of the conference report.

12. (a)(1) Subject to subparagraph (2), a meeting of each conference committee shall be open to the public.

(2) In open session of the House, a motion that managers on the part of the House be permitted to close to the public a meeting or meetings of their conference committee shall be privileged, shall be decided without debate, and shall be decided by the yeas and nays.

(3) In conducting conferences with the Senate, managers on the part of the House should endeavor to ensure—

(A) that meetings for the resolution of differences between the two Houses occur only under circumstances in which every manager on the part of the House has notice of

the meeting and a reasonable opportunity to attend;

(B) that all provisions on which the two Houses disagree are considered as open to discussion at any meeting of a conference committee; and

(C) that papers reflecting a conference agreement are held inviolate to change without renewal of the opportunity of all managers on the part of the House to reconsider their decisions to sign or not to sign the agreement.

(4) Managers on the part of the House shall be provided a unitary time and place with access to at least one complete copy of the final conference agreement for the purpose of recording their approval (or not) of the final conference agreement by placing their signatures (or not) on the sheets prepared to accompany the conference report and joint explanatory statement of the managers.

(b) A point of order that a conference committee failed to comply with paragraph (a) may be raised immediately after the conference report is read or considered as read. If such a point of order is sustained, the conference report shall be considered as rejected, the House shall be considered to have insisted on its amendments or on disagreement to the Senate amendments, as the case may be, and to have requested a further conference with the Senate, and the Speaker may appoint new conferees without intervening motion.

13. It shall not be in order to consider a conference report the text of which differs in any way, other than clerical, from the text that reflects the action of the conferees on all of the differences between the two Houses, as recorded by their placement of their signatures (or not) on the sheets prepared to accompany the conference report and joint explanatory statement of the managers.

## RULE XXIII

### CODE OF OFFICIAL CONDUCT

There is hereby established by and for the House the following code of conduct, to be known as the "Code of Official Conduct":

1. A Member, Delegate, Resident Commissioner, officer, or employee of the House shall behave at all times in a manner that shall reflect creditably on the House.

2. A Member, Delegate, Resident Commissioner, officer, or employee of the House shall adhere to the spirit and the letter of the Rules of the House and to the rules of duly constituted committees thereof.

3. A Member, Delegate, Resident Commissioner, officer, or employee of the House may not receive compensation and may not permit compensation to accrue to the beneficial interest of such individual from any source, the receipt of which would occur by virtue of influence improperly exerted from the position of such individual in Congress.

4. A Member, Delegate, Resident Commissioner, officer, or employee of the House may not accept gifts except as provided by clause 5 of rule XXV.

5. A Member, Delegate, Resident Commissioner, officer, or employee of the House may not accept an honorarium for a speech, a writing for publication, or other similar activity, except as otherwise provided under rule XXV.

6. A Member, Delegate, or Resident Commissioner—

(a) shall keep the campaign funds of such individual separate from the personal funds of such individual;

(b) may not convert campaign funds to personal use in excess of an amount representing reimbursement for legitimate and verifiable campaign expenditures; and

(c) except as provided in clause 1(b) of rule XXIV, may not expend funds from a campaign account of such individual that are not attributable to bona fide campaign or political purposes.

7. A Member, Delegate, or Resident Commissioner shall treat as campaign contributions all proceeds from testimonial dinners or other fundraising events.

8. (a) A Member, Delegate, Resident Commissioner, or officer of the House may not retain an employee who does not perform duties for the offices of the employing authority commensurate with the compensation such employee receives.

(b) In the case of a committee employee who works under the direct supervision of a member of the committee other than a chair, the chair may require that such member affirm in writing that the employee has complied with clause 8(a) (subject to clause 9 of rule X) as evidence of compliance by the chair with this clause and with clause 9 of rule X.

(c)(1) Except as specified in subparagraph (2)—

(A) a Member, Delegate, or Resident Commissioner may not retain the relative of such individual in a paid position; and

(B) an employee of the House may not accept compensation for work for a committee on which the relative of such employee serves as a member.

(2) Subparagraph (1) shall not apply in the case of a relative whose pertinent employment predates the One Hundred Thirteenth Congress.

(3) As used in this paragraph, the term "relative" means an individual who is related to the Member, Delegate, or Resident Commissioner as parent, child, sibling, parent's sibling, first cousin, sibling's child, spouse, parent-in-law, child-in-law, sibling-in-law, stepparent, stepchild, stepsibling, half-sibling, or grandchild.

9. A Member, Delegate, Resident Commissioner, officer, or employee

# RULES OF THE

of the House may not discharge and may not refuse to hire an individual, or otherwise discriminate against an individual with respect to compensation, terms, conditions, or privileges of employment, because of the race, color, religion, sex (including marital or parental status), sexual orientation, gender identity, disability, age, or national origin of such individual, including by committing an act of sexual harassment against such individual, but may take into consideration the domicile or political affiliation of such individual.

10. (a) A Member, Delegate, or Resident Commissioner who has been convicted by a court of record for the commission of a crime for which a sentence of two or more years' imprisonment may be imposed should refrain from participation in the business of each committee of which such individual is a member, and a Member should refrain from voting on any question at a meeting of the House or of the Committee of the Whole House on the state of the Union, unless or until judicial or executive proceedings result in reinstatement of the presumption of the innocence of such Member or until the Member is reelected to the House after the date of such conviction.

(b) A Member, Delegate, or Resident Commissioner who has been indicted for or otherwise formally charged with criminal conduct in any Federal, State, or local court punishable as a felony for which a sentence of two or more years' imprisonment may be imposed should resign from any standing, select, joint or ad hoc committee, and any subcommittee thereof, on which such Member, Delegate, or Resident Commissioner serves, and should step aside from any party caucus or conference leadership position such Member, Delegate, or Resident Commissioner holds, unless or until judicial or executive proceedings result in acquittal or the charges are dismissed or reduced to less than a felony as described in this paragraph.

11. A Member, Delegate, or Resident Commissioner may not authorize or otherwise allow an individual, group, or organization not under the direction and control of the House to use the words "Congress of the United States," "House of Representatives," or "Official Business," or any combination of words thereof, on any letterhead or envelope.

12. (a) Except as provided in paragraph (b), an employee of the House who is required to file a report under rule XXVI may not participate personally and substantially as an employee of the House in a contact with an agency of the executive or judicial branches of Government with respect to nonlegislative matters affecting any nongovernmental person in which the employee has a significant financial interest.

(b) Paragraph (a) does not apply if an employee first advises the employing authority of such employee of a significant financial interest described in paragraph (a) and obtains from such employing authority a written waiver stating that the participation of the employee in the activity described in paragraph (a) is necessary. A copy of each such waiver shall be filed with the Committee on Ethics.

13. Before a Member, Delegate, Resident Commissioner, officer, or employee of the House may have access to classified information, the following oath (or affirmation) shall be executed:

"I do solemnly swear (or affirm) that I will not disclose any classified information received in the course of my service with the House of Representatives, except as authorized by the House of Representatives or in accordance with its Rules."

Copies of the executed oath (or affirmation) shall be retained as part of the records of the House, in the case of a Member, Delegate, or the Resident Commissioner, by the Clerk, and in the case of an officer or employee of the House, by the Sergeant-at-Arms. The Clerk shall make the signatories a matter of public record, causing the names of each Member, Delegate, or Resident Commissioner who has signed the oath during a week (if any) to be published in a portion of the Congressional Record designated for that purpose on the last legislative day of the week and making cumulative lists of such names available each day for public inspection in an appropriate office of the House.

14. A Member, Delegate, or Resident Commissioner may not, with the intent to influence on the basis of partisan political affiliation an employment decision or employment practice of any private entity—

(a) take or withhold, or offer or threaten to take or withhold, an official act; or

(b) influence, or offer or threaten to influence, the official act of another.

15. (a) Except as provided in paragraphs (b) and (c), a Member, Delegate, or Resident Commissioner may not use personal funds, official funds, or campaign funds for a flight on an aircraft.

(b) Paragraph (a) does not apply if—

(1) the aircraft is operated by an air carrier or commercial operator certificated by the Federal Aviation Administration and the flight is required to be conducted under air carrier safety rules, or, in the case of travel which is abroad, by an air carrier or commercial operator certificated by an appropriate foreign civil aviation authority and the flight is required to be con-

ducted under air carrier safety rules;

(2) the aircraft is owned or leased by a Member, Delegate, Resident Commissioner or a family member of a Member, Delegate, or Resident Commissioner (including an aircraft owned by an entity that is not a public corporation in which the Member, Delegate, Resident Commissioner or a family member of a Member, Delegate, or Resident Commissioner has an ownership interest, provided that such Member, Delegate, or Resident Commissioner does not use the aircraft any more than the Member, Delegate, Resident Commissioner, or family member's proportionate share of ownership allows);

(3) the flight consists of the personal use of an aircraft by a Member, Delegate, or the Resident Commissioner that is supplied by—

(A) an individual on the basis of personal friendship; or

(B) another Member, Delegate, or the Resident Commissioner;

(4) the aircraft is operated by an entity of the Federal government or an entity of the government of any State; or

(5) the owner or operator of the aircraft is paid a pro rata share of the fair market value of the normal and usual charter fare or rental charge for a comparable plane of comparable size as determined by dividing such cost by the number of Members, Delegates, or the Resident Commissioner, officers, or employees of Congress on the flight.

(c) An advance written request for a waiver of the restriction in paragraph (a) may be granted jointly by the chair and ranking minority member of the Committee on Ethics, subject to such conditions as they may prescribe.

(d) In this clause—

(1) the term "campaign funds" includes funds of any political committee under the Federal Election Campaign Act of 1971, without regard to whether the committee is an authorized committee of the Member, Delegate, or Resident Commissioner involved under such Act;

(2) the term "family member" means an individual who is related to the Member, Delegate, or Resident Commissioner, as parent, child, sibling, spouse, or parent-in-law; and

(3) the term "on the basis of personal friendship" has the same meaning as in clause 5 of rule XXV and shall be determined as under clause 5(a)(3)(D)(ii) of rule XXV.

16. A Member, Delegate, or Resident Commissioner may not condition the inclusion of language to provide funding for a congressional earmark, a limited tax benefit, or a limited tariff benefit in any bill or joint resolution (or an accompanying re-

port) or in any conference report on a bill or joint resolution (including an accompanying joint explanatory statement of managers) on any vote cast by another Member, Delegate, or Resident Commissioner. For purposes of this clause and clause 17, the terms "congressional earmark," "limited tax benefit," and "limited tariff benefit" shall have the meanings given them in clause 9 of rule XXI.

17. (a) A Member, Delegate, or Resident Commissioner who requests a congressional earmark, a limited tax benefit, or a limited tariff benefit in any bill or joint resolution (or an accompanying report) or in any conference report on a bill or joint resolution (or an accompanying joint statement of managers) shall provide a written statement to the chair and ranking minority member of the committee of jurisdiction, including—

(1) the name of the Member, Delegate, or Resident Commissioner;

(2) in the case of a congressional earmark, the name and address of the intended recipient or, if there is no specifically intended recipient, the intended location of the activity;

(3) in the case of a limited tax or tariff benefit, identification of the individual or entities reasonably anticipated to benefit, to the extent known to the Member, Delegate, or Resident Commissioner;

(4) the purpose of such congressional earmark or limited tax or tariff benefit; and

(5) a certification that the Member, Delegate, or Resident Commissioner or spouse has no financial interest in such congressional earmark or limited tax or tariff benefit.

(b) Each committee shall maintain the information transmitted under paragraph (a), and the written disclosures for any congressional earmarks, limited tax benefits, or limited tariff benefits included in any measure reported by the committee or conference report filed by the chair of the committee or any subcommittee thereof shall be open for public inspection.

18. (a) A Member, Delegate, or Resident Commissioner may not engage in a sexual relationship with any employee of the House who works under the supervision of the Member, Delegate, or Resident Commissioner, or who is an employee of a committee on which the Member, Delegate, or Resident Commissioner serves. This paragraph does not apply with respect to any relationship between two people who are married to each other.

(b) A Member, Delegate, Resident Commissioner, officer, or employee of the House may not engage in unwelcome sexual advances or conduct towards another Member, Delegate,

Resident Commissioner, officer, or employee of the House.

(c) In this clause, the term "employee" includes an applicant for employment, a paid or unpaid intern (including an applicant for an internship), a detailee, and an individual participating in a fellowship program.

19. (a) A Member, Delegate, Resident Commissioner, officer, or employee of the House may not serve as an officer or director of any public company.

(b) In paragraph (a), the term "public company" means an issuer as defined in section 3 of the Securities Exchange Act of 1934 (15 U.S.C. 78c)—

(1) the securities of which are required to be registered under section 12 of such Act (15 U.S.C. 78l); or

(2) that is required to file reports under section 15(d) of such Act (15 U.S.C. 78o(d)).

(c) A Member, Delegate, Resident Commissioner, officer, or employee of the House shall comply with regulations issued and revised, as necessary, by the Committee on Ethics regarding types of prohibited service or positions that could lead to conflicts of interest.

20. A Member, Delegate, Resident Commissioner, officer, or employee of the House may not, directly or indirectly, take any actions to prevent any individual from or retaliate against any individual for providing truthful information to the Committee on Ethics, the Office of Congressional Ethics, the Office of Congressional Workplace Rights, or any law enforcement official, provided that the disclosure of such information is not otherwise prohibited by law or House rules.

21. (a) Except as provided in paragraphs (b) and (c), a Member, Delegate, Resident Commissioner, officer, or employee of the House shall not knowingly and willfully disclose publicly the identity of, or personally identifiable information about, any individual who has reported allegations of possible wrongdoing, including retaliation, under processes and protections provided by the Civil Service Reform Act of 1978, the Whistleblower Protection Act of 1989, the Intelligence Community Whistleblower Protection Act of 1998, or any other Federal law that establishes the right for individuals to make protected disclosures to Congress.

(b) The limitation in paragraph (a) shall not apply to any disclosure of an individual's identity or personally identifiable information if—

(1) the individual has provided express written consent prior to such disclosure;

(2) the individual has already voluntarily and publicly disclosed their identity; or

(3) the disclosure is by the chair of a committee after an affirmative vote by two-thirds of the members

of the committee that such disclosure is in the public interest.

(c) Nothing in this clause shall prevent—

(1) an investigation of any allegation of wrongdoing disclosed by any individual; or

(2) the public disclosure of substantive information shared by any individual that is not personally identifiable to that individual.

(d) Disclosures made pursuant to paragraph (b)(3) shall be subject to appropriate safeguards, including that the individual be provided timely advance notice if possible before their identity or any personally identifiable information is disclosed prior to the vote described in paragraph (b)(3), unless such information would jeopardize the related investigations. When providing such notice to the individual the committee chair shall send the individual a written explanation of the reasons for the disclosure.

22. (a) In this Code of Official Conduct, the term "officer or employee of the House" means an individual whose compensation is disbursed by the Chief Administrative Officer.

(b) An individual whose services are compensated by the House pursuant to a consultant contract shall be considered an employee of the House for purposes of clauses 1, 2, 3, 4, 8, 9, and 13 of this rule. An individual whose services are compensated by the House pursuant to a consultant contract may not lobby the contracting committee or the members or staff of the contracting committee on any matter. Such an individual may lobby other Members, Delegates, or the Resident Commissioner or staff of the House on matters outside the jurisdiction of the contracting committee. In the case of such an individual who is a member or employee of a firm, partnership, or other business organization, the other members and employees of the firm, partnership, or other business organization shall be subject to the same restrictions on lobbying that apply to the individual under this paragraph.

## RULE XXIV

LIMITATIONS ON USE OF OFFICIAL FUNDS

### Limitations on use of official and unofficial accounts

1. (a) Except as provided in paragraph (b), a Member, Delegate, or Resident Commissioner may not maintain, or have maintained for the use of such individual, an unofficial office account. Funds may not be paid into an unofficial office account.

(b)(1) Except as provided in subparagraph (2), a Member, Delegate, or Resident Commissioner may defray official expenses with funds of the principal campaign committee of such individual under the Federal Election Campaign Act of 1971 (2 U.S.C. 431 et seq.).

(2) The funds specified in subparagraph (1) may not be used to defray of-

# RULES OF THE

ficial expenses for mail or other communications, compensation for services, office space, office furniture, office equipment, or any associated information technology services (excluding handheld communications devices).

2. Notwithstanding any other provision of this rule, if an amount from the Official Expenses Allowance of a Member, Delegate, or Resident Commissioner is paid into the House Recording Studio revolving fund for telecommunications satellite services, the Member, Delegate, or Resident Commissioner may accept reimbursement from nonpolitical entities in that amount for transmission to the Chief Administrative Officer for credit to the Official Expenses Allowance.

3. In this rule the term "unofficial office account" means an account or repository in which funds are received for the purpose of defraying otherwise unreimbursed expenses allowable under section 162(a) of the Internal Revenue Code of 1986 as ordinary and necessary in the operation of a congressional office, and includes a newsletter fund referred to in section 527(g) of the Internal Revenue Code of 1986.

### Limitations on use of the frank

4. A Member, Delegate, or Resident Commissioner shall mail franked mail under section 3210(d) of title 39, United States Code at the most economical rate of postage practicable.

5. Before making a mass mailing, a Member, Delegate, or Resident Commissioner shall submit a sample or description of the mail matter involved to the House Communications Standards Commission for an advisory opinion as to whether the proposed mailing is in compliance with applicable provisions of law, rule, or regulation.

6. A mass mailing that is otherwise frankable by a Member, Delegate, or Resident Commissioner under the provisions of section 3210(e) of title 39, United States Code, is not frankable unless the cost of preparing and printing it is defrayed exclusively from funds made available in an appropriation Act.

7. A Member, Delegate, or Resident Commissioner may not send a mass mailing outside the congressional district from which elected.

8. In the case of a Member, Delegate, or Resident Commissioner, a mass mailing is not frankable under section 3210 of title 39, United States Code, when it is postmarked less than 90 days before the date of a primary or general election (whether regular, special, or runoff) in which such individual is a candidate for public office. If the mail matter is of a type that is not customarily postmarked, the date on which it would have been postmarked, if it were of a type customarily postmarked, applies.

9. In this rule the term "mass mailing" means, with respect to a session of Congress, a mailing of newsletters or other pieces of mail with substantially identical content (whether such pieces of mail are deposited singly or in bulk, or at the same time or different times), totaling more than 500 pieces of mail in that session, or any other unsolicited communication of substantially identical content which is transmitted to 500 or more persons in that session or, in the case of a digital communication of substantially identical content, which is disseminated at a cost exceeding a designated amounts provided under regulations of the House Communications Standards Commission, except that such term does not include a mailing—

(a) of matter in direct response to a communication from a person to whom the matter is mailed;

(b) from a Member, Delegate, or Resident Commissioner to other Members, Delegates, the Resident Commissioner, or Senators, or to Federal, State, or local government officials; or

(c) of a news release to the communications media.

### Prohibition on use of funds by Members not elected to succeeding Congress

10. Funds from the applicable accounts described in clause 1(k)(1) of rule X, including funds from committee expense resolutions, and funds in any local currencies owned by the United States may not be made available for travel by a Member, Delegate, Resident Commissioner, or Senator after the date of a general election in which such individual was not elected to the succeeding Congress or, in the case of a Member, Delegate, or Resident Commissioner who is not a candidate in a general election, after the earlier of the date of such general election or the adjournment sine die of the last regular session of the Congress.

## RULE XXV

### LIMITATIONS ON OUTSIDE EARNED INCOME AND ACCEPTANCE OF GIFTS

### Outside earned income; honoraria

1. (a) Except as provided by paragraph (b), a Member, Delegate, Resident Commissioner, officer, or employee of the House may not—

(1) have outside earned income attributable to a calendar year that exceeds 15 percent of the annual rate of basic pay for level II of the Executive Schedule under section 5313 of title 5, United States Code, as of January 1 of that calendar year; or

(2) receive any honorarium, except that an officer or employee of the House who is paid at a rate less than 120 percent of the minimum rate of basic pay for GS–15 of the General Schedule may receive an honorarium unless the subject matter is directly related to the official duties of the individual, the payment is made because of the status of the individual with the House, or the person offering the honorarium has interests that may be substantially affected by the performance or nonperformance of the official duties of the individual.

(b) In the case of an individual who becomes a Member, Delegate, Resident Commissioner, officer, or employee of the House, such individual may not have outside earned income attributable to the portion of a calendar year that occurs after such individual becomes a Member, Delegate, Resident Commissioner, officer, or employee that exceeds 15 percent of the annual rate of basic pay for level II of the Executive Schedule under section 5313 of title 5, United States Code, as of January 1 of that calendar year multiplied by a fraction, the numerator of which is the number of days the individual is a Member, Delegate, Resident Commissioner, officer, or employee during that calendar year and the denominator of which is 365.

(c) A payment in lieu of an honorarium that is made to a charitable organization on behalf of a Member, Delegate, Resident Commissioner, officer, or employee of the House may not be received by that Member, Delegate, Resident Commissioner, officer, or employee. Such a payment may not exceed $2,000 or be made to a charitable organization from which the Member, Delegate, Resident Commissioner, officer, or employee or a parent, sibling, spouse, child, or dependent relative of the Member, Delegate, Resident Commissioner, officer, or employee, derives a financial benefit.

2. A Member, Delegate, Resident Commissioner, officer, or employee of the House may not—

(a) receive compensation for affiliating with or being employed by a firm, partnership, association, corporation, or other entity that provides professional services involving a fiduciary relationship except for the practice of medicine;

(b) permit the name of such individual to be used by such a firm, partnership, association, corporation, or other entity;

(c) receive compensation for practicing a profession that involves a fiduciary relationship except for the practice of medicine;

(d) serve for compensation as an officer or member of the board of an association, corporation, or other entity; or

(e) receive compensation for teaching, without the prior notification and approval of the Committee on Ethics.

### Copyright royalties

3. (a) A Member, Delegate, Resident Commissioner, officer, or employee of the House may not receive an advance payment on copyright royalties. This paragraph does not prohibit a literary agent, researcher, or other individual (other than an individual employed by the House or a relative of a Member, Delegate, Resident Commissioner, officer, or employee) working on behalf of a Member, Delegate, Resident Commissioner, officer, or employee with re-

# HOUSE OF REPRESENTATIVES

spect to a publication from receiving an advance payment of a copyright royalty directly from a publisher and solely for the benefit of that literary agent, researcher, or other individual.

(b) A Member, Delegate, Resident Commissioner, officer, or employee of the House may not receive copyright royalties under a contract entered into on or after January 1, 1996, unless that contract is first approved by the Committee on Ethics as complying with the requirement of clause 4(d)(1)(E) (that royalties are received from an established publisher under usual and customary contractual terms).

## Definitions

4. (a)(1) In this rule, except as provided in subparagraph (2), the term "officer or employee of the House" means an individual (other than a Member, Delegate, or Resident Commissioner) whose pay is disbursed by the Chief Administrative Officer, who is paid at a rate equal to or greater than 120 percent of the minimum rate of basic pay for GS–15 of the General Schedule, and who is so employed for more than 90 days in a calendar year.

(2)(A) When used with respect to an honorarium, the term "officer or employee of the House" means an individual (other than a Member, Delegate, or Resident Commissioner) whose salary is disbursed by the Chief Administrative Officer.

(B) When used in clause 5 of this rule, the terms "officer" and "employee" have the same meanings as in rule XXIII.

(b) In this rule the term "honorarium" means a payment of money or a thing of value for an appearance, speech, or article (including a series of appearances, speeches, or articles) by a Member, Delegate, Resident Commissioner, officer, or employee of the House, excluding any actual and necessary travel expenses incurred by that Member, Delegate, Resident Commissioner, officer, or employee (and one relative) to the extent that such expenses are paid or reimbursed by any other person. The amount otherwise determined shall be reduced by the amount of any such expenses to the extent that such expenses are not so paid or reimbursed.

(c) In this rule the term "travel expenses" means, with respect to a Member, Delegate, Resident Commissioner, officer, or employee of the House, or a relative of such Member, Delegate, Resident Commissioner, officer, or employee, the cost of transportation, and the cost of lodging and meals while away from the residence or principal place of employment of such individual.

(d)(1) In this rule the term "outside earned income" means, with respect to a Member, Delegate, Resident Commissioner, officer, or employee of the House, wages, salaries, fees, and other amounts received or to be received as compensation for personal services actually rendered, but does not include —

(A) the salary of a Member, Delegate, Resident Commissioner, officer, or employee;

(B) any compensation derived by a Member, Delegate, Resident Commissioner, officer, or employee of the House for personal services actually rendered before the adoption of this rule or before such individual became a Member, Delegate, Resident Commissioner, officer, or employee;

(C) any amount paid by, or on behalf of, a Member, Delegate, Resident Commissioner, officer, or employee of the House to a tax-qualified pension, profit-sharing, or stock bonus plan and received by such individual from such a plan;

(D) in the case of a Member, Delegate, Resident Commissioner, officer, or employee of the House engaged in a trade or business in which such individual or the family of such individual holds a controlling interest and in which both personal services and capital are income-producing factors, any amount received by the Member, Delegate, Resident Commissioner, officer, or employee, so long as the personal services actually rendered by such individual in the trade or business do not generate a significant amount of income; or

(E) copyright royalties received from established publishers under usual and customary contractual terms; and

(2) outside earned income shall be determined without regard to community property law.

(e) In this rule the term "charitable organization" means an organization described in section 170(c) of the Internal Revenue Code of 1986.

## Gifts

5. (a)(1)(A)(i) A Member, Delegate, Resident Commissioner, officer, or employee of the House may not knowingly accept a gift except as provided in this clause.

(ii) A Member, Delegate, Resident Commissioner, officer, or employee of the House may not knowingly accept a gift from a registered lobbyist or agent of a foreign principal or from a private entity that retains or employs registered lobbyists or agents of a foreign principal except as provided in subparagraph (3) of this paragraph.

(B)(i) A Member, Delegate, Resident Commissioner, officer, or employee of the House may accept a gift (other than cash or cash equivalent) not prohibited by subdivision (A)(ii) that the Member, Delegate, Resident Commissioner, officer, or employee reasonably and in good faith believes to have a value of less than $50 and a cumulative value from one source during a calendar year of less than $100. A gift having a value of less than $10 does not count toward the $100 annual limit. The value of perishable food sent to an office shall be allocated among the individual recipients and not to the Member, Delegate, or Resident Commissioner. Formal recordkeeping is not

required by this subdivision, but a Member, Delegate, Resident Commissioner, officer, or employee of the House shall make a good faith effort to comply with this subdivision.

(ii) A gift of a ticket to a sporting or entertainment event shall be valued at the face value of the ticket or, in the case of a ticket without a face value, at the highest cost of a ticket with a face value for the event. The price printed on a ticket to an event shall be deemed its face value only if it also is the price at which the issuer offers that ticket for sale to the public.

(2)(A) In this clause the term "gift" means a gratuity, favor, discount, entertainment, hospitality, loan, forbearance, or other item having monetary value. The term includes gifts of services, training, transportation, lodging, and meals, whether provided in kind, by purchase of a ticket, payment in advance, or reimbursement after the expense has been incurred.

(B)(i) A gift to a family member of a Member, Delegate, Resident Commissioner, officer, or employee of the House, or a gift to any other individual based on that individual's relationship with the Member, Delegate, Resident Commissioner, officer, or employee, shall be considered a gift to the Member, Delegate, Resident Commissioner, officer, or employee if it is given with the knowledge and acquiescence of the Member, Delegate, Resident Commissioner, officer, or employee and the Member, Delegate, Resident Commissioner, officer, or employee has reason to believe the gift was given because of the official position of such individual.

(ii) If food or refreshment is provided at the same time and place to both a Member, Delegate, Resident Commissioner, officer, or employee of the House and the spouse or dependent thereof, only the food or refreshment provided to the Member, Delegate, Resident Commissioner, officer, or employee shall be treated as a gift for purposes of this clause.

(3) The restrictions in subparagraph (1) do not apply to the following:

(A) Anything for which the Member, Delegate, Resident Commissioner, officer, or employee of the House pays the market value, or does not use and promptly returns to the donor.

(B) A contribution, as defined in section 301(8) of the Federal Election Campaign Act of 1971 (2 U.S.C. 431) that is lawfully made under that Act, a lawful contribution for election to a State or local government office, or attendance at a fundraising event sponsored by a political organization described in section 527(e) of the Internal Revenue Code of 1986.

(C) A gift from a relative as described in section 109(16) of title I of the Ethics in Government Act of 1978 (5 U.S.C. App. 109(16)).

(D)(i) Anything provided by an individual on the basis of a personal friendship unless the Member, Delegate, Resident Commissioner, officer,

# RULES OF THE

or employee of the House has reason to believe that, under the circumstances, the gift was provided because of the official position of such individual and not because of the personal friendship.

(ii) In determining whether a gift is provided on the basis of personal friendship, the Member, Delegate, Resident Commissioner, officer, or employee of the House shall consider the circumstances under which the gift was offered, such as:

(I) The history of the relationship of such individual with the individual giving the gift, including any previous exchange of gifts between them.

(II) Whether to the actual knowledge of such individual the individual who gave the gift personally paid for the gift or sought a tax deduction or business reimbursement for the gift.

(III) Whether to the actual knowledge of such individual the individual who gave the gift also gave the same or similar gifts to other Members, Delegates, the Resident Commissioners, officers, or employees of the House.

(E) Except as provided in paragraph (e)(3), a contribution or other payment to a legal expense fund established for the benefit of a Member, Delegate, Resident Commissioner, officer, or employee of the House that is otherwise lawfully made in accordance with the restrictions and disclosure requirements of the Committee on Ethics.

(F) A gift from another Member, Delegate, Resident Commissioner, officer, or employee of the House or Senate.

(G) Food, refreshments, lodging, transportation, and other benefits—

(i) resulting from the outside business or employment activities of the Member, Delegate, Resident Commissioner, officer, or employee of the House (or other outside activities that are not connected to the duties of such individual as an officeholder), or of the spouse of such individual, if such benefits have not been offered or enhanced because of the official position of such individual and are customarily provided to others in similar circumstances;

(ii) customarily provided by a prospective employer in connection with bona fide employment discussions; or

(iii) provided by a political organization described in section 527(e) of the Internal Revenue Code of 1986 in connection with a fundraising or campaign event sponsored by such organization.

(H) Pension and other benefits resulting from continued participation in an employee welfare and benefits plan maintained by a former employer.

(I) Informational materials that are sent to the office of the Member, Delegate, Resident Commissioner, officer, or employee of the House in the form of books, articles, periodicals, other written materials, audiotapes, videotapes, or other forms of communication.

(J) Awards or prizes that are given to competitors in contests or events open to the public, including random drawings.

(K) Honorary degrees (and associated travel, food, refreshments, and entertainment) and other bona fide, nonmonetary awards presented in recognition of public service (and associated food, refreshments, and entertainment provided in the presentation of such degrees and awards).

(L) Training (including food and refreshments furnished to all attendees as an integral part of the training) if such training is in the interest of the House.

(M) Bequests, inheritances, and other transfers at death.

(N) An item, the receipt of which is authorized by the Foreign Gifts and Decorations Act, the Mutual Educational and Cultural Exchange Act, or any other statute.

(O) Anything that is paid for by the Federal Government, by a State or local government, or secured by the Government under a Government contract.

(P) A gift of personal hospitality (as defined in section 109(14) of the Ethics in Government Act) of an individual other than a registered lobbyist or agent of a foreign principal.

(Q) Free attendance at an event permitted under subparagraph (4).

(R) Opportunities and benefits that are—

(i) available to the public or to a class consisting of all Federal employees, whether or not restricted on the basis of geographic consideration;

(ii) offered to members of a group or class in which membership is unrelated to congressional employment;

(iii) offered to members of an organization, such as an employees' association or congressional credit union, in which membership is related to congressional employment and similar opportunities are available to large segments of the public through organizations of similar size;

(iv) offered to a group or class that is not defined in a manner that specifically discriminates among Government employees on the basis of branch of Government or type of responsibility, or on a basis that favors those of higher rank or rate of pay;

(v) in the form of loans from banks and other financial institutions on terms generally available to the public; or

(vi) in the form of reduced membership or other fees for participation in organization activities offered to all Government employees by professional organizations if the only restrictions on membership relate to professional qualifications.

(S) A plaque, trophy, or other item that is substantially commemorative in nature and that is intended for presentation.

(T) Anything for which, in an unusual case, a waiver is granted by the Committee on Ethics.

(U) Food or refreshments of a nominal value offered other than as a part of a meal.

(V) Donations of products from the district or State that the Member, Delegate, or Resident Commissioner represents that are intended primarily for promotional purposes, such as display or free distribution, and are of minimal value to any single recipient.

(W) An item of nominal value such as a greeting card, baseball cap, or a T-shirt.

(4)(A) A Member, Delegate, Resident Commissioner, officer, or employee of the House may accept an offer of free attendance at a widely attended convention, conference, symposium, forum, panel discussion, dinner, viewing, reception, or similar event, provided by the sponsor of the event, if—

(i) the Member, Delegate, Resident Commissioner, officer, or employee of the House participates in the event as a speaker or a panel participant, by presenting information related to Congress or matters before Congress, or by performing a ceremonial function appropriate to the official position of such individual; or

(ii) attendance at the event is appropriate to the performance of the official duties or representative function of the Member, Delegate, Resident Commissioner, officer, or employee of the House.

(B) A Member, Delegate, Resident Commissioner, officer, or employee of the House who attends an event described in subdivision (A) may accept a sponsor's unsolicited offer of free attendance at the event for an accompanying individual.

(C) A Member, Delegate, Resident Commissioner, officer, or employee of the House, or the spouse or dependent thereof, may accept a sponsor's unsolicited offer of free attendance at a charity event, except that reimbursement for transportation and lodging may not be accepted in connection with the event unless—

(i) all of the net proceeds of the event are for the benefit of an organization described in section 501(c)(3) of the Internal Revenue Code of 1986 and exempt from taxation under section 501(a) of such Code;

(ii) reimbursement for the transportation and lodging in connection with the event is paid by such organization; and

# HOUSE OF REPRESENTATIVES

(iii) the offer of free attendance at the event is made by such organization.

(D) In this paragraph the term "free attendance" may include waiver of all or part of a conference or other fee, the provision of local transportation, or the provision of food, refreshments, entertainment, and instructional materials furnished to all attendees as an integral part of the event. The term does not include entertainment collateral to the event, nor does it include food or refreshments taken other than in a group setting with all or substantially all other attendees.

(5) A Member, Delegate, Resident Commissioner, officer, or employee of the House may not accept a gift the value of which exceeds $250 on the basis of the personal friendship exception in subparagraph (3)(D) unless the Committee on Ethics issues a written determination that such exception applies. A determination under this subparagraph is not required for gifts given on the basis of the family relationship exception in subparagraph (3)(C).

(6) When it is not practicable to return a tangible item because it is perishable, the item may, at the discretion of the recipient, be given to an appropriate charity or destroyed.

(b)(1)(A) A reimbursement (including payment in kind) to a Member, Delegate, Resident Commissioner, officer, or employee of the House for necessary transportation, lodging, and related expenses for travel to a meeting, speaking engagement, factfinding trip, or similar event in connection with the duties of such individual as an officeholder shall be considered as a reimbursement to the House and not a gift prohibited by this clause when it is from a registered lobbyist source other than a registered lobbyist or agent of a foreign principal or a private entity that retains or employs registered lobbyists or agents of a foreign principal (except as provided in subdivision (C)), if the Member, Delegate, Resident Commissioner, officer, or employee—

(i) in the case of an employee, receives advance authorization, from the Member, Delegate, Resident Commissioner, or officer under whose direct supervision the employee works, to accept reimbursement; and

(ii) discloses the expenses reimbursed or to be reimbursed and the authorization to the Clerk within 15 days after the travel is completed.

(B) For purposes of subdivision (A), events, the activities of which are substantially recreational in nature, are not considered to be in connection with the duties of a Member, Delegate, Resident Commissioner, officer, or employee of the House as an officeholder.

(C) A reimbursement (including payment in kind) to a Member, Delegate, Resident Commissioner, officer, or employee of the House for any purpose described in subdivision (A) also shall be considered as a reimbursement to the House and not a gift prohibited by this clause (without regard to whether the source retains or employs registered lobbyists or agents of a foreign principal) if it is, under regulations prescribed by the Committee on Ethics to implement this provision—

(i) directly from an institution of higher education within the meaning of section 101 of the Higher Education Act of 1965; or

(ii) provided only for attendance at or participation in a one-day event (exclusive of travel time and an overnight stay).

Regulations prescribed to implement this provision may permit a two-night stay when determined by the committee on a case-by-case basis to be practically required to participate in the one-day event.

(2) Each advance authorization to accept reimbursement shall be signed (including in electronic form) by the Member, Delegate, Resident Commissioner, or officer of the House under whose direct supervision the employee works and shall include—

(A) the name of the employee;

(B) the name of the person who will make the reimbursement;

(C) the time, place, and purpose of the travel; and

(D) a determination that the travel is in connection with the duties of the employee as an officeholder and would not create the appearance that the employee is using public office for private gain.

(3) Each disclosure made under subparagraph (1)(A) shall be signed (including in electronic form) by the Member, Delegate, Resident Commissioner, or officer (in the case of travel by that Member, Delegate, Resident Commissioner, or officer) or by the Member, Delegate, Resident Commissioner, or officer under whose direct supervision the employee works (in the case of travel by an employee) and shall include—

(A) a good faith estimate of total transportation expenses reimbursed or to be reimbursed;

(B) a good faith estimate of total lodging expenses reimbursed or to be reimbursed;

(C) a good faith estimate of total meal expenses reimbursed or to be reimbursed;

(D) a good faith estimate of the total of other expenses reimbursed or to be reimbursed;

(E) a determination that all such expenses are necessary transportation, lodging, and related expenses as defined in subparagraph (4);

(F) a description of meetings and events attended; and

(G) in the case of a reimbursement to a Member, Delegate, Resident Commissioner, or officer, a determination that the travel was in connection with the duties of such individual as an officeholder and would not create the appearance that the Member, Delegate, Resident Commissioner, or officer is using public office for private gain.

(4) In this paragraph the term "necessary transportation, lodging, and related expenses"—

(A) includes reasonable expenses that are necessary for travel for a period not exceeding four days within the United States or seven days exclusive of travel time outside of the United States unless approved in advance by the Committee on Ethics;

(B) is limited to reasonable expenditures for transportation, lodging, conference fees and materials, and food and refreshments, including reimbursement for necessary transportation, whether or not such transportation occurs within the periods described in subdivision (A);

(C) does not include expenditures for recreational activities, nor does it include entertainment other than that provided to all attendees as an integral part of the event, except for activities or entertainment otherwise permissible under this clause; and

(D) may include travel expenses incurred on behalf of a relative of the Member, Delegate, Resident Commissioner, officer, or employee.

(5) The Clerk of the House shall make all advance authorizations, certifications, and disclosures filed pursuant to this paragraph available for public inspection as soon as possible after they are received.

(c)(1)(A) Except as provided in subdivision (B), a Member, Delegate, Resident Commissioner, officer, or employee of the House may not accept a reimbursement (including payment in kind) for transportation, lodging, or related expenses for a trip on which the traveler is accompanied on any segment by a registered lobbyist or agent of a foreign principal.

(B) Subdivision (A) does not apply to a trip for which the source of reimbursement is an institution of higher education within the meaning of section 101 of the Higher Education Act of 1965.

(2) A Member, Delegate, Resident Commissioner, officer, or employee of the House may not accept a reimbursement (including payment in kind) for transportation, lodging, or related expenses under the exception in paragraph (b)(1)(C)(ii) of this clause for a trip that is financed in whole or in part by a private entity that retains or employs registered lobbyists or agents of a foreign principal unless any involvement of a registered lobbyist or agent of a foreign principal in the planning, organization, request, or arrangement of the trip is de minimis under rules prescribed by the Committee on Ethics to implement paragraph (b)(1)(C) of this clause.

(3) A Member, Delegate, Resident Commissioner, officer, or employee of the House may not accept a reimbursement (including payment in kind) for transportation, lodging, or related expenses for a trip (other than a trip permitted under paragraph (b)(1)(C) of this clause) if such trip is in any part planned, organized, requested, or ar-

# RULES OF THE

ranged by a registered lobbyist or agent of a foreign principal.

(d) A Member, Delegate, Resident Commissioner, officer, or employee of the House shall, before accepting travel otherwise permissible under paragraph (b)(1) of this clause from any private source—

(1) provide to the Committee on Ethics before such trip a written certification signed (including in electronic form) by the source or (in the case of a corporate person) by an officer of the source—

(A) that the trip will not be financed in any part by a registered lobbyist or agent of a foreign principal;

(B) that the source either—

(i) does not retain or employ registered lobbyists or agents of a foreign principal; or

(ii) is an institution of higher education within the meaning of section 101 of the Higher Education Act of 1965; or

(iii) certifies that the trip meets the requirements specified in rules prescribed by the Committee on Ethics to implement paragraph (b)(1)(C)(ii) of this clause and specifically details the extent of any involvement of a registered lobbyist or agent of a foreign principal in the planning, organization, request, or arrangement of the trip considered to qualify as de minimis under such rules;

(C) that the source will not accept from another source any funds earmarked directly or indirectly for the purpose of financing any aspect of the trip;

(D) that the traveler will not be accompanied on any segment of the trip by a registered lobbyist or agent of a foreign principal (except in the case of a trip for which the source of reimbursement is an institution of higher education within the meaning of section 101 of the Higher Education Act of 1965); and

(E) that (except as permitted in paragraph (b)(1)(C) of this clause) the trip will not in any part be planned, organized, requested, or arranged by a registered lobbyist or agent of a foreign principal; and

(2) after the Committee on Ethics has promulgated the regulations mandated in paragraph (i)(1)(B) of this clause, obtain the prior approval of the committee for such trip.

(e) A gift prohibited by paragraph (a)(1) includes the following:

(1) Anything provided by a registered lobbyist or an agent of a foreign principal to an entity that is maintained or controlled by a Member, Delegate, Resident Commissioner, officer, or employee of the House.

(2) A charitable contribution (as defined in section 170(c) of the Internal Revenue Code of 1986) made by a registered lobbyist or an agent of a foreign principal on the basis of a des-

ignation, recommendation, or other specification of a Member, Delegate, Resident Commissioner, officer, or employee of the House (not including a mass mailing or other solicitation directed to a broad category of persons or entities), other than a charitable contribution permitted by paragraph (f).

(3) A contribution or other payment by a registered lobbyist or an agent of a foreign principal to a legal expense fund established for the benefit of a Member, Delegate, Resident Commissioner, officer, or employee of the House.

(4) A financial contribution or expenditure made by a registered lobbyist or an agent of a foreign principal relating to a conference, retreat, or similar event, sponsored by or affiliated with an official congressional organization, for or on behalf of Members, Delegates, the Resident Commissioner, officers, or employees of the House.

(f)(1) A charitable contribution (as defined in section 170(c) of the Internal Revenue Code of 1986) made by a registered lobbyist or an agent of a foreign principal in lieu of an honorarium to a Member, Delegate, Resident Commissioner, officer, or employee of the House is not considered a gift under this clause if it is reported as provided in subparagraph (2).

(2) A Member, Delegate, Resident Commissioner, officer, or employee who designates or recommends a contribution to a charitable organization in lieu of an honorarium described in subparagraph (1) shall report within 30 days after such designation or recommendation to the Clerk—

(A) the name and address of the registered lobbyist who is making the contribution in lieu of an honorarium;

(B) the date and amount of the contribution; and

(C) the name and address of the charitable organization designated or recommended by the Member, Delegate, or Resident Commissioner.

The Clerk shall make public information received under this subparagraph as soon as possible after it is received.

(g) In this clause—

(1) the term ''registered lobbyist'' means a lobbyist registered under the Federal Regulation of Lobbying Act or any successor statute;

(2) the term ''agent of a foreign principal'' means an agent of a foreign principal registered under the Foreign Agents Registration Act; and

(3) the terms ''officer'' and ''employee'' have the same meanings as in rule XXIII.

(h) All the provisions of this clause shall be interpreted and enforced solely by the Committee on Ethics. The Committee on Ethics is authorized to issue guidance on any matter contained in this clause.

(i)(1) Not later than 45 days after the date of adoption of this paragraph and at annual intervals thereafter, the

Committee on Ethics shall develop and revise, as necessary—

(A) guidelines on judging the reasonableness of an expense or expenditure for purposes of this clause, including the factors that tend to establish—

(i) a connection between a trip and official duties;

(ii) the reasonableness of an amount spent by a sponsor;

(iii) a relationship between an event and an officially connected purpose; and

(iv) a direct and immediate relationship between a source of funding and an event; and

(B) regulations describing the information it will require individuals subject to this clause to submit to the committee in order to obtain the prior approval of the committee for any travel covered by this clause, including any required certifications.

(2) In developing and revising guidelines under subparagraph (1)(A), the committee shall take into account the maximum per diem rates for official Government travel published annually by the General Services Administration, the Department of State, and the Department of Defense.

*Claims against the Government*

6. A person may not be an officer or employee of the House, or continue in its employment, if acting as an agent for the prosecution of a claim against the Government or if interested in such claim, except as an original claimant or in the proper discharge of official duties.

7. A Member, Delegate, or Resident Commissioner shall prohibit all staff employed by that Member, Delegate, or Resident Commissioner (including staff in personal, committee, and leadership offices) from making any lobbying contact (as defined in section 3 of the Lobbying Disclosure Act of 1995) with that individual's spouse if that spouse is a lobbyist under the Lobbying Disclosure Act of 1995 or is employed or retained by such a lobbyist for the purpose of influencing legislation.

8. During the dates on which the national political party to which a Member (including a Delegate or Resident Commissioner) belongs holds its convention to nominate a candidate for the office of President or Vice President, the Member may not participate in an event honoring that Member, other than in the capacity as a candidate for such office, if such event is directly paid for by a registered lobbyist under the Lobbying Disclosure Act of 1995 or a private entity that retains or employs such a registered lobbyist.

## RULE XXVI

### FINANCIAL DISCLOSURE

1. The Clerk shall send a copy of each report filed with the Clerk under title I of the Ethics in Government Act of 1978 within the seven-day period beginning on the date on which the report is filed to the Committee on Ethics.

# HOUSE OF REPRESENTATIVES

2. For the purposes of this rule, the provisions of title I of the Ethics in Government Act of 1978 shall be considered Rules of the House as they pertain to Members, Delegates, the Resident Commissioner, officers, and employees of the House.

3. Members of the board of the Office of Congressional Ethics shall file annual financial disclosure reports with the Clerk of the House on or before May 15 of each calendar year after any year in which they perform the duties of that position. Such reports shall be on a form prepared by the Clerk that is substantially similar to form 450 of the Office of Government Ethics. The Clerk shall send a copy of each such report filed with the Clerk within the seven-day period beginning on the date on which the report is filed to the Committee on Ethics and shall have them printed as a House document and made available to the public by August 1 of each year.

## RULE XXVII

### DISCLOSURE BY MEMBERS AND STAFF OF EMPLOYMENT NEGOTIATIONS

1. A Member, Delegate, or Resident Commissioner shall not directly negotiate or have any agreement of future employment or compensation unless such Member, Delegate, or Resident Commissioner, within 3 business days after the commencement of such negotiation or agreement of future employment or compensation, files with the Committee on Ethics a statement, which must be signed (including in electronic form) by the Member, Delegate, or Resident Commissioner, regarding such negotiations or agreement, including the name of the private entity or entities involved in such negotiations or agreement, and the date such negotiations or agreement commenced.

2. An officer or an employee of the House earning in excess of 75 percent of the salary paid to a Member shall notify the Committee on Ethics that such individual is negotiating or has any agreement of future employment or compensation.

3. The disclosure and notification under this rule shall be made within 3 business days after the commencement of such negotiation or agreement of future employment or compensation.

4. A Member, Delegate, or Resident Commissioner, and an officer or employee to whom this rule applies, shall recuse themself from any matter in which there is a conflict of interest or an appearance of a conflict for that Member, Delegate, Resident Commissioner, officer, or employee under this rule and shall notify the Committee on Ethics of such recusal. A Member, Delegate, or Resident Commissioner making such recusal shall, upon such recusal, submit to the Clerk for public disclosure the statement of disclosure under clause 1 with respect to which the recusal was made.

## RULE XXVIII

### STATUTORY LIMIT ON THE PUBLIC DEBT

1. Upon adoption by the House of a concurrent resolution on the budget under section 301 or 304 of the Congressional Budget Act of 1974, the Clerk shall prepare an engrossment of a joint resolution suspending the statutory limit on the public debt in the form prescribed in clause 2. Upon engrossment of the joint resolution, the vote by which the concurrent resolution on the budget was adopted by the House shall also be considered as a vote on passage of the joint resolution in the House, and the joint resolution shall be considered as passed by the House and duly certified and examined. The engrossed copy shall be signed by the Clerk and transmitted to the Senate for further legislative action.

2. The matter after the resolving clause in a joint resolution described in clause 1 shall be as follows: "Section 3101(b) of title 31, United States Code, shall not apply for the period beginning on the date of enactment and ending on September 30, _____." with the blank being filled with the budget year for the concurrent resolution.

3. Nothing in this rule shall be construed as limiting or otherwise affecting—

(a) the power of the House or the Senate to consider and pass bills or joint resolutions, without regard to the procedures under clause 1, that would change the statutory limit on the public debt; or

(b) the rights of Members, Delegates, the Resident Commissioner, or committees with respect to the introduction, consideration, and reporting of such bills or joint resolutions.

4. In this rule the term "statutory limit on the public debt" means the maximum face amount of obligations issued under authority of chapter 31 of title 31, United States Code, and obligations guaranteed as to principal and interest by the United States (except such guaranteed obligations as may be held by the Secretary of the Treasury), as determined under section 3101(b) of such title after the application of section 3101(a) of such title, that may be outstanding at any one time.

## RULE XXIX

### GENERAL PROVISIONS

1. The provisions of law that constituted the Rules of the House at the end of the previous Congress shall govern the House in all cases to which they are applicable, and the rules of parliamentary practice comprised by Jefferson's Manual shall govern the House in all cases to which they are applicable and in which they are not inconsistent with the Rules and orders of the House.

2. (RESERVED.)

3. If a measure or matter is publicly available at an electronic document repository operated by the Clerk, it shall be considered as having been available to Members, Delegates, and the Resident Commissioner for purposes of these rules.

4. Authoritative guidance from the Committee on the Budget concerning the impact of a legislative proposition on the levels of new budget authority, outlays, direct spending, new entitlement authority and revenues may be provided by the chair of the committee.

○